UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE RICHARD K. EATON, *SENIOR JUDGE*

———————————————————————
                                  :

UNITED STATES OF AMERICA,         :
                                    :

                Plaintiff,        :     Court No.: 20-00175

                v.                :

                                    :

AMERICAN HOME ASSURANCE COMPANY,  :

                                    :

                Defendant.      :
———————————————————————  :

## <u>ORDER</u>

Upon reading plaintiff's motion for summary judgment, and defendant's response thereto; and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's motion be, and hereby is granted, and it is further

**ORDERED** that summary judgment be, and hereby is, entered for plaintiff, the United States, and it is further

**ORDERED** that defendant shall pay to plaintiff duties and interest, pursuant to 19 U.S.C. § 1505, in the total amount of $379,009.00, which is the contractual limit of the bonds that are the subject of this case; it is further

**ORDERED** that defendant shall pay to plaintiff interest pursuant to 19 U.S.C. § 580, and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the limits of the bonds; it is further

**ORDERED** that, within 45 days of the entry of this judgment, plaintiff shall calculate and provide to defendant a schedule setting forth the interest amounts pursuant to section 580 and section 1961 that would be due for payment made at certain future dates.


_____
Richard K. Eaton, Senior Judge

Dated: _____
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE RICHARD K. EATON, *SENIOR JUDGE*

_____
                                           :

UNITED STATES OF AMERICA,          :
                                           :

                   Plaintiff,     :        Court No.: 20-00175
            v.               :
                                           :        **PUBLIC VERSION**

AMERICAN HOME ASSURANCE COMPANY,  :
                                           :
                   Defendant.   :
_____ :

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, the United States of America, pursuant to Rule 56 of the Rules of the United States Court of International Trade, moves this Court for summary judgment against defendant, American Home Assurance Company. Summary judgment in favor of plaintiff is appropriate because there are no genuine issues of material fact, and plaintiff is entitled to judgment in its favor as a matter of law, as explained in the accompanying memorandum of law.

WHEREFORE, plaintiff respectfully moves this Court to enter an order granting its motion for summary judgment in this action.

<div style="margin-left: 40%;">

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Justin R. Miller
By:   JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Peter A. Mancuso
PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Plaintiff

</div>

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: February 5, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE RICHARD K. EATON, *SENIOR JUDGE*

———————————————————————

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Court No.: 20-00175 |
| v. | : | |
| | : | **PUBLIC VERSION** |
| AMERICAN HOME ASSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

———————————————————————

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Defendant

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: February 5, 2021

# TABLE OF CONTENTS

STATEMENT OF THE CASE..................................................................................1

    I.      INTRODUCTION .........................................................................1

    II.     UNDISPUTED FACTS ................................................................2

        A.  The Panjee Entries ...............................................................2

        B.  The Pan Pacific Entries ........................................................6

QUESTION PRESENTED..................................................................................8

SUMMARY OF THE ARGUMENT ...................................................................9

ARGUMENT ........................................................................................................9

    I.      STANDARD OF REVIEW .........................................................9

    II.     AHAC IS LIABLE FOR DUTIES, TAXES, FEES, AND CHARGES PURSUANT TO THE TERMS OF THE BOND ................................................10

    III.    AHAC IS LIABLE FOR INTEREST PURSUANT TO 19 U.S.C. § 580 AND POST-JUDGMENT INTEREST PURSUANT TO 28 U.S.C. § 1961, WHICH ARE NOT LIMITED BY THE BOND AMOUNTS .......................................11

    IV.    THIS ACTION IS TIMELY COMMENCED ...................................................12

        A.  The Government's Right of Action Against AHAC Accrued When AHAC Breached The Terms Of The Bonds ...........................................................13

        B.  A Closer Analysis Of The Applicable Judicial Precedent Demonstrates The Timeliness Of Our Claims ..............................................................................16

        C.  The Claims Against AHAC Did Not Accrue Upon The Deemed Liquidation Of The Entries ...............................................................................................21

CONCLUSION......................................................................................................26

i

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................ 9, 10

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Ca., Inc.*,
522 U.S. 192 (1997)................................................................................................ 12, 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................ 10

*Chemsol, LLC v. United States*,
755 F.3d 1345 (Fed. Cir. 2014)............................................................................... 23

*Chevron U.S.A. v. United States*,
923 F.2d 830 (Fed. Cir. 1991)................................................................................. 13

*Clark v. Iowa City*,
20 Wall. 583 (1875)................................................................................................ 13

*Nyhus v. Travel Management Corp.*,
466 F.2d 440 (D.C. Cir. 1972) ............................................................................... 13, 23

*Phone-Mate, Inc. v. United States*,
690 F. Supp. 1048 (Ct. Int'l Trade 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989)................... 10

*Rawlings v. Ray*,
312 U.S. 96 (1941).................................................................................................. 13

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004)................................................................................................ 20

*Stone v. INS*,
514 U.S. 386 (1995)................................................................................................ 20

*Sweats Fashion, Inc. v. Pannill Knitting Co.*,
833 F.2d 1560 (Fed. Cir. 1987)............................................................................... 10

*Texas Apparel Co. v. United States*,
698 F. Supp. 932 (Ct. Int'l Trade 1988) *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*,
493 U.S. 1024 (1990).............................................................................................. 9

*Unexcelled Chem. v. United States,*
    345 U.S. 59 (1953) ............................................................................................ 13

*Union Steel Manufacturing Co., LTD. v. United States,*
    968 F. Supp. 2d 1297 (Ct. Int'l Trade 2014) ................................................... 25

*United States v. Am. Home Assurance Co.,*
    151 F. Supp. 3d 1328 (Ct. Int'l Trade 2015) *amended,* (Ct. Int'l Trade March 15, 2016)
    (hereinafter *AHAC 2016*), *aff'd,* Fed Cir. Appeal No. 18-1960.......................*passim*

*United States v. Am. Home Assurance Co.,*
    789 F.3d 1313 (Fed. Cir. 2015)........................................................................ 12

*United States v. Am. Home Assurance Co.,*
    857 F.3d 1329 (Fed. Cir. 2017)........................................................................ 23

*United States v. Am. Home Assurance Co.,*
    Ct Int'l Trade No. 09-00401 ....................................................................... 24, 25

*United States v. Ataka Am., Inc.,*
    826 F. Supp. 495 (Ct. Int'l Trade 1993) ..................................................... 19, 20

*United States v. Cocoa Berkau, Inc.,*
    789 F. Supp. 1160 (Ct. Int'l Trade 1992) ........................................................ 16

*United States v. Cocoa Berkau, Inc.,*
    990 F.2d 610 (Fed. Cir. 1993).....................................................................*passim*

*United States v. Commodities Export Co.,*
    972 F.2d 1266 (Fed. Cir. 1992)................................................... 13, 16, 18, 23

*United States v. Great Am. Ins. Co. of New York,*
    738 F.3d 1320 (Fed. Cir. 2013)........................................................................ 12

*United States v. Great Am. Ins. Co. of NY,*
    791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) ................................................ 7, 21

*United States v. Ins. Co. of N. Am.,*
    83 F.3d 1507 (D.C. Cir. 1996) ................................................................... 13, 23

*United States v. Reul,*
    959 F.2d 1572 (Fed. Cir. 1992)........................................................................ 23

*United States v. Servitex, Inc.,*
    535 F. Supp. 695 (Ct. Int'l Trade 1982) .......................................................... 12

*United States v. Washington Int'l Ins. Co.*,
  177 F. Supp. 2d 1313 (Ct. Int'l Trade 2001) .......................................................................... 10

**Statutes**

19 U.S.C. § 580 ..........................................................................................................*passim*

19 U.S.C. § 1500(c) .................................................................................................................. 22

19 U.S.C. § 1500(d) .................................................................................................................. 22

19 U.S.C. § 1504(d) .............................................................................................................. 4, 22

19 U.S.C. § 1505 .................................................................................................................. 1, 26

19 U.S.C. § 1505(b) ................................................................................................ 15, 19, 20, 24

19 U.S.C. § 1505(c) .................................................................................................................. 19

19 U.S.C. § 1505(d) .............................................................................................................. 5, 8

19 U.S.C. § 1673 ...................................................................................................................... 10

28 U.S.C. § 1582(2) .................................................................................................................... 1

28 U.S.C. § 1585 ...................................................................................................................... 12

28 U.S.C. § 1961 .................................................................................................. 1, 9, 11, 12, 26

28 U.S.C. § 1961(a) .................................................................................................................. 12

28 U.S.C. § 2415(a) ................................................................................................ 12, 16, 17, 21, 22

**Rules**

Fed. Cir. R. 36 ...................................................................................................................... 5, 25

USCIT R. 56 .............................................................................................................................. 1

**Regulations**

19 C.F.R. § 24.3a ...................................................................................................................... 16

19 C.F.R. § 24.3a(a) ............................................................................................................ 15, 24

19 C.F.R. § 24.3a(d) ........................................................................................ 15, 24

19 C.F.R. § 24.3(e) ................................................................................................. 15

19 C.F.R. § 113.62 ................................................................................................. 14

19 C.F.R. § 113.62(a)(1)(ii) ............................................................................. *passim*

19 C.F.R. § 159.1 ............................................................................................. 18, 22

## **Other Authorities**

*Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms From the People's Republic of China,*
 64 Fed. Reg. 8,308 (Dep't Commerce Feb. 19, 1999) .................................... 2, 6, 11

*Certain Preserved Mushrooms From the People's Republic of China: Initiation of New Shipper Antidumping Duty Review,*
 65 Fed. Reg. 17,257 (Dep't Commerce March 31, 2000) .................................... 4, 7

*Certain Preserved Mushrooms From the People's Republic of China: Notice of Partial Rescission of Antidumping Duty Administrative Review,*
 67 Fed. Reg. 53,914 (Dep't Commerce August 20, 2002) ......................................... 4

*Certain Preserved Mushrroms From the People's Republic of China: Notice of Partial Rescission of Antidumping Duty Administrative Review,*
 66 Fed. Reg. 17,406 (Dep't Commerce March 30, 2001) ......................................... 7

*Certain Preserved Mushrroms From the People's Republic of China: Notice of Partial Rescission of Antidumping Duty Administrative Review,*
 68 Fed. Reg. 41,304 (Dep't Commerce July 11, 2003) ............................................ 7

North American Free Trade Agreement Implementation Act,
 Pub. L. No. 103-182, § 642, 107 Stat. 2057 (1993) .............................................. 29

2A N. Singer, Statutes and Statutory Construction § 46:06, p. 194 (6th rev. ed. 2000) .............. 20

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE RICHARD K. EATON, *SENIOR JUDGE*

———————————————————————————

|                                         |   |                          |
| :-------------------------------------- | - | :----------------------- |
|                                         | : |                          |
| UNITED STATES OF AMERICA,               | : |                          |
|                                         | : |                          |
|                    Plaintiff,           | : | Court No.: 20-00175      |
|          v.                             | : |                          |
|                                         | : | **PUBLIC VERSION**       |
| AMERICAN HOME ASSURANCE COMPANY,        | : |                          |
|                                         | : |                          |
|                  Defendant.             | : |                          |

———————————————————————————

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF <ins>ITS MOTION FOR SUMMARY JUDGMENT</ins>

Plaintiff, the United States of America (the Government), respectfully submits this memorandum of law in support of our motion for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of International Trade (USCIT), against defendant, American Home Assurance Company (AHAC). This action was commenced pursuant to 28 U.S.C. § 1582(2) against AHAC to recover unpaid antidumping duties under eight single transaction bonds (STBs). We respectfully request that this Court enter judgment against AHAC for duties and interest pursuant to 19 U.S.C. § 1505 in the total amount of $379,009.00 — the contractual limit of the bonds — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bonds limit.

## <ins>STATEMENT OF THE CASE</ins>

## I.   <ins>INTRODUCTION</ins>

This action seeks to recover upon eight STBs issued by AHAC that secured the importation of eight entries of preserved mushrooms imported by two importers — Panjee Co., Ltd. (Panjee) and Pan Pacific Products Inc. (Pan Pacific) — from the People's Republic of China

Confidential Information Has Been Redacted

(China).[1]  The entries were subject to an antidumping duty order on certain preserved

mushrooms from China issued by the U.S. Department of Commerce (Commerce).  After being

billed by U.S. Customs and Border Protection (CBP), both Panjee and Pan Pacific failed to pay

the outstanding duties and interest, and consequently, pursuant to the terms and conditions of the

STBs, CBP demanded payment from AHAC.  AHAC has refused to pay.

## II.   **UNDISPUTED FACTS**

### A.   **The Panjee Entries**

Between February 26, 2001 and May 25, 2001, importer Panjee made six entries of

preserved mushrooms from China through the port of San Francisco, California (CBP port code

2809) (the Panjee Entries).  *See* Compl. ¶6; Amended Answer ¶6; Pl. Ex. 1.  The Panjee Entries

were subject to the antidumping duty order on certain preserved mushrooms from China issued

by Commerce (A-570-851) (the Mushroom Order).  *See Notice of Amendment of Final*

*Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain*

*Preserved Mushrooms From the People's Republic of China*, 64 Fed. Reg. 8,308 (Dep't

Commerce Feb. 19, 1999).  *See* Compl. ¶7; Amended Answer ¶7.

At the time of entry, Panjee asserted in its entry papers that the exporter for the

mushrooms in the six Panjee Entries was ████████████████████████████████████

and asserted that the Panjee Entries were subject to antidumping duties at a rate of ████

percent *ad valorem*.  *See* Compl. ¶8; Amended Answer ¶8; Pl. Ex. 1; Pl. Ex. 3 ¶¶8, 9.  The

---

[1] The Government filed a motion for summary judgment in a separate civil action before this
Court that involves many of the same questions of law.  *See United States v. Aegis Security
Insurance Company*, Ct. Int'l Trade No. 20-03628 at Doc. 14, 15 (Jan. 29, 2021).

amount of antidumping duties asserted by Panjee at the time of entry for the six Panjee entries is

reflected as follows:

| Entry Number | Amount of Antidumping Duties Asserted at the Time of Entry |
|---|---|
| DZ102201396 | $73,034.27 |
| DZ102215404 | $68,650.51 |
| DZ102222558 | $34,108.74 |
| DZ102226807 | $71,298.24 |
| DZ102239149 | $34,851.62 |
| DZ102255350 | $34,851.62 |
| Total | $316,795.00 |

*See* Pl. Ex. 1; Pl. Ex. 3 ¶10.

Defendant, AHAC, entered into six STBs with Panjee (the Panjee STBs) to secure the

duties, taxes, and charges owed on each of the Panjee Entries.  *See* Compl. ¶9; Amended Answer

¶9; Pl. Ex. 1; Pl. Ex. 2.  Under the terms of the Panjee STBs, AHAC agreed to be jointly and

severally liable to pay, as demanded by CBP, any duties, taxes, and charges subsequently found

due, legally fixed, and imposed on each of the Panjee Entries up to the "limit of liability"

reflected on the bonds.  *See* Compl. ¶10; Amended Answer ¶10; Pl. Ex. 2.  The amount of the

STBs that Panjee obtained for each of the Panjee Entries is reflected as follows:

| Entry Number | Amount of the STBs Issued by AHAC to Panjee |
|---|---|
| DZ102201396 | $73,035.00 |
| DZ102215404 | $68,651.00 |
| DZ102222558 | $35,000.00 |
| DZ102226807 | $71,299.00 |
| DZ102239149 | $34,852.00 |
| DZ102255350 | $34,852.00 |
| Total | $317,689.00 |

Pl. Ex. 2.

Confidential Information Has Been Redacted

Panjee provided the Panjee STBs to CBP at the time of entry in lieu of making a cash deposit of estimated antidumping duties for each of the Panjee Entries.  Pl. Ex. 3 ¶11; *See Certain Preserved Mushrooms From the People's Republic of China: Initiation of New Shipper Antidumping Duty Review*, 65 Fed. Reg. 17,257 (Dep't Commerce March 31, 2000).

On February 20, 2003, the Panjee Entries liquidated by operation of law (also known as deemed liquidation) at the rate of duty, value, quantity, and amount of duty asserted at the time of entry. [2]  *See* 19 U.S.C. § 1504(d); *United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328, 1342–43 (Ct. Int'l Trade 2015), *amended*, (Ct. Int'l Trade March 15, 2016) (hereinafter,

---

[2] The facts that resulted in the deemed liquidation are as follows.  The Panjee Entries of preserved mushrooms were imported by Panjee using exporter ▓▓▓▓▓▓▓ during the period of review for February 1, 2001 through January 31, 2002.  Each year during the anniversary month of the publication of an antidumping duty order, interested parties may request that Commerce conduct an administrative review of the order.  On February 28, 2002, the Coalition of Fair Preserved Mushrooms Trade (the Mushroom Coalition) requested an administrative review of the mushroom antidumping duty order for ▓▓▓▓▓▓▓ and numerous other companies.  *See* 67 Fed. Reg. 53,914 (Dep't Commerce Aug. 20, 2002).  This request resulted in the suspension of liquidation for entries covered by the administrative review, which included the Panjee Entries. On July 24, 2002, the Mushroom Coalition submitted a letter to Commerce seeking to withdraw their request for an administrative review of ▓▓▓▓▓▓▓.  *Id*.  On August 20, 2002, Commerce published notice of its decision to rescind its administrative review with respect to ▓▓▓▓▓▓▓.  *Id*.  As part of a separate collection action against AHAC, the Court held that Commerce's publication of the August 20, 2002 notice of partial rescission in the Federal Register constituted notice to CBP that the suspensions of liquidation had been lifted for entries exported by ▓▓▓▓▓▓▓.  *AHAC 2016*, 151 F. Supp. 3d at 1342–43.  Because CBP did not liquidate the entries under review in *AHAC 2016* within six months from the publication of the notice of partial rescission, the Court held that the entries at issue in that case liquidated by operation of law at the entered rates.  *Id*.

In this case, the Panjee mushrooms were exported by ▓▓▓▓▓▓▓ during the period of review for February 1, 2001 through January 31, 2002, which is the same period of review and exporter as discussed in *AHAC 2016*.  Thus, the Panjee Entries liquidated by operation of law on February 20, 2003.  *See id.*; 19 U.S.C. § 1504(d).  When an entry liquidates by operation of law, the duties are calculated using "the rate of duty, value, quantity, and amount of duty asserted by the importer of record" at the time of entry.  19 U.S.C. § 1504(d).

*AHAC 2016*), *aff'd*, Fed Cir. Appeal No. 18-1960 at Doc. 66 (judgment affirmed Sept. 6, 2019, pursuant to Federal Circuit Rule 36); *see also* Compl. ¶12; Amended Answer ¶12.

Panjee became liable for $316,795.00 in antidumping duties as a result of the deemed liquidation. *See* Pl. Ex. 3 ¶¶12, 13. On September 26, 2014, CBP billed Panjee for the first time for the outstanding antidumping duties due on each of the Panjee Entries. *See* Pl. Ex. 3 ¶14; Pl. Ex. 4. Panjee did not pay any of the outstanding debt. Pl. Ex. 3 ¶15.

Due to Panjee's failure to pay its debts, CBP began seeking payment from AHAC, as surety, on the STBs that secured the Panjee Entries. On July 6, 2015, CBP made its first demand for payment from AHAC for the debt owed under the Panjee STBs via the Formal Demand on Surety for Payment of Delinquent Amounts Due (known as the "612 Report"). *See* Compl. ¶17; Amended Answer ¶17; Pl. Ex. 3 ¶16; Pl. Ex. 5. On the date the first 612 Report was sent to AHAC, the amount of the outstanding debt owed by Panjee, calculated in accordance with the deemed liquidation of the entries at the rate of ███ percent *ad valorem*, plus interest that has accumulated on the debt pursuant to 19 U.S.C. § 1505(d), was $323,903.48, which exceeded the face value of the STBs for the Panjee Entries. *See* Compl. ¶17; Amended Answer ¶17; Pl. Ex. 3 ¶17; Pl. Ex. 5.[3]

To date, AHAC has not made any payment involving the outstanding debt for the Panjee Entries. *See* Compl. ¶21; Amended Answer ¶21; Pl. Ex. 3 ¶18.

---

[3] As of the filing of this complaint, the amount of the outstanding debt owed by Panjee, plus interest that has accumulated on the debt pursuant to 19 U.S.C. § 1505(d), is approximately $405,690.35. Pl. Ex. 3 ¶32. Again, this amount exceeds the face value of the STBs for the Panjee imports

B. **The Pan Pacific Entries**

Between March 31, 2001 and January 4, 2002, importer Pan Pacific made two entries of preserved mushrooms from China, through the port of San Francisco, California (CBP port code 2809) identified as Entry No. DZ1-02222590 and Entry No. DZ1-02375125 (the Pan Pacific Entries). *See* Compl. ¶¶25, 43; Amended Answer ¶¶25, 43; Pl. Ex. 6. The Pan Pacific Entries were subject to antidumping duties pursuant to the Mushroom Order. *See* 64 Fed. Reg. 8,308 (Dep't Commerce Feb. 19, 1999); Compl. ¶¶26, 44; Amended Answer ¶¶26, 44; Pl. Ex. 6. At the time of entry, Pan Pacific asserted in its entry papers that the exporter for the imported merchandise covered by Entry No. DZ1-02222590 was ████████ (the same exporter as the Panjee Entries) and that the exporter for the imported merchandise covered by Entry No. DZ1-02375125 was ██████████████ *See* Compl. ¶¶27, 45; Amended Answer ¶¶27, 45; Pl. Ex. 3 ¶20; Pl. Ex. 6. Pan Pacific also asserted in its entry papers that the merchandise covered by both Pan Pacific Entries was subject to antidumping duties at a rate of ████ percent *ad valorem*. *See* Compl. ¶¶27, 45; Amended Answer ¶¶27, 45; Pl. Ex. 3 ¶21; Pl. Ex. 6.

The amount of antidumping duties asserted by Pan Pacific at the time of entry is reflected as follows:

| Entry Number | Amount of Antidumping Duties Asserted at the Time of Entry |
|---|---|
| DZ102222590 | $31,319.98 |
| DZ102375125 | $29,754.77 |
| Total | $61,074.75 |

*See* Pl. Ex. 3 ¶22; Pl. Ex. 6.

Defendant, AHAC, entered into two STBs with Pan Pacific (Pan Pacific STBs) to secure the duties, taxes, and charges owed on both Pan Pacific Entries. *See* Compl. ¶¶28, 46; Amended

6

Answer ¶¶28, 46; Pl. Ex. 7.  Under the terms of the Pan Pacific STBs, AHAC agreed to be

jointly and severally liable to pay, as demanded by CBP, any duties, taxes, and charges

subsequently found due, legally fixed, and imposed on each of the Pan Pacific Entries up to the

"limit of liability" reflected on the bonds.  *See* Compl. ¶¶29, 47; Amended Answer ¶¶29, 47; Pl.

Ex. 7.  The amount of the STBs that Pan Pacific obtained for each entry is reflected as follows:

| Entry Number | Amount of the STBs Issued by AHAC to Pan Pacific |
|---|---|
| DZ102222590 | $31,320.00 |
| DZ102375125 | $30,000.00 |
| Total | $61,320.00 |

Pl. Ex. 7.

Pan Pacific provided the two Pan Pacific STBs to CBP at the time of entry, in lieu of

making a cash deposit of the estimated antidumping duties for the Pan Pacific Entries.  *See* Pl.

Ex. 3 ¶23; 65 Fed. Reg. 17,257 (Dep't Commerce March 31, 2000); *Certain Preserved*

*Mushrooms From the People's Republic of China: Initiation of New Shipper Antidumping Duty*

*Review and Partial Rescission of Administrative Review*, 66 Fed. Reg. 17,406 (Dep't Commerce

March 30, 2001).  Between February 20, 2003 and January 11, 2004, the Pan Pacific Entries

deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of

entry.[4]  *See AHAC 2016*, 151 F. Supp. 3d 1342–43; Compl. ¶¶31, 49; Amended Answer ¶¶31,

---

[4] One of the Pan Pacific Entries (Entry DZ1-02222590) and the Panjee Entries were exported by
the same exporter (████████████) during the same period of review.  Consequently, Entry
DZ1-02222590 became deemed liquidated for the same reasons as explained for the Panjee
Entries in footnote 2, *supra*.  The second Pan Pacific Entry (Entry DZ1-02375125) deemed
liquidated six-months after the publication of the final results of the administrative review, which
lifted the suspension of liquidation for entries tied to the exporter ████████.  68 Fed.
Reg. 41,304, 41,309 (Dep't Commerce July 11, 2003); *see United States v. Great Am. Ins. Co.*,
791 F. Supp. 2d 1337, 1365 (Ct. Int'l Trade 2011).  Accordingly, Pan Pacific Entry DZ1-
02375125 deemed liquidated on January 11, 2004 at the rate of duty, value, quantity, and amount
of duty asserted at the time of entry.

49.  Pan Pacific became liable for $61,074.75 in antidumping duties as a result of the deemed liquidation of the entries.  *See* Pl. Ex. 3 ¶25.

On September 26, 2014, CBP billed Pan Pacific for the first time for the antidumping duties owed on each of the Pan Pacific Entries.  *See* Pl. Ex. 3 ¶26; Pl. Ex. 8.  Pan Pacific did not pay any of the outstanding debts.  *See* Pl. Ex. 3 ¶27.

Due to Pan Pacific's failure to pay its debts, CBP began seeking payment from AHAC on the STBs that secured the Pan Pacific Entries.  On February 3, 2016, CBP made its first demand for payment from AHAC for the Pan Pacific Entries via the 612 Report.  *See* Compl. ¶¶35, 53; Amended Answer ¶¶35, 53; Pl. Ex. 3 ¶28; Pl. Ex. 9.  On the date the first 612 Report was sent to AHAC, the amount of the outstanding debt owed by Pan Pacific, calculated in accordance with the deemed liquidation of the entries at the rate of ███ percent *ad valorem*, plus interest that has accumulated on the debt pursuant to 19 U.S.C. § 1505(d), was $63,532.05, which exceeded the face value of the STBs for the Pan Pacific Entries.  *See* Compl. ¶¶35, 53; Amended Answer ¶¶35, 53; Pl. Ex. 3 ¶29; Pl. Ex. 9.[5]

To date, AHAC has not made any payment involving the outstanding debt for the Pan Pacific Entries.  *See* Compl. ¶¶39, 57; Answer ¶¶39, 57; Pl. Ex. 3 ¶30.

## QUESTION PRESENTED

Whether AHAC is jointly and severally liable for the duty obligations of the importers, Panjee and Pan Pacific, up to the limit of liability of the bonds issued by AHAC, and for interest

---

[5] As of the filing of this complaint, the amount of the outstanding debt owed by Pan Pacific, plus interest that has accumulated on the debt pursuant to 19 U.S.C. § 1505(d), is approximately $78,212.84.  Pl. Ex. 3 ¶33.  Again, this amount exceeds the face value of the STBs for the Pan Pacific imports.

pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not limited by the bond.

## SUMMARY OF THE ARGUMENT

AHAC secured the importation of the subject merchandise by issuing eight STBs. Pursuant to the terms of the bonds, AHAC agreed to be jointly and severally liable for the duty obligations of the importers, Panjee and Pan Pacific.  For each of the entries at issue, the importers failed to pay duties and interest owed for the merchandise.  Because the importers failed to pay, pursuant to the terms of the bonds, AHAC is liable up to the amount of the bond for the importers' defaults ($379,009.00), plus applicable interest.

This action is timely commenced.  The statute of limitations for a collection action against a surety based upon a breach of a bond is six years.  The Government's right of action to collect upon a bond against a surety does not accrue until the bond is breached by the surety.  In this case, AHAC breached its bonds when it refused to pay CBP's demands for the outstanding debt within 30 days of the issuance of the demands.  We commenced this action within six years of this breach.  Therefore, this action is timely.

## ARGUMENT

### I.   STANDARD OF REVIEW

On a motion for summary judgment, the court determines whether there are any factual disputes that are material to the resolution of the action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct. Int'l Trade 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990) (citations omitted).  "The court may not resolve or try factual issues on a motion for summary

judgment." *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Trade 1988),

*aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) (citation omitted).

There are no genuine disputes over material facts for purposes of granting the

Government's motion and this case is ripe for summary judgment.  *See*, *e.g.*, *Anderson*, 477 U.S.

at 247–248; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325–28 (1986); *Sweats Fashion, Inc. v.

Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

## II.    AHAC IS LIABLE FOR DUTIES, TAXES, FEES, AND CHARGES PURSUANT TO THE TERMS OF THE BOND

An importer is required to pay the antidumping duties assessed by the United States

pursuant to 19 U.S.C. § 1673.  A surety who underwrites a customs bond agrees to be jointly and

severally liable for any duties, taxes, fees, and charges owed by the importer up to the limit of

liability on the face of the bond.  *See United States v. Washington Int'l Ins. Co.*, 177 F. Supp. 2d

1313, 1316 (Ct. Int'l Trade 2001) ("Normally, a surety is liable for any duties, fees, and interest

owed up to the face amount of the surety bond").

This obligation arises pursuant to the terms of the bonds and CBP's regulations.  The

contractual terms of the bonds provide that "[i]n order to secure payment of any duty, tax or

charge and compliance with law or regulation as a result of activity covered by any condition

referenced below, we, the below named principal(s) and surety(ies), bind ourselves to the United

States in the amount or amounts, as set forth below."  Pl. Ex. 2; Pl. Ex. 7.  Furthermore, the

requirements of 19 C.F.R. § 113.62(a)(1)(ii) are also incorporated into the terms of the bonds.

*Id.* ("Principal and surety agree that they are bound to the same extent as if they executed a

separate bond *covering each set of conditions incorporated by reference to the Customs

Regulations into this bond*.") (emphasis added). 19 C.F.R. § 113.62(a)(1)(ii) provides that "the

obligors (principal and surety, jointly and severally) agree to: Pay, as demanded by CBP, all

additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond."

Here, AHAC entered into six STBs with Panjee, with a total limit of liability of $317,689.00, and two STBs with Pan Pacific, with a total limit of liability of $61,320.00.  Pl. Ex. 2; Pl. Ex. 7.  The Panjee and Pan Pacific STBs secured the importation of the eight entries of preserved mushrooms at issue.  Pl. Ex. 1; Pl. Ex. 2; Pl. Ex. 6; Pl. Ex. 7.  Pursuant to the terms of the STBs, AHAC agreed to be jointly and severally liable for the duty obligations of Panjee and Pan Pacific.  Pl. Ex. 2 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)); Pl. Ex. 7 (same).

The importers, Panjee and Pan Pacific, are legally liable for antidumping duties for the merchandise secured by the bonds pursuant to the mushroom order and the deemed liquidation of the entries.  *See* 64 Fed. Reg. 8,308 (Dep't Commerce Feb. 19, 1999); Compl. ¶¶7, 26, 44; Amended Answer ¶¶7, 26, 44.  For each of the Panjee and Pan Pacific Entries, the importers failed to pay the duties and interest owed for the imported merchandise as demanded by CBP. *See* Pl. Ex. 3 ¶¶15, 27.  Because Panjee and Pan Pacific failed to pay their outstanding debts, AHAC is liable up to the amount of the bonds ($379,009.00) for the importers' defaults (plus interest described below).  *See* Pl. Ex. 2 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)); Pl. Ex. 7 (same).

## III. AHAC IS LIABLE FOR INTEREST PURSUANT TO 19 U.S.C. § 580 AND POST-JUDGMENT INTEREST PURSUANT TO 28 U.S.C. § 1961, WHICH ARE NOT LIMITED BY THE BOND AMOUNTS

AHAC is liable for interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not limited by the bond amounts.

First, section 580 provides that in suits brought by the Government on a bond for the recovery of duties, "interest shall be allowed, at the rate of 6 per centum a year, from the time

when said bond[] became due." 19 U.S.C. § 580.  As a matter of law, "19 U.S.C. § 580 provides for interest on bonds securing both traditional customs duties and antidumping duties." *United States v. Am. Home Assurance Co.*, 789 F.3d 1313, 1324 (Fed. Cir. 2015).

Second, section 1961(a) provides that post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Although section 1961 does not directly apply to judgments rendered by the Court of International Trade, 28 U.S.C. § 1585 extends the power to award post-judgment interest under section 1961 to this Court.  *United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320, 1326 (Fed. Cir. 2013).  Post-judgment interest is available as a matter of right to a prevailing party and is calculated from the date of entry of the judgment.  *United States v. Servitex, Inc.*, 535 F. Supp. 695, 696 n.5 (Ct. Int'l Trade 1982); 28 U.S.C. § 1961(a).

Accordingly, AHAC is liable for interest pursuant to 19 U.S.C. § 580, running from the date the first bills issued to the surety became delinquent, and pursuant to 28 U.S.C. § 1961, running from the date that the judgment in this civil action is entered by the Court.

## IV.    **THIS ACTION IS TIMELY COMMENCED**

28 U.S.C. § 2415(a) provides that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . ."  This limitations period applies to affirmative actions against sureties for the collection of debts owed under a bond.  *See United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 612–13 (Fed. Cir. 1993).

The United States Supreme Court has observed the standard rule that a "limitations period commences when the plaintiff has 'a complete and present cause of action.'"  *Bay Area*

*Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Ca., Inc.*, 522 U.S. 192, 201

(1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)); *Clark v. Iowa City*, 20 Wall. 583, 589

(1875) (noting that "[a]ll statutes of limitation begin to run when the right of action is complete .

. . ."). "'[U]nder federal law governing statutes of limitations, a cause of action accrues when all

events necessary to state a claim have occurred.'" *United States v. Commodities Export Co.*, 972

F.2d 1266, 1270 (Fed. Cir. 1992) (quoting *Chevron U.S.A. v. United States*, 923 F.2d 830, 834

(Fed. Cir. 1991)).

### A. The Government's Right Of Action Against AHAC Accrued When AHAC Breached The Terms Of The Bonds

In the context of an action to collect upon a customs bond, the Court of Appeals for the

Federal Circuit has held that "the date of accrual occurs at the time of the breach of the bond."

*Cocoa Berkau*, 990 F.2d at 613 (citations omitted); *see also Unexcelled Chem. Corp. v. United

States*, 345 U.S. 59, 65 (1953) ("A cause of action is created when there is a breach of duty owed

the plaintiff.").

To determine when a bond has been breached, the Federal Circuit looks to the "language

of the bond stipulating the relevant obligations of the bond principal and its surety." *Cocoa

Berkau*, 990 F.2d at 613; *see also, e.g., United States v. Ins. Co. of N. Am.*, 83 F.3d 1507, 1510

(D.C. Cir. 1996) ("Whether a demand was required to trigger the statute of limitations depends

on the terms of the bond.  If it 'envisions an actual demand, the statute of limitations is set in

motion only by such a demand.'") (quoting *Nyhus v. Travel Management Corp.*, 466 F.2d 440,

453 (D.C. Cir. 1972)).

Here, as we demonstrate below, AHAC breached the terms of its bonds when it refused

to pay CBP's payment demands for the outstanding debt within 30 days of the issuance of the

demands.  A condition of all of the bonds issued by AHAC is that the principal and surety agree

13

to pay "as demanded by CBP."  Pl. Ex. 2 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)); Pl. Ex. 7

(same).  Indeed, Section II of the bonds provide that "[t]his bond includes the following

agreements."  *Id.*  Below that heading, the parties selected "Activity Code 1," which includes

"Customs Regulations in which conditions codified."  *Id.*  The regulations for Activity Code 1

are set forth in 19 C.F.R. § 113.62, which provides in part as follows:

> (1) If merchandise is imported and released from CBP custody or
> withdrawn from a CBP bonded warehouse into the commerce of, or
> for consumption in, the United States, or under § 181.53 of this
> chapter is withdrawn from a duty-deferral program for exportation
> to Canada or Mexico or for entry into a duty-deferral program in
> Canada or Mexico, the *obligors (principal and surety, jointly and
> severally) agree to*:
> (ii) *Pay, as demanded by CBP, all additional duties, taxes, and
> charges subsequently found due*, legally fixed, and imposed on any
> entry secured by this bond.

19 C.F.R. § 113.62(a)(1)(ii) (emphasis added).

The bonds, therefore, incorporate 19 C.F.R. § 113.62 as part of its contractual

terms.  *See* Pl. Ex. 2 ("Principal and surety agree that they are bound to the same extent as

if they executed a separate bond *covering each set of conditions incorporated by reference

to the Customs Regulations into this bond*.") (emphasis added); Pl. Ex. 7 (same).  Thus, the

terms of the bonds at issue were not breached by AHAC until CBP made a demand for

payment against AHAC and AHAC failed to pay the duties within the time required by

law.

By statute, "[d]uties, fees, and interest determined to be due upon liquidation or

reliquidation are due 30 days after issuance of the bill for such payment."  19 U.S.C. § 1505(b).

CBP's regulations involving demands for payment mirror this 30-day time frame.  Consistent

with the statute, the regulations state that, "bills for supplemental duties, taxes and fees

(increased or additional duties, taxes, and fees assessed upon liquidation or reliquidation)," are

14

due and payable within 30 days of the date of issuance of the bill.  19 C.F.R. § 24.3a(a)

(incorporating the 30-day time frame of 19 C.F.R. § 24.3(e)).

      Under this framework, when a debt such as antidumping duties arises, CBP bills the

principal and provides 30 days for payment.  If the principal fails to fully pay the bill within the

30-day period, the unpaid balance is considered delinquent.  CBP will then make a formal

demand on the surety and again provide 30 days for the payment.  If the surety fails to pay the

demand within the 30 days, the surety falls in breach of the bond and the related law — 19

U.S.C. § 1505(b) and 19 C.F.R. § 24.3a(a) (incorporating 19 C.F.R. § 24.3(e)).

      This form of staggered billing is reflected in 19 C.F.R. § 24.3a, which provides as

follows:

> (d) *Notice* -
> (1) *Principal*. The principal will be notified at the time of the initial
> billing, and every 30 days after the due date until the bill is paid or
> otherwise closed.
>
>         *      *      *      *      *
>
> (2) *Surety*.
> (i) CBP will report outstanding bills on a Formal Demand on Surety
> for Payment of Delinquent Amounts Due, for bills more than 30
> days past due (approximately 60 days after bill due date), and every
> month thereafter until the bill is paid or otherwise closed.

19 C.F.R. § 24.3a(d)(1)–(2).

      This legal framework demonstrates the timeliness of this action.  CBP first billed the

principals, Panjee and Pan Pacific, on September 26, 2014.  Pl. Ex. 4; Pl. Ex. 8.  When Panjee

and Pan Pacific failed to pay, CBP then made its first demands for payment from AHAC on July

6, 2015 (for the Panjee bills) and February 3, 2016 (for the Pan Pacific bills).  Pl. Ex. 5; Pl. Ex. 9.

When the bills to AHAC became delinquent on August 6, 2015 and March 5, 2016, respectively

(*i.e.*, 30 days after the demands to AHAC), AHAC breached the terms of the bonds.  *See* Pl Ex. 2

(incorporating 19 C.F.R. § 113.62(a)(1)(ii)); Pl. Ex. 7 (same); 19 C.F.R. § 24.3a; 19 U.S.C. §

1505(b).  It is these breaches that created our claims against the surety.

 The statute of limitations for a collection action against a surety based upon a breach of a

bond is six years.  28 U.S.C. § 2415(a); *see Cocoa Berkau, Inc.*, 990 F.2d at 612–13.  We

commenced this action on September 16, 2020, which was within six years of August 6, 2015

and March 5, 2016.  Therefore, this action is timely because it was commenced within six years

of the breach of the bonds by AHAC.

### B.  A Closer Analysis Of The Applicable Judicial Precedent Demonstrates The Timeliness Of Our Claims

 In *Cocoa Berkau*, the Federal Circuit memorialized the rule that the breach of the bond

marks the date of accrual for claims arising from a bond.  *Cocoa Berkau*.  990 F.2d at 613–14;

*see also Commodities Export Co.*, 972 F.2d at 1270–72 (measuring the date of accrual from the

breach of a bond, rather than a regulatory event).  In *Cocoa Berkau*, the principal and surety

entered into an "Immediate Delivery and Consumption Entry Bond" to secure the importation of

chocolate.  *United States v. Cocoa Berkau*, Inc., 789 F. Supp. 1160, 1161 (Ct. Int'l Trade 1992).

The terms of the bond required the principal to redeliver the chocolate upon proper demand by

CBP and, upon redelivery default, both the principal and surety "would be liable for liquidated

damages as may be demanded by Customs, not to exceed the face amount of the bond."  *Cocoa

Berkau*, 990 F.2d at 611.  On February 11, 1985, CBP issued a notice to the principal demanding

redelivery within 30 days.  *Id.*  The principal failed to redeliver and on June 26, 1985, CBP

demanded payment for liquidated damages from the principal within 60 days.  *Id.* at 611–12.

The principal did not pay.  *Id.* at 612.  On November 30, 1990, CBP then sought payment of the

liquidated damages from the surety and, upon default of the surety, commenced suit on August

22, 1991.  *Id.*

16

The surety moved to dismiss the action as untimely under 28 U.S.C. § 2415(a), arguing that the Government's right of action accrued no later than March 13, 1985, when the principal breached the bond (*i.e.*, 30 days after the redelivery demand).  *Id.*  Alternatively, the Government countered that its right of action accrued on December 30, 1990, when the surety defaulted on its obligations to pay liquidated damages.  *Id.*

In its decision, the Federal Circuit held that a claim accrues when all events fixing liability have occurred and for "a claim arising from a bond . . . the date of accrual occurs at the time of the breach of the bond."  *Id.* at 613 (citation omitted).  Because the bond in *Cocoa Berkau* "placed an obligation on the bond principal to redeliver the imported merchandise upon a proper demand" for redelivery by Customs, the Federal Circuit found that, "[t]he bond was breached, and . . . the government's right of action accrued, when the principal failed to redeliver upon proper demand."  *Id.*

In accordance with the holding in *Cocoa Berkau*, AHAC breached the terms of its STBs when it refused to pay CBP's demands for the outstanding debts within 30 days of the issuance of the demands.  Therefore, this action is timely as it was commenced within six years of these breaches.

The Court in *Cocoa Berkau* also observed that, "[a]bsent an agreement between the parties, the surety incurs derivative liability when the principal breaches the bond."  *Id.* at 614.  This portion of the *Cocoa Berkau* Court's decision (measuring the date of the accrual for claims against the surety from the breach of the principal) is not applicable in this case because of the differences in the terms of the bonds at issue in each action.  Specifically, in *Cocoa Berkau*, the "default of redelivery" by the principal was a condition precedent prior to seeking liquidated damages from either the principal or surety for the immediate delivery bond.  Thus, the Court's

17

determination that the breach of the bond occurred "when the principal failed to redeliver upon proper demand," rather than "when the surety failed to pay" was mandated based on the plain meaning of the agreed terms of the bond. *Id.* at 613. No such condition precedent exists for the STBs issued by AHAC. *See* Pl. Ex. 2; Pl. Ex. 7.

Notwithstanding the differences in the terms of the bonds, should the Court apply this portion of the holding of *Cocoa Berkau* to the facts here, this action is still timely because we commenced this case within six years of the breach of the bonds by the principals, Panjee and Pan Pacific. Indeed, we commenced this action on September 16, 2020, which was within six years of the issuance of any of the bills to Panjee, Pan Pacific, or AHAC. *See* Pl. Ex. 4; Pl. Ex. 5; Pl. Ex. 8; Pl. Ex. 9.

The Court in *Cocoa Berkau* also struggled with whether the "as demanded" language in the immediate delivery bond was a condition of the surety's liability or "merely a procedural step" for obtaining the outstanding debt. *Cocoa Berkau*, 990 F.2d at 613–14; *c.f. Commodities Export Co.*, 972 F.2d at 1270–72 (analyzing whether a demand for payment, imposed by regulation, triggered the accrual of the Government's claims). The statutory and regulatory framework discussed above shows that, for purposes of the STBs issued by AHAC, the demand against AHAC was not merely a procedural step. Although a liquidation or a deemed liquidation signifies the "final computation" of the duties (19 C.F.R. § 159.1), the payment of the "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation" is not due until "30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b). And a condition of the STBs issued by AHAC is a demand for payment by CBP. *See* Pl Ex. 2 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)); Pl. Ex. 7 (same).

Finally, this Court's decision in *United States v. Ataka Am., Inc.*, 826 F. Supp. 495 (Ct. Int'l Trade 1993), further demonstrates that the date of the accrual should be measured from the date of the breach of the bond by AHAC.  In *Ataka*, the Court was tasked with determining when duties became "due" as per the terms of the bond at issue.  *Id.* at 500.  To answer this question, the Court looked to 19 U.S.C. § 1505(b).  This provision of the statute has not always required payment within "30 after issuance of the bill."  19 U.S.C. § 1505(b) (as amended in 2004).  An older version of section 1505 expressly provided that duties determined to be due upon liquidation or reliquidation were due "15 days after . . . liquidation or reliquidation."  19 U.S.C. § 1505(c) (1988).  Under this prior version of the statute, the duty to pay occurred even in the absence of a bill — meaning the Government's claim for nonpayment accrued fifteen days after the liquidation or reliquidation.  *Ataka Am., Inc.*, 826 F. Supp. at 500–01.  Relying on this language, the Court explained in *Ataka* that "[a]s to the surety, the government must sue within six years (following the fifteenth day after liquidation)."  *Id*. at 503.

In 1993, and still in effect today, Congress amended the language of section 1505 to specify that duties are due "30 days after issuance of the bill for such payment."  19 U.S.C. § 1505(b); North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, § 642, 107 Stat. 2057 (1993). [6]  This statutory amendment reflects a change by Congress regarding when the Government's ability to pursue a claim for nonpayment would begin — changing the

---

[6] The entries at issue in *Ataka* were made between January 1976 and March 1977, and the Court determined that new statute 19 U.S.C. § 1505 (1984) applied to the entries based upon the effective date of the act.  *Ataka Am., Inc.*, 826 F. Supp. at 500–501.  As described above, this version of the statute stated, "duties determined to be due upon liquidation or reliquidation shall be due 15 days after the date of that liquidation or reliquidation."  19 U.S.C. § 1505(c) (now amended subsection (b) as set out above).  By the time the *Ataka* litigation concluded, the statute had been amended, but the court's decision involved application of the former language from the 1984 version.

accrual date from fifteen days post-liquidation to thirty days post-bill.  *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").  Applying the Court's logic from *Ataka*, now that section 1505 requires issuance of a bill plus 30 days before payment is due, the Government's six-year limitations period does not begin prior to the end of that 30-day period.

A comparison of the last two sentences of the current version of section 1505(b) demonstrates that Congress understands the significance between the date of liquidation and the date of a bill.  In the second to last sentence, Congress requires the payment of any "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation" to be made "30 days after issuance of the bill for such payment."  19 U.S.C. § 1505(b).  Then, in the last sentence, Congress requires the payment of any "[r]efunds of excess moneys deposited, together with interest thereon," to be made "within 30 days of liquidation or reliquidation."  *Id*.  Congress clearly understands the difference between the date of liquidation and the date of a bill, given the use of these different terms in the same paragraph of the statute.  *Sosa v. Alvarez-Machain,* 542 U.S. 692, 711 n.9 (2004) (articulating the rule that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended") (citing 2A N. Singer, Statutes and Statutory Construction § 46:06, p. 194 (6th rev. ed. 2000)).

Accordingly, the case law analyzing the accrual of a right of action to collect upon a bond, and the relevant statutory and regulatory framework, demonstrate that the Government's action against AHAC was timely filed in this matter.

### C. The Claims Against AHAC Did Not Accrue Upon The Deemed Liquidation Of The Entries

In its amended answer, AHAC alleges that the Government's complaint should be "precluded under *Res Judicata* as this action involves the same importer (Panjee), same products (preserved mushrooms), same antidumping case (A-570-851), same antidumping review period (2001 to 2002), same deemed liquidation/Statute of Limitation issue, and same Plaintiff and Defendant as . . . [*AHAC 2016*], 151 F. Supp. 3d 1328 (Ct. Int'l Trade 2015), *amended*, (Ct. Int'l Trade Mar. 15, 2016) affirmed *Per Curi[a]m* (Ct. No. 2018-1960, Judgment (Fed. Cir. Sept. 6, 2019)." Amended Answer at Seventh Affirmative Defense.[7]

In *AHAC 2016*, defendant (AHAC) questioned the timeliness of the Government's claims. The Court found that certain entries in the case had liquidated by operation of law. In determining the timeliness of certain of the Government's claims, the Court measured the date of accrual from the date of the deemed liquidation. *AHAC 2016*, 151 F. Supp. 3d at 1342–43.

The Court provided as follows:

> Because Customs failed to liquidate within six months of the date of publication of the notices of rescission in the Federal Register, these entries were liquidated by operation of law at the entered rates, at which time the Government's cause of action on the bonds began to accrue. Having failed to bring its collection actions within six years of the dates these entries were deemed liquidated, the Government's right to collect any duties from AHAC on the entries in court numbers 10-002, 10-003, and thirty of the seventy-nine entries of fresh garlic in court number 10-311 is time-barred. *See* 28 U.S.C. § 2415(a).

*Id*.[8]

---

[7] The bases for the majority of defendant's affirmative defenses remain unclear, and we intend to address them in full after AHAC articulates its defenses in response to this motion.

[8] *See also United States v. Great Am. Ins. Co. of NY*, 791 F. Supp. 2d 1337, 1367–68 (Ct. Int'l Trade 2011), which rendered a similar holding:

As reflected in its seventh affirmative defense, AHAC is advancing a similar defense in this case as it did in *AHAC 2016*.  We anticipate that AHAC will argue that the Government's claims are time-barred as they were commenced more than six years after the claims accrued, which AHAC will measure from the date that the entries deemed liquidated.  However, for the reasons discussed below, using the date of deemed liquidation as the accrual date for the Government's claims is misplaced.

As part of its administrative functions when merchandise enters the United States, CBP is obligated to "fix the final amount of duty to be paid on such merchandise and determine any increased or additional duties, taxes, and fees due or any excess of duties, taxes, and fees deposited."  19 U.S.C. § 1500(c).  CBP is also obligated to "liquidate the entry."  *Id*. § 1500(d).  "Liquidation means the final computation or ascertainment of the duties . . . ."  19 C.F.R. § 159.1.

A deemed liquidation occurs when CBP fails to act within the timeframe required by law.  Unless an extension has occurred, CBP must liquidate an entry, "within 6 months after receiving notice of the removal [of a suspension] from the Department of Commerce, other agency, or a court with jurisdiction over the entry."  19 U.S.C. § 1504(d).  If CBP fails to act within this time period, the entry "shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record."  *Id*.  This is commonly referred to as a

---

The Government's cause of action accrued six months after publication of the Notice of Rescission when the Coastal Entries deemed liquidated and the Government's right to collect additional duties attached.  *See* 19 C.F.R. § 113.62(a).  The Government failed to bring its claim within six years after the Coastal Entries were deemed liquidated, the event triggering the Government's cause of action.  Therefore, its right to collect any duties on the Coastal Entries is time-barred.  *See* 28 U.S.C. § 2415(a).

"deemed liquidation."  *Chemsol, LLC v. United States*, 755 F.3d 1345, 1349 (Fed. Cir. 2014)

(explaining liquidation and deemed liquidation).

 The deemed liquidation of the entries in this case did not trigger the date of accrual

because "all events necessary to state a claim" against AHAC had not yet occurred at the time of

the deemed liquidation.  *Commodities Export Co.*, 972 F.2d at 1270 (citation omitted).  Although

liquidation or a deemed liquidation signifies the final computation of the duties, the payment of

the sum total of liability is not due until "30 days after issuance of the bill for such payment" (19

U.S.C. § 1505(b)), and a condition of the bonds issued by AHAC is a demand for payment by

CBP.  *See* Pl. Ex. 2 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)); Pl. Ex. 7 (same).

 Federal Circuit precedents reflect that sureties are generally "obligated to pay the United

States" only after receiving a demand for payment because "only from then can the United States

lay claim to a loan to the surety."  *United States v. Reul*, 959 F.2d 1572, 1581 (Fed. Cir. 1992);

*see also United States v. Am. Home Assurance Co.*, 857 F.3d 1329, 1335–1336 (Fed. Cir. 2017)

("[T]he time when the bonds became due can be no earlier than the government's first formal

demand for payment.") (citation omitted).  And other courts of appeals have held that similar

language in surety bonds makes "demand . . . a prerequisite to liability and therefore to the

running of the statute of limitations."  *See*, *e.g.*, *Ins. Co. of N. Am.*, 83 F.3d at 1510.  As held by

the Court of Appeals for the District of Columbia Circuit, "[w]hether a demand was required to

trigger the statute of limitations depends on the terms of the bond.  If it 'envisions an actual

demand, the statute of limitations is set in motion only by such demand.'"  *Id*.  (quoting *Nyhus*,

466 F.2d at 453).

Furthermore, the terms of the STBs along with 19 U.S.C. § 1505(b) and 19 C.F.R. §§ 113.62(a)(1)(ii), 24.3a(d)(1)–(2) demonstrate that the issuance of a bill is a prerequisite to filing a civil action for collection of the duties that are determined to be due on liquidation.

In *AHAC 2016*, the Court rendered its decision that the deemed liquidation of the subject entries triggered the date of accrual for the Government's claims against the surety, without discussing whether, under the applicable legal standard, a demand for payment from the surety was a necessary prerequisite for the assertion of our claims. *AHAC 2016*, 151 F. Supp. 3d at 1342–43. The Court did not discuss the *Cocoa Berkau* standard for determining when a limitations period begins to run, *i.e.*, "[w]ith respect to a claim arising from a bond . . . the date of accrual occurs at the time of the breach of the bond." 990 F.2d at 613 (citation omitted). Nor did the Court address the terms of the bonds at issue, the date upon which the bonds were breached, or the effect of 19 U.S.C. § 1505(b) on the accrual of the Government's right of action.

This omission is understandable. The Government did not present these arguments to the Court in its briefing of the merits in *AHAC 2016* because it did not anticipate that the measurement of the date of accrual would present an issue in deciding the timeliness of the Government's claims. Rather, the Government's briefing on the motion for summary judgment focused on the question of whether the entries deemed liquidated by operation of law.

After the issuance of the Court's decision in *AHAC 2016*, the Government moved for leave of Court to allow it to file a supplemental brief. *United States v. Am. Home Assurance Co.*, Ct. Int'l Trade No. 09-00401 at Doc. 175 (Jan. 19, 2018). The Government explained that, "legal precedent and statutory and regulatory provisions, which were not brought to the Court's attention initially, reveal, contrary to what several judicial decisions have stated, that accrual of the right of action to bring a collection case does not begin at the time of liquidation." *Id.* at 1.

24

To correct the oversight, the Government requested permission to file a supplemental brief to address, the "impact of 19 U.S.C. § 1505(b); 19 C.F.R. §§ 24.3; 24.3a(a) & (d); 113.62; and certain legal precedent from the U.S. Court of Appeals for the Federal Circuit and this Court" on the question of the date of accrual.  *Id.* at 2.

The Court denied the request.  It determined that, "[t]o the extent plaintiff seeks an opportunity to raise a new legal theory that it failed to raise in its motion for summary judgment, regarding issues that were decided in Slip Op. 15-141 (March 15, 2016), ECF No. 158, those arguments were waived."  *United States v. Am. Home Assurance Co.*, Ct. Int'l Trade No. 09-00401 at Doc. 177 (order, Jan. 2, 2018) (citation omitted).  It also stated that, "[t]o the extent plaintiff's motion may be considered a motion for rehearing, it is untimely."  *Id.* (citation omitted).

Although the parties appealed the trial court's judgment in *AHAC 2016*, the parties did not present any arguments regarding this issue to the court of appeals, and the court of appeals summarily affirmed the trial court's decision pursuant to Federal Circuit Rule 36.  *See United States v. Am. Home Assurance Co.*, Fed. Cir. Appeal No. 18-1960 at Doc. 66 (judgment affirmed Sept. 6, 2019, pursuant to Federal Circuit Rule 36).  Federal Circuit Rule 36 provides that, "[t]he court may enter a judgment of affirmance without opinion, citing this rule, when it determines that [certain] conditions exist and an opinion would have no precedential value."  Fed. Cir. R. 36; s*ee also Union Steel Manufacturing Co., LTD. v. United States*, 968 F. Supp. 2d 1297, 1316 (Ct. Int'l Trade 2014) (holding that an affirmance pursuant to Federal Circuit Rule 36 is not precedential).

In accordance with the rule, the order issued by the Federal Circuit bears the notation, "NOTE: This disposition is nonprecedential."  *Am. Home Assurance Co.*, Fed Cir. Appeal No.

18-1960 at Doc. 66.  Therefore, the question involving the date of accrual for the breach of the

bonds by AHAC remains unresolved, but is now timely advanced by the Government in this

action.

<div align="center">**CONCLUSION**</div>

For the foregoing reasons, this Court should grant the Government's motion for summary

judgment, and enter judgment in its favor against Defendant, AHAC, for duties and interest

pursuant to 19 U.S.C § 1505 in the total amount of $379,009.00 — the contractual limit of the

bonds — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28

U.S.C. § 1961, which are not subject to the bond limit.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

By:   /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Peter A. Mancuso
PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: February 5, 2021

## **CERTIFICATE OF COMPLIANCE**

I, Peter A. Mancuso, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in support of Plaintiff's motion for summary judgment, dated February 5, 2021, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 8,387 words.

/s/ Peter A. Mancuso