**2018-1960, -2120**

# In The United States Court of Appeals For The Federal Circuit

UNITED STATES OF AMERICA,

—v.—
*Plaintiff-Cross-Appellant,*

AMERICAN HOME ASSURANCE CO.,

*Defendant-Appellant,*

HARTFORD FIRE INSURANCE COMPANY,

*Defendant.*

Appeal from the United States Court of
International Trade in Court No. 09-00401,
Judge Richard K. Eaton

## REPLY BRIEF FOR PLAINTIFF-CROSS-APPELLANT, THE UNITED STATES

JOSEPH H. HUNT
Assistant Attorney General

JEANNE E. DAVIDSON
Director

AMY M. RUBIN
Assistant Director
International Trade Field Office

BEVERLY A. FARRELL
EDWARD F. KENNY
Trial Attorneys
Department of Justice,
Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-9230
*Attorneys for Plaintiff-
Cross-Appellant*

*Of Counsel:*
BRANDON T. ROGERS
Office of Assistant Chief Counsel
U.S. Customs and Border Protection
Indianapolis, Indiana

Dated: May 22, 2019

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 2

SUMMARY OF ARGUMENT .................................................................................... 3

ARGUMENT ................................................................................................................ 5

I.   THE TRIAL COURT ERRED BY OMITTING INTEREST UNDER
     19 U.S.C. § 1677g IN ITS JUDGMENT BECAUSE THE LIQUIDATIONS,
     WHICH INCLUDED SUCH INTEREST, HAD BECOME FINAL AND
     CONCLUSIVE UNDER 19 U.S.C. § 1514 ..................................................... 5

     A.   The Finality Of The Section 1677g Interest Charges Barred
          AHAC From Raising An Affirmative Defense To Them ...................... 6

     B.   We Did Not Waive Our Claim To Section 1677g Interest In
          Ct. Int'l Trade No. 09-00491 ................................................................ 11

II.  THE CLAIMS IN CT. INT'L TRADE NOS. 10-00002 AND 10-00003
     WERE TIMELY COMMENCED AND SHOULD NOT HAVE BEEN
     DISMISSED BECAUSE THE ENTRIES SUBJECT TO THE PARTIAL
     RESCISSION OF THE ADMINISTRATIVE REVIEW CONTINUED TO
     BE COVERED BY COMMERCE'S ON-GOING REVIEW OF THE
     COUNTRY-WIDE RATE .............................................................................. 13

     A.   The Partial Rescission Of The Administrative Review As To
          A Separate Rate For Raoping Did Not Exempt Raoping From
          Commerce's On-Going Country-Wide Rate Review .......................... 14

     B.   Even If The Partial Rescission Of Raoping's Separate Rate
          Review Also Ended The Country-Wide Rate Review As To Raoping,
          The Partial Rescission Notice Was Ambiguous And Did Not Provide
          Adequate Notice To Customs To Liquidate The Raoping Entries ... 17

CONCLUSION .......................................................................................................... 21

purportedly relied. *See* Red Br. at 13-17. This Court held that "[c]hallenges to the validity of a liquidation and any findings related to liquidation are subject to § 1514." *AHAC 2017*, 857 F.3d at 1336. In reaching this conclusion, this Court relied upon *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1557 (Fed. Cir. 1997) "([T]he issue of the correctness and validity of the liquidation is 'final and conclusive' for purposes of the collection action when the liquidation has not been protested in accordance with the provisions of section 1514."), and *United States v. Utex Int'l Inc.*, 857 F.2d 1408, 1412 (Fed. Cir. 1988) ("The importer, the surety, and the government are bound by and have the right to rely on the finality of liquidation."). The trial court couched AHAC's affirmative defense as to the charges incorporated at liquidation as the right to defend on the issue of liability rather than a challenge to the liquidation. Taken to its logical end, under the trial court's analysis, any time a surety disagrees with charges included at liquidation for which it is billed, it can wait to be sued and then claim that it is actually contesting liability, not a liquidated charge or exaction, and can raise an affirmative defense. Such a view, if accepted, would negate the applicability of section 1514 to sureties and clash with the precedents of this Court.

The trial court's fundamental analytical error was that it conflated Customs' decisions that are subject to section 1514 with events that do not become final and conclusive under section 1514. For example, AHAC was entitled to raise an

10

## II. THE CLAIMS IN CT. INT'L TRADE NOS. 10-00002 AND 10-00003 WERE TIMELY COMMENCED AND SHOULD NOT HAVE BEEN DISMISSED BECAUSE THE ENTRIES SUBJECT TO THE PARTIAL RESCISSION OF THE ADMINISTRATIVE REVIEW CONTINUED TO BE COVERED BY COMMERCE'S ON-GOING REVIEW OF THE COUNTRY-WIDE RATE

With respect to Ct. Int'l Trade Nos. 10-00002 and 10-00003, the trial court erred in holding that a partial rescission of an antidumping duty administrative review as to Raoping, the producer of the goods at issue, triggered a deadline for Customs to liquidate the subject entries and that, by missing this deadline, the entries were deemed liquidated much earlier, thereby rendering the actions time-barred. The six-month period for liquidation of an entry under 19 U.S.C. §1504(d)[1] is not triggered unless the suspension of liquidation is removed and Customs has received unambiguous notice of that removal. The partial rescission simply ended the possibility of a separate rate for certain People's Republic of China (PRC) mushroom producers, including Raoping, for whom individual reviews had been sought. In other words, the rescission meant that Raoping—and

---

[1] 19 U.S.C. §1504(d) provides:

> If duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specified in subsection (b), any unpaid balance shall be considered delinquent and bear interest by 30-day periods, at a rate determined by the Secretary, from the date of liquidation or reliquidation until the full balance is paid. No interest shall accrue during the 30-day period in which payment is actually made.

13

others subject to the partial rescission—would not be given their own rates. As a result, Raoping was deemed to be covered by the continuing review as part of a single PRC-wide whose antidumping duty rate was determined at the conclusion of the review. Because liquidation must be made at a specific antidumping duty rate and determination of the PRC-wide entity antidumping duty rate had not yet occurred by the date of the partial rescission, the partial rescission did not lift the suspension of liquidation on the subject entries at issue in Ct. Int'l Trade Nos. 10-00002 and 10-00003.

### A. The Partial Rescission Of The Administrative Review As To A Separate Rate For Raoping Did Not Exempt Raoping From Commerce's On-Going Country-Wide Rate Review

AHAC argues that the partial rescission by the Department of Commerce (Commerce) of the administrative review as it concerned Raoping's separate rate simultaneously ended Raoping's inclusion in the on-going PRC-wide rate review. Response/Reply at 10-11. AHAC further contends that *Certain Preserved Mushrooms from the People's Republic of China*, 68 Fed. Reg. 10,694, 10,703 (Dep't of Commerce Mar. 6, 2003) (prelimin. admin. review), served as "an implicit admission that, once the review was rescinded, those imports were not subject to the all country rate." Response/Reply at 12. AHAC is incorrect on both points.

As discussed in our Red Brief, when Commerce initiated the administrative review governing the final antidumping duty rate for the entries at issue in Court Nos. 10-00002 and 10-00003, Commerce included a "conditional coverage" provision. *See* Red Br. at 21-24. This provision states: "If one of the above named companies does not qualify for a separate rate, all other exporters of certain preserved mushrooms from the People's Republic of China who have not qualified for a separate rate are deemed to be covered by this review as part of a single PRC entity of which the named exporters are a part." *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocations in Part*, 67 Fed. Reg. 14,696, 14,697 n.1 (Dep't of Commerce Mar. 27, 2002).

Commerce's "conditional coverage" provision refutes AHAC's position. By the provision's explicit terms, Raoping was subject to the review as both a "named company" and as part of the conditionally-covered category of "all other exporters . . . deemed to be covered . . . as part of a single PRC entity." Thus, even if Raoping's review as a "named company" was rescinded for purposes of determining a separate rate, Raoping remained subject to the administrative review under the "all other exporters" clause in the "conditional coverage" provision. As this Court has held a "conditional coverage" of "all other exporters" "requires Customs to treat those entries [here, the entries of producers, such as Raoping, not receiving a separate rate] as presumptively subject to the administrative review,

15

and to postpone liquidation of those entries until after the review is completed and it is determined whether particular entries are subject to an antidumping duty." *Transcom, Inc. v. United States*, 294 F.3d 1371, 1380 (Fed. Cir. 2002).

Nothing in the notice of partial rescission of Raoping's review contradicts the "conditional coverage" provision in the notice that initiated the review or the *Transcom* presumption that liquidation must remain suspended. *See Certain Preserved Mushrooms from the People's Republic of China*, 67 Fed. Reg. 53,914 (Dep't of Commerce Aug. 20, 2002) (partial rescission of admin. review). In its brief, AHAC fails to account for the "conditional coverage" provision or this Court's decision in *Transcom*, or provide any other support for its position that Raoping was exempt from further review as part of the PRC-wide entity when Commerce partially rescinded the administrative review.

Therefore, because the conditional coverage provision applied to Raoping and the administrative review to which it was subject, and because the PRC-wide rate review continued after the partial rescission, the partial rescission of the administrative review did not lift the suspension of liquidation on the subject entries because it did not end the administrative review as to the rate that would apply to Raoping.

16

## B. Even If The Partial Rescission Of Raoping's Separate Rate Review Also Ended The Country-Wide Rate Review As To Raoping, The Partial Rescission Notice Was Ambiguous And Did Not Provide Adequate Notice To Customs To Liquidate The Raoping Entries

AHAC argues that the partial rescission notice ending Raoping's separate rate review provided unambiguous notice to Customs to liquidate the Raoping entries. Response/Reply at 12. AHAC is wrong.

A notice is sufficient for purposes of section 1504(d) if "a reasonable Customs official would have read the [notice] to provide notification that any suspension of liquidation on the [subject] entries had been removed." *NEC Solutions (Am.), Inc. v. United States*, 411 F.3d 1340, 1346 (Fed. Cir. 2005). Here, no reasonable Customs official would have concluded, or did conclude, that the Raoping partial rescission notice constituted notice sufficient to trigger the start of the liquidation period described in 19 U.S.C. § 1504(d). As AHAC does in its Response/Reply, the trial court ignored the information that was available to "reasonable Customs officials" at the time of the partial rescission in evaluating whether the notice was sufficiently unambiguous. On August 20, 2002, the date of the notice of partial rescission, the following information was available to Customs officials to assist them in interpreting the notice:

- The language of the "conditional coverage" provision from Commerce's notice initiating the administrative review. *See* 67 Fed. Reg. at 14,697 n.1 (Dep't of Commerce Mar. 27, 2002).

- This Court's conclusion that Customs must "treat [entries subject to the "conditional coverage" provision] as presumptively subject to the

17

administrative review, and to postpone liquidation of those entries until after the review is completed and it is determined whether particular entries are subject to an antidumping duty." *Transcom*, 294 F.3d at 1380 (decided June 27, 2002).

- The importer's assertion on all of the entries at issue in Court Nos. 10-00002 and 10-00003 (filed between April 25, 2001 and May 22, 2001) that the PRC-wide entity antidumping duty rate applied. *See* Appx313-347 (reflecting a rate of 198.63 percent); *Certain Preserved Mushrooms from the People's Republic of China*, 64 Fed. Reg. 8,308, 8,310 (Dep't of Commerce Feb. 19, 1999) (establishing the PRC-wide entity antidumping duty rate at 198.63 percent).

- The notice of partial rescission itself, which made no mention of liquidation or duty rates to apply. 67 Fed. Reg. at 53,914.

Considering these sources together, the notice of partial rescission did not provide unambiguous notice to Customs that Raoping's entries should be liquidated. Commerce did not actually instruct Customs to liquidate the Raoping entries until after it published the final results of the administrative review. *See Certain Preserved Mushrooms From the People's Republic of China*, 68 Fed. Reg. 41,304 (Dep't of Commerce July 11, 2003) (final admin. review); Appx98; Appx104. For these reasons, no reasonable Customs official could have concluded that Customs needed to liquidate the entries at issue in Court Nos. 10-00002 and 10-00003 based on the notice of partial rescission.

Moreover, the cases cited by the trial court below, Appx13-15, and in AHAC's Response/Reply at 12-13, involved notices to Customs of a suspension of liquidation being lifted in unambiguous circumstances that are not present here. *NEC Solution (Am.), Inc. v. United States*, 411 F.3d 1340 (Fed. Cir. 2005)

18

concerned an email from Commerce to Customs after litigation had concluded informing Customs that "there should be no unliquidated entries." Similarly, in *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364 (Fed. Cir. 2002), Commerce published a Federal Register notice of a final court decision setting the applicable antidumping duty rate. *International Trading Co. v. United States*, 281 F.3d 1268 (Fed. Cir. 2002), concerned the publication of the notice of final results of the applicable administrative review. Finally, in *United States v. Great American Insurance Co. of New York*, 791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011), the notice of partial rescission indicated liquidation should follow and referenced a memorandum indicating the proper antidumping duty rate. By comparison, the notice of partial rescission applicable to the Raoping entries of Court Nos. 10-00002 and 10-00003 contains neither the finality of the proceedings nor the expectations of liquidation present in the above cases.

Given the information available to Customs, the notice of partial rescission did not provide the required unambiguous notice that the suspension of liquidation as to Raoping's entries had been removed. *See Cemex, S.A. v. United States*, 384 F.3d 1314, 1321 (Fed. Cir. 2004). Therefore, the entries were not liquidated by operation of law six months after the August 20, 2002 notice of partial rescission. Instead, the July 11, 2003 notice of final results of the administrative review provided the requisite unambiguous notice to Customs. As a result, Court Nos 10-

19

00002 and 10-00003 were timely commenced because they were brought less than six years after the entries deemed liquidated on January 11, 2004.