UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE RICHARD K. EATON, *SENIOR JUDGE*

———————————————————————

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Court No.: 20-00175 |
| v. | : | |
| | : | |
| AMERICAN HOME ASSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

———————————————————————

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: April 16, 2021

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     THE GOVERNMENT'S STATEMENT OF FACTS IN SUPPORT OF ITS
        MOTION FOR SUMMARY JUDGMENT HAVE BEEN DEEMED ADMITTED . 4

III.    *RES JUDICATA* DOES NOT BAR THIS CIVIL ACTION BECAUSE THIS
        ACTION IS BASED ON A DIFFERENT SET OF TRANSACTIONAL FACTS
        FROM THAT OF *AHAC 2016* ................................................................................. 4

IV.     THIS ACTION IS TIMELY COMMENCED ......................................................... 10

        A.  AHAC's Measurement Of The Accrual Date From The Date of Deemed
            Liquidation Is Incorrect............................................................................. 10

        B.  Federal Circuit Precedent Demonstrates That The Government's Cause Of Action
            Accrues At The Time That The Bonds Were Breached ..................................... 15

        C.  AHAC's Claim That The Government Reliquidated The Entries After The
            Deemed Liquidation Is Incorrect ........................................................ 22

        D.  AHAC's Remaining Arguments Regarding The Relevant Statutes And
            Regulations Are Without Merit ........................................................ 24

CONCLUSION.................................................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Alder Terrace, Inc. v. United States*,
   161 F.3d 1372 (Fed. Cir. 1998) ......................................................................... 3

*Ammex, Inc. v. United States*,
   334 F.3d 1052 (Fed. Cir. 2003) ................................................................. 4, 5, 6

*Avenues in Leather v. United States*,
   423 F.3d 1326 (Fed. Cir. 2005) ....................................................................... 10

*Deckers Corp. v. United States*,
   752 F.3d 949 (Fed. Cir. 2014) ........................................................................... 9

*Mendenhall v. Cedarrapids, Inc.*,
   5 F.3d 1557 (Fed. Cir. 1993) ............................................................................. 9

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) ......................................................................................... 13

*Stone v. INS*,
   514 U.S. 386 (1995) ......................................................................................... 11

*Union Steel Mfg. Co. v. United States*,
   968 F. Supp. 2d 1297 (Ct. Int'l Trade 2014) ............................................. 14, 15

*United States v. Am. Home Assurance Co.*,
   151 F. Supp. 3d 1328 (Ct. Int'l Trade 2015), *amended*, (Ct. Int'l Trade Mar. 15, 2016)
   (*AHAC 2016*), *aff'd*, Fed. Cir. Appeal No. 18-1960 ....................................... *passim*

*United States v. Am. Home Assurance Co.*, Ct. Int'l Trade No. 09-00401, Doc. 76
   (Jan. 18, 2013) ................................................................................................... 8

*United States v. Am. Home Assurance Co.*, 857 F.3d 1329 (Fed. Cir. 2017) ....................... 19, 25

*United States v. Am. Home Assurance Co.*, Fed. Cir. Appeal No. 18-1960, Doc. 66
   (Sept. 6, 2019) .............................................................................................. 4, 15

*United States v. Ataka Am., Inc.*,
   826 F. Supp. 495 (Ct. Int'l Trade 1993) ................................... 10, 11, 12, 16, 25

ii

*United States v. Cherry Hill Textiles, Inc.*,
    112 F.3d 1550 (Fed. Cir. 1997)..............................................................22, 23

*United States v. Cocoa Berkau*,
    990 F.2d 610 (Fed. Cir. 1993)..............................................................*passim*

*United States v. Commodities Export Co.*,
    972 F.2d 1266 (Fed. Cir. 1992)..............................................................*passim*

*United States v. Great Am. Ins. Co.*,
    791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) ...................................10, 13

*United States v. Int'l Fidelity Ins. Co.*,
    273 F. Supp. 3d 1170 (Ct. Int'l Trade 2017) ......................................3, 9

*Young Engineers, Inc. v. United States Int'l Trade Comm'n*,
    721 F.3d 1305 (Fed. Cir. 1983)..............................................................6

## Statutes, Regulations, and Rules

19 U.S.C. § 580 ...........................................................................1, 19, 27

19 U.S.C. § 1504 ......................................................................................23

19 U.S.C. § 1505 ..................................................................................1, 27

19 U.S.C. § 1505 (1984) ..........................................................................12

19 U.S.C. § 1505(b) ..........................................................................*passim*

19 U.S.C. § 1505(c) (1988)........................................................10, 11, 12

19 U.S.C. § 1505(d) ................................................................................19

19 U.S.C. § 1555 ......................................................................................4

19 U.S.C. § 1555(b)(8)(D) ........................................................................5

19 U.S.C. § 1557 ......................................................................................4

19 U.S.C. § 1557(a)(1)..............................................................................5

26 U.S.C. § 4081 ......................................................................................5

28 U.S.C. § 1582(2) ..................................................................................1

28 U.S.C. § 1961 ................................................................................................... 1, 27

28 U.S.C. § 2415(a) ..................................................................................... 3, 13, 24, 25

North American Free Trade Ageement Implementation Act,
   Pub. L. No. 103-182 § 642, 107 Stat. 2005 (1993) ................................................ 11

19 C.F.R. § 113.62(a) ................................................................................................. 13

19 C.F.R. § 113.62(a)(1)(ii) ..................................................................... 14, 18, 19, 21, 25

19 C.F.R. § 159.1 .................................................................................................. 16, 19

Fed. Cir. R. 36 ........................................................................................................ 4, 14

USCIT Rule 56(c)(1)(a) ................................................................................................ 2

USCIT Rule 56(e)(2) ................................................................................................. 2, 4

USCIT Rule 56.3(a) ...................................................................................................... 2

## Other Authorities

2A N. Singer, Statutes and Statutory Construction § 46:06, p. 194 (6th rev. ed. 2000) .............. 12

Restatement (Second) of Judgments § 24 (1982) .................................................. 6, 7, 9

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE RICHARD K. EATON, *SENIOR JUDGE*

_____

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Court No.: 20-00175 |
| v. | : | |
| | : | |
| AMERICAN HOME ASSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

_____

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff, the United States of America (the Government), respectfully submits this reply memorandum of law in support of our motion for summary judgment and in response to the cross-motion for summary judgment filed by defendant, American Home Assurance Company (AHAC). This action was commenced pursuant to 28 U.S.C. § 1582(2) against AHAC to recover unpaid antidumping duties under eight single transaction bonds (STBs). We respectfully request that this Court enter judgment against AHAC for duties and interest pursuant to 19 U.S.C. § 1505 in the total amount of $379,009.00 — the contractual limit of the bonds — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the limits of the bonds.

**I.     INTRODUCTION**

This action seeks to recover upon eight STBs issued by AHAC that secured the importation of eight entries of preserved mushrooms imported by two importers — Panjee Co., Ltd. (Panjee) and Pan Pacific Products Inc. (Pan Pacific) — from the People's Republic of China (China). The entries were subject to an antidumping duty order on certain preserved mushrooms

from China issued by the U.S. Department of Commerce (Commerce).  After being billed by

U.S. Customs and Border Protection (CBP), both Panjee and Pan Pacific failed to pay the

outstanding duties and interest, and consequently, pursuant to the terms and conditions of the

STBs, CBP demanded payment from AHAC.  AHAC has refused to pay.  Accordingly, the

Government commenced this civil action against AHAC and moved for summary judgment

demonstrating AHAC's liability for the antidumping duties and interest owed.  Pl. Br. at 10–12.

In response, AHAC cross-moved for summary judgment arguing that the Government's

claims are barred by two affirmative defenses — *res judicata* and the statute of limitations.  *See*

Def. Br. at 2.  Neither of these defenses have merit.  In addition, AHAC did not respond to the

Government's Statement of Undisputed Facts.  *See Dkt. No.* 23 (March 12, 2021).  Therefore, the

Court should deem all statements as admitted pursuant to USCIT Rule 56(e)(2).

First, AHAC contends that the Government's claims are barred by the legal doctrine of

*res judicata* because "the issues involving the same operative facts [as this complaint] have

already been litigated in this Court in AHAC's favor."  Def. Br. at 2.  Although there has been

previous litigation involving the United States and the obligors of the bonds under review in this

case, the transactions that form the basis of the Government's complaint in this matter were not

litigated or adjudicated in the prior matter.  Indeed, this civil action is the Government's first

attempt to collect the outstanding antidumping duties owed on the entries covered by this case,

which were secured by the STBs at issue.  These entries and STBs were not at issue in the prior

litigation.  Therefore, as will be demonstrated below, the doctrine of *res judicata* does not bar

this cause of action.

In the alternative, AHAC argues that the Government's cause of action is time-barred by

the statute of limitations because it was commenced more than six years after the entries at issue

2

deemed liquidated.  Def. Br. at 15–16.  This position, however, fails to acknowledge that AHAC's liability derives from the bonds that it issued and the breach of its contractual obligations thereunder.  The date that the entries became deemed liquidated is not the date that the bonds were breached.

Rather, because a bond is a contract, a cause of action to enforce its obligations accrues when its terms are breached.  *See United States v. Int'l Fidelity Ins. Co.*, 273 F. Supp. 3d 1170, 1179 (Ct. Int'l Trade 2017) ("A customs bond is a contract entered into by (1) a principal, usually an importer or a customs broker, (2) a surety, who agrees to guarantee payment of any liability arising from principal's failure to comply with its obligations, and (3) Customs.") (citations omitted); *United States v. Cocoa Berkau*, 990 F.2d 610, 613 (Fed. Cir. 1993) ("With respect to a claim arising from a bond, it is equally well settled that the date of accrual occurs at the time of the breach of the bond.") (citations omitted); *see also Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) ("Generally, '[i]n the case of a breach of contract, a cause of action accrues when the breach occurs.'") (citations omitted) (alteration in original).

Thus, to determine when AHAC breached the STBs and the Government's cause of action accrued, the Court must "look to the language of the bond[s] stipulating the relevant obligations of [the parties]." *Cocoa Berkau*, 990 F.2d at 613.  According to the language of the STBs at issue, only after a demand for payment by the Government and a subsequent default by the surety, are the terms of the bonds breached and the statute of limitations begins to run.  Pl. Br. at 13–16.  This action was commenced within six years of AHAC's breach of the STBs and is therefore timely.  *See* 28 U.S.C. § 2415(a).

The significance of AHAC's breach of the STBs has not been litigated prior to this civil action, and our claims for the collection of unpaid duties are ripe for adjudication.

## II.      THE GOVERNMENT'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT HAVE BEEN DEEMED ADMITTED

In support of our motion for summary judgment, we submitted a statement of undisputed facts in accordance with USCIT Rule 56(c)(1)(A) and 56.3(a).  *See Dkt. Nos.* 21, 22 (February 5, 2021).  AHAC failed to respond.  *See Dkt. No.* 23 (March 12, 2021).  Therefore, the Court should deem all statements as undisputed for the purposes of this motion pursuant to USCIT Rule 56(e)(2).  *See United States v. Harvic Int'l, Ltd.*, 427 F. Supp. 3d 1349, 1353 (Ct. Int'l Trade 2020)

## III.      *RES JUDICATA* DOES NOT BAR THIS CIVIL ACTION BECAUSE THIS ACTION IS BASED ON A DIFFERENT SET OF TRANSACTIONAL FACTS FROM THAT OF *AHAC 2016*

AHAC seeks to escape liability for its obligations under the STBs it issued based upon the legal doctrine of *res judicata*.  Def. Br. at 10–14.  According to AHAC, the litigation that resulted in this Court's *AHAC 2016*[1] decision operates as a bar to this civil action.  *Id.*  However, AHAC's application of *res judicata* is misguided because this action is based upon a different set of transactional facts than that of *AHAC 2016*.

AHAC cites *Ammex, Inc. v. United States*, 334 F.3d 1052 (Fed. Cir. 2003) to support its contentions but fails to fully explain the Court of Appeals for the Federal Circuit's (Federal Circuit) holding and reasoning.  Def. Br. at 10–11.  A closer examination of the decision demonstrates that *res judicata* does not bar our claims for collection against AHAC.

In *Ammex*, the trial court held that a customs statute (19 U.S.C. §§ 1555 and 1557) allows the duty-free sale of gasoline and diesel fuel from a duty-free enterprise.  *Ammex*, 334

---

[1] *United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328, 1342–43 (Ct. Int'l Trade 2015), *amended*, (Ct. Int'l Trade March 15, 2016), *aff'd*, Fed Cir. Appeal No. 18-1960 at Doc. 66 (judgment affirmed Sept. 6, 2019, pursuant to Fed. Cir. Rule 36).

F.3d at 1054.  In response to the decision, Customs granted a request by Ammex to expand its

duty-free warehouse operations to include the subject gasoline and diesel fuel.  *Id*.  Ammex also

asked CBP to certify that the fuel sold at Ammex's duty-free store was exempt from taxes.  *Id*.

Customs consulted with the Internal Revenue Service, and was advised that the Internal Revenue

Code imposes a tax on the entry into the United States of any taxable fuel.  *Id*.  Based on this

guidance, "Customs determined that it could not lawfully permit Ammex to sell gasoline and

diesel fuel on a duty and tax-free basis," and it revoked its prior approval.  *Id*. at 1055.  Ammex

commenced suit arguing that Customs's decision to revoke its determination was a violation of

the prior judgment by the trial court (*Ammex I*) and should be barred under the doctrine of *res*

*judicata*.  *Id*.

This Court denied Ammex's claims, which prompted an appeal.  The Federal Circuit

articulated the standard for *res judicata*, which requires "the party asserting the bar [to] prove

that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on

the merits; and (3) the second claim is based on the same set of transactional facts as the first."

*Id.* at 1055 (citations omitted).

Ultimately, the Federal Circuit denied Ammex's defense of *res judicata* because it found

that the two cases were not based on the same set of transactional facts.  *Id.* at 1056.  The Court

held that:

> [A]lthough the ultimate effect of both claims was to determine
> whether Ammex may sell gasoline and diesel fuel duty-free, the
> claims are sufficiently different because in the prior lawsuit, Ammex
> claimed, upon the administrative record, that Customs's
> interpretation of 19 U.S.C. § 1557(a)(1) was not in accordance with
> law, and the current claim is whether the IRS's determination that
> Ammex's fuel must be taxed under 26 U.S.C. § 4081 precludes it
> from qualifying as "duty-free merchandise" under 19 U.S.C. §
> 1555(b)(8)(D).

*Id.*

Thus, the Federal Circuit concluded that "[t]he factual premise of the lawsuit in *Ammex II*, however, differs from the prior one because the application of federal taxes to gasoline and diesel fuel, preempting such fuel from qualifying as 'duty-free merchandise,' is a new fact which was not a part of *Ammex I*."  *Id.* at 1057.

Here, similar to *Ammex*, the transactional facts of this lawsuit differs from *AHAC 2016*. This action seeks to collect outstanding antidumping duties owed on eight entries that were not at issue in *AHAC 2016*, which were secured by eight STBs issued by AHAC that were also not at issue in *AHAC 2016*.  Further, here we seek a decision that the accrual period for our claims against AHAC began when AHAC breached the terms of the STBs.  Although the questions presented by this case and *AHAC 2016* may be similar, the entries, bonds, and legal claims of the two cases are different.

Moreover, because this civil action seeks recovery on entries and STBs not at issue in *AHAC 2016*, the two cases are not based on the same set of transactional facts.  As such, AHAC cannot meets its burden to prove that *res judicata* applies to bar this action.  For instance, in *Young Engineers, Inc. v. United States Int'l Trade Comm'n*, the Federal Circuit stated that with respect to a claim of *res judicata* it would be "guided by the Restatement (Second) of Judgments."  721 F.2d 1305, 1314 (Fed. Cir. 1983).  A closer examination of the restatement demonstrates the paucity of AHAC's claims.

Restatement (Second) of Judgments § 24 defines what it means for a second action to be "based on the same set of transactional facts."  Section 24 states:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , *the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the*

> transaction, or series of connected transactions, out of which the
> action arose.
> (2) *What factual grouping constitutes a "transaction", and what
> groupings constitute a "series", are to be determined
> pragmatically, giving weight to such considerations as whether the
> facts are related in time, space, origin, or motivation, whether they
> form a convenient trial unit, and whether their treatment as a unit
> confirms to the parties' expectations or business understanding or
> usage.*

Restatement (Second) of Judgments § 24 (1982) (emphasis added).

The comments to section 24 further explains, through examples, what constitutes a

"transaction" for the purposes of *res judicata*.

> *d. Successive acts or events as transaction or connected series;
> considerations of business practice.*
>
> \*   \*   \*   \*   \*
>
> When a number of items are overdue on a running account between
> two persons, and the creditor, bringing an action on the account, fails
> to include one among several past due items, judgment for or against
> the creditor precludes a further action by him to recover the omitted
> item. This conforms to ordinary commercial understanding and
> convenience. *On the other hand, when there is an undertaking, for
> which the whole consideration has been previously given, to make a
> series of payments of money—perhaps represented by a series of
> promissory notes, whether or not negotiable—the obligation to
> make each payment is considered separate from the others and
> judgment can be obtained on any one or a number of them without
> affecting the right to maintain an action on the others. The same
> applies to the obligations represented by coupons attached to bonds
> or other evidences of indebtedness which are similarly considered
> separate.* See also Illustration 9.[2]

Restatement (Second) of Judgments § 24 cmt. d (1982) (emphasis added).

Thus, each individual business "transaction" between parties can serve as the basis for a

cause of action that need not be brought within the same civil action.  What is more, debts that

---

[2] Illustration 9 provides, "A pays income taxes for the years 1973 and 1974 and state property tax
for the year 1973.  Each of these annual taxes is considered separate so that actions for refund of
these tax payments respectively could be maintained without fear of splitting."

are incurred pursuant to individual contractual obligations are considered separate transactions for the purposes of *res judicata*.  An action to collect upon one, does not bar a second action to collect on another.

Here, AHAC's defense of *res judicata* is without merit because the "transactions" that form the basis of this civil action are not the same as that of *AHAC 2016*.  Although AHAC discusses perceived similarities between the two cases (Def. Br. at 11), the factual basis of this civil action is eight commercial transactions that were not at issue in *AHAC 2016*.  *See, e.g., United States v. Stone & Downer Co.*, 274 U.S. 225, 235–36 (1927) (holding that in customs classification cases a determination of fact or law with respect to one importation is not *res judicata* as to another importation of the same merchandise by the same parties).  For example, this action was commenced to collect, for the first time, antidumping duties on eight entries of goods that were not at issue in *AHAC 2016*.  *Compare* Pl. Ex. 1; Pl. Ex. 6, *with United States v. Am. Home. Assurance Co.*, Ct. Int'l Trade No. 09-00401 at Doc. 76 (Jan. 18, 2013).  In an effort to collect those antidumping duties, the Government issued eight bills to the importers, which went unpaid — none of these bills were at issue in *AHAC 2016*.  *Compare* Pl. Ex. 4; Pl. Ex. 8, *with Am. Home. Assurance Co.*, Ct. Int'l Trade No. 09-00401 at Doc. 76 (Jan. 18, 2013).

Because the importers failed to pay their bills, the Government sought payment from AHAC, as surety, under eight STBs by issuing eight separate demands for payment via the Formal Demand on Surety for Payment of Delinquent Amounts Due (known as the "612 Report").  Pl. Ex. 2; Pl. Ex. 5; Pl. Ex. 7; Pl. Ex. 9.  The eight bonds issued by AHAC to secure the antidumping duties, and the eight demands for payment that AHAC defaulted on, were not at issue in *AHAC 2016*.  *Compare* Pl. Ex. 2; Pl. Ex. 5; Pl. Ex. 7; Pl. Ex. 9, *with Am. Home. Assurance Co.*, Ct. Int'l Trade No. 09-00401 at Doc. 76 (Jan. 18, 2013).  Moreover, each bond

issued by AHAC is a separate and distinct contract between the parties with a unique execution date and specific limit on liability.  *See Int'l Fidelity Ins. Co.*, 273 F. Supp. 3d at 1179; Pl. Ex. 2; Pl. Ex 7.

Thus, each entry at issue in this litigation, with its associated bills for payment and STBs that were breached by the obligors' default, is a separate and distinct commercial transaction. Similar to the examples explained in section 24 of the Restatement (Second) of Judgments, each breach of a bond by an importer produces a separate obligation on the surety to make payment permitting the creditor to obtain judgment on any one, or any number, of the bonds without affecting the right to maintain a collection action on the others.

That the bonds in this case and *AHAC 2016* involved the same obligors does not operate as *res judicata* to bar this civil action.  The Government is entitled to a decision on the merits with respect to the entries, bonds, and bills covered by this complaint, which AHAC has failed to uphold its contractual obligations with respect thereto.  Therefore, because the entries, bills, and bonds at issue in this action were not at issue in *AHAC 2016*, *res judicata* is not a valid defense to this action.

Finally, AHAC appears to confuse *res judicata* with the doctrine of *stare decisis*.  "*Stare decisis* 'deals only with law' and each prior precedential holding of the court becomes a 'statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decision.'"  *Deckers Corp. v. United States*, 752 F.3d 949, 956 (Fed. Cir. 2014) (quoting *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993)).  "*Stare decisis*, therefore, is limited to only the legal determinations made in a prior precedential opinion and does not apply to either issues of fact, such as classification of specific goods within a

construed tariff provision, or issues of law that were not part of a holding in a prior decision."
*Id.* (citing *Avenues in Leather v. United States*, 423 F.3d 1326, 1331 (Fed. Cir. 2005)).

However, the doctrine of *stare decisis* is not at issue in this case.  As we explained in our opening brief, *AHAC 2016* did not resolve the discreet legal issues posed by this civil action.  *See* Pl. Br. at 24.  The Court in *AHAC 2016* did not discuss the *Cocoa Berkau* standard for determining when a limitations period begins to run to recover upon a bond (*i.e.*, "[w]ith respect to a claim arising from a bond . . . the date of accrual occurs at the time of the breach of the bond"), nor did the Court address the terms of the bonds at issue, the date upon which the bonds were breached, or the effect of 19 U.S.C. § 1505(b) on the accrual of the Government's right of action.  *Id.*

## IV.   THIS ACTION IS TIMELY COMMENCED

### A.  AHAC's Measurement Of The Accrual Date From The Date Of Deemed Liquidation Is Incorrect

AHAC argues that the Government's cause of action is time-barred because it was commenced more than six years after the entries at issue deemed liquidated.  Def. Br. at 15.  AHAC cites *United States v. Ataka Am., Inc.*, 826 F. Supp. 495 (Ct. Int'l Trade 1993), *United States v. Great Am. Ins. Co.*, 791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) (*Great American*), and *AHAC 2016*, 151 F. Supp. 3d 1328, in support of its calculation of the date of accrual.  Def. Br. at 15–16.  AHAC's reliance on these cases is misplaced.

First, AHAC argues that the Court in *Ataka* held that "'[t]he right to collect immediately on liquidation carries with it the responsibility to act within six years of liquidation to collect on the contract obligation of the surety.'"  Def. Br. at 15 (quoting *Ataka Am., Inc.*, 826 F. Supp. at 503).  However, this quotation is taken out of context.  A full examination of the decision reveals that the Court did not hold that a cause of action to collect upon a bond accrues at liquidation.

10

Rather, the Court was tasked with determining when duties became "due" as per the terms of the bond at issue. *Ataka Am., Inc.*, 826 F. Supp. at 500. To answer this question, the Court looked to 19 U.S.C. § 1505. This provision of the statute has not always required payment within "30 after issuance of the bill," as it does today. 19 U.S.C. § 1505(b) (as amended in 2004). An older version of section 1505 expressly provided that duties determined to be due upon liquidation or reliquidation were due "15 days after . . . liquidation or reliquidation." 19 U.S.C. § 1505(c) (1988). Under this prior version of the statute, the duty to pay occurred even in the absence of a bill — meaning the Government's claim for nonpayment accrued fifteen days after the liquidation or reliquidation. *Ataka Am., Inc.*, 826 F. Supp. at 500–01. Relying on this language, the Court explained in *Ataka* that, "[a]s to the surety, the government must sue within six years (following the fifteenth day after liquidation)." *Id*. at 503.

In 1993, and still in effect today, Congress amended the language of section 1505 to specify that duties are due "30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b); North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182 § 642, 107 Stat. 2205 (1993). This statutory amendment reflects a change by Congress regarding when the Government's ability to pursue a claim for nonpayment would begin — changing the accrual date from fifteen days post-liquidation to thirty days post-bill. *Stone v. INS*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."). Applying the Court's logic from *Ataka*, which used section 1505 as a touchstone, the Government's six-year limitations period does not begin prior to the end of that 30-day period. In short, *Ataka* supports the Government's position that this cause of action is timely commenced.

AHAC cites *Ataka* for the statement that, "the right to collect immediately on liquidation carries with it the responsibility to act within six years of liquidation to collect on the contract obligation of the surety." Def. Br. at 15 (quoting *Ataka Am., Inc.,* 826 F. Supp. at 503). AHAC provides no further analysis of the case beyond restating this quotation. Relying on this statement without further context misapprehends the broader analysis of the Court. Indeed, as demonstrated above, the Court interpreted the language of section 1505 that was in effect at the time of the decision. *Ataka Am., Inc.*, 826 F. Supp. at 503. That version of the statute, which measured the due date 15 days from the date of liquidation, is no longer in effect.[3] Regardless of the statutory language in force at the time, the consequence of *Ataka* is that accrual is measured from the date the duties became "due" as per section 1505 — not liquidation.

A comparison of the last two sentences of the current version of section 1505(b) demonstrates that Congress understands the significance between the date of liquidation and the date of a bill — and that the Government's position with regard to accrual is sound. In the second to last sentence, Congress requires the payment of any "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation" to be made "30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b). Then, in the last sentence, Congress requires the payment of any "[r]efunds of excess moneys deposited, together with interest thereon," to be made "within 30 days of liquidation or reliquidation." *Id*. Congress clearly understands the difference between the date of liquidation and the date of a bill, given the use of these different

---

[3] The entries at issue in *Ataka* were made between January 1976 and March 1977, and the Court determined that 19 U.S.C. § 1505 (1984) applied to the entries based upon the effective date of the act. *Ataka Am., Inc.*, 826 F. Supp. at 500–501. As described above, this version of the statute stated, "duties determined to be due upon liquidation or reliquidation shall be due 15 days after the date of liquidation or reliquidation." 19 U.S.C. § 1505(c) (now amended subsection (b) as set out above). By the time the *Ataka* litigation concluded, the statute had been amended, but the Court's decision involved application of the former language from the 1984 version.

terms in the same paragraph of the statute.  *Sosa v. Alvarez-Machain,* 542 U.S. 692, 711 n.9

(2004) (articulating the rule that "when the legislature uses certain language in one part of the

statute and different language in another, the court assumes different meanings were intended")

(quoting 2A N. Singer, Statutes and Statutory Construction § 46:06, p. 194 (6th rev.ed.2000)).

Similarly, the holdings in *Great American* and *AHAC 2016* offer little support for

AHAC's legal claims.  In *Great American*, the Court summarily held that the deemed liquidation

of the subject entries triggered the date of accrual for the Government's claims against the surety,

without explanation or analysis for why this event satisfies the appropriate legal standard.  The

Court provided as follows:

> The Government's cause of action accrued six months after
> publication of the *Notice of Rescission* when the Coastal Entries
> deemed liquidated and the Government's right to collect additional
> duties attached.  *See* 19 C.F.R. § 113.62(a).  The Government failed
> to bring its claim within six years after the Coastal Entries were
> deemed liquidated, the event triggering the Government's cause of
> action.  Therefore, its right to collect any duties on the Coastal
> Entries is time-barred.  *See* 28 U.S.C. § 2415(a).

*Great American*, 791 F. Supp. 2d at 1367–68.

There is no discussion of the standard for determining when a limitations period begins to

run.  *See Cocoa Berkau*, 990 F.2d at 613 ("With respect to a claim arising from a bond . . . the

date of accrual occurs at the time of the breach of the bond." (citation omitted)).  Nor is there any

discussion of the terms of the bonds at issue, the date upon which the bonds were breached, or

the effect of 19 U.S.C. § 1505(b) on the accrual of the Government's right of action.

The trial court rendered a similar statement in *AHAC 2016*.  Without explanation or

analysis for why deemed liquidation is significant for the date of accrual, the Court provided as

follows:

13

> Because Customs failed to liquidate within six months of the date of publication of the notices of rescission in the Federal Register, these entries were liquidated by operation of law at the entered rates, at which time the Government's cause of action on the bonds began to accrue. Having failed to bring its collection actions within six years of the dates these entries were deemed liquidated, the Government's right to collect any duties from AHAC on the entries in court numbers 10–002, 10–003, and thirty of the seventy-nine entries of fresh garlic in court number 10–311 is time-barred. *See* 28 U.S.C. § 2415(a).

*AHAC 2016*, 151 F. Supp. 3d at 1342–43.

As we demonstrate in our opening brief, all events necessary for a claim against a surety on a STB will not have occurred at the time of a liquidation or a deemed liquidation. Pl. Br. at 12–16. Although liquidation or a deemed liquidation signifies the final computation of the duties, the payment of the sum total of liability is not due until "30 days after issuance of the bill for such payment" (19 U.S.C. § 1505(b)), and a condition of the bonds issued by AHAC is a demand for payment by CBP. *See* Pl. Ex. 2 (the bonds, which incorporate the terms of 19 C.F.R. § 113.62(a)(1)(ii)); Pl. Ex. 7 (same).

As stated in our opening brief, the Government sought to advance this argument to the trial court in *AHAC 2016* but was denied leave to do so because the request was found to be untimely. Pl. Br. at 24–25. Additionally, although the parties appealed the trial court's judgment in *AHAC 2016*, the parties did not present any arguments regarding this issue to the court of appeals, and the court of appeals summarily affirmed the trial court's decision pursuant to Fed. Cir. Rule 36. *See United States v. Am. Home Assurance Co.*, Fed Cir. Appeal No. 18-1960 at Doc. 66 (judgment affirmed Sept. 6, 2019, pursuant to Federal Circuit Rule 36). Fed. Cir. Rule 36 provides that, "[t]he court may enter a judgment of affirmance without opinion, citing this rule, when it determines that [certain] conditions exist and an opinion would have no precedential value." Fed. Cir. R. 36; s*ee also Union Steel Mfg. Co. v. United States*, 968 F.

14

Supp. 2d 1297, 1316 (Ct. Int'l Trade 2014) (holding that an affirmance pursuant to Fed. Cir.

Rule 36 is not precedential).  In accordance with the rule, the order issued by the Federal Circuit

bears the notation, "NOTE: This disposition is nonprecedential."  *Am. Home Assurance Co.*, Fed

Cir. Appeal No. 18-1960 at Doc. 66.

     Therefore, the question involving the date of accrual remains unresolved.

  **B.**  **Federal Circuit Precedent Demonstrates That The Government's Cause Of Action Accrues At The Time That The Bonds Were Breached**

     AHAC posits two arguments in support of its contention that the Government's position

with regard to the date of accrual are incorrect.  First, AHAC claims that "[n]ot one of the cases

relied upon by plaintiff in its timeliness argument involve increased duty bills.  Rather, the cases

are narrowly confined to collection on claims for liquidated damages."  Def. Br. at 16.  Second,

AHAC argues that a "review of the cases cited by the Government actually support AHAC's

position that the deemed liquidation date, rather than thirty (30) days after issuance of the C.F.

612 formal demand on surety, is the appropriate accrual of the right of action."  Def. Br. at 17.

AHAC is wrong on both bases.

     First, AHAC gives no explanation or reasoning as to why the collection of duty bills, as

opposed to liquidated damages, should alter the legal analysis as to when the cause of action

accrues for breach of a customs bond.  Indeed, in the three cases primarily relied upon by the

Government, the bonds at issue secured different types of liabilities associated with the

importation of the merchandise, for example, the costs associated with the delivery and potential

redelivery of the merchandise, the costs associated with duty-free warehousing, and the cost of

antidumping duties.  *See Cocoa Berkau*, 990 F.2d at 611 (single entry bond to secure the

delivery, and potential redelivery, of sweet chocolate); *United States v. Commodities Export Co*.,

972 F.2d 1266, 1268 (Fed. Cir. 1992) (warehouse bond agreement to secure compliance with

rules governing duty-free store located at the Canadian border); *Ataka Am., Inc.*, 826 F. Supp. at 496–97 (bonds used to secure antidumping duties).  Notwithstanding this difference, the courts' analysis with regard to the date of accrual remained the same.  *Id*.  Thus, AHAC's contention that the Government's analysis is "without precedent for duty bills" misses the mark.

Furthermore, this civil action does not seek to recover "increased duty bills" as AHAC claims.  Def. Br. at 16.  Rather, the Government seeks to collect the antidumping duties that the importers asserted at the time of entry (Pl. Ex. 1; Pl. Ex. 3 ¶¶ 9, 16; Pl. Ex. 6; Pl. Undisputed Statement of Facts (Pl. SOF) 4, 22), and that were ascertained upon the deemed liquidation in 2003 and 2004.  Pl. SOF 10, 28.  The bonds at hand were issued by AHAC to secure these antidumping duties at the time of entry in lieu of making cash deposits.  Pl. Ex. 2; Pl. Ex. 7; Pl. SOF 9, 27.  Thus, the bills for the outstanding antidumping duties have not been "increased" as they were determined at the time of the deemed liquidation.  *See* 19 C.F.R. § 159.1.  In short, the amount of antidumping duties for which the importers and AHAC were potentially liable has not increased since the imported merchandise was entered — other than by the accrual of statutory interest.

Turning to the second argument, AHAC's claim that *Cocoa Berkau* and *Commodities Export* support measuring the date of the accrual from the deemed liquidation is misplaced.  Def. Br. at 17.  An analysis of these cases shows that the date of accrual should be measured from AHAC's breach of the bond.

AHAC selectively (and incorrectly) quotes the Federal Circuit in *Cocoa Berkau* as stating that "unilateral acts by Customs do not postpone the running of the statute of limitations."[4]  Def.

---

[4] This quote does not appear in the Federal Circuit's *Cocoa Berkau* decision.  The language of the opinion provides that, "we cannot 'permit a single party to postpone unilaterally and

Br. at 17 (quoting *Cocoa Berkau*, 990 F.2d at 614).  However, a full reading of the Court's

opinion demonstrates that the Federal Circuit held that a demand by CBP — *i.e.*, a unilateral act

— triggered the accrual of the Government's cause of action to collect upon the bond at issue.

In *Cocoa Berkau*, the bond at issue secured the immediate delivery of chocolate.  The

terms of the bond required the importer to "redeliver or cause to be redelivered to [Customs], *on

demand* . . . any and all merchandise found not to comply with law and regulations governing its

admission into the commerce of the United States."  *Cocoa Berkau*, 990 F.2d at 611 (emphasis

added) (alterations in original).  The bond also provided that upon default of redelivery, the

principal and surety would be liable for liquidated damages, as demanded by CBP.  *Id.*   When

the chocolate was tested and found to be misclassified at the time of entry, CBP demanded

redelivery within 30 days.  *Id.* at 611.  Subsequent to the redelivery demand, the entry of

chocolate was liquidated by CBP and, upon default of redelivery by the principal/importer, CBP

demanded liquidated damages from the surety.  *Id.* at 612.

As fully explained in our opening brief, at issue in *Cocoa Berkau* was "which event, the

default of redelivery by the bond principal or the default of payment of liquidated damages by

the bond surety, constituted the breach of the bond which fixed liability for purposes of

triggering the statute of limitations."  *Id.* at 613.  Ultimately, the Federal Circuit found that "[t]he

bond was breached, and thus the government's right of action accrued, when the principal failed

to redeliver *upon proper demand*" by CBP.  *Id.* (emphasis added).

This holding is significant for purposes of this case because the Federal Circuit did not

find that the date of liquidation triggered the accrual of the cause of action against the principal

---

indefinitely the running of the statute of limitations.'" *Cocoa Berkau*, 990 F.2d at 614 (quoting
*Commodities Export, Co*., 972 F.2d at 1271).

or the surety. *Id.* If it did, the Government's cause of action in *Cocoa Berkau* would have been timely. *Id.* at 612 (entry liquidated on March 18, 1988 and the action was commenced on August 22, 1991). Furthermore, the event that the Federal Circuit held constituted a breach of the bond, and triggered the accrual of the Government's cause of action, was a default by the principal after a redelivery *demand* by CBP. *Id.* at 613–14. Therefore, despite the quote cited by AHAC, the decision reflects that a demand by CBP is an appropriate marker for purposes of determining when the bond was breached. *Id.*

In this case, the terms of the bond require the principal and surety to "pay, as demanded by CBP, all additional duties, taxes and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." Pl. Ex. 2; Pl. Ex. 7; 19 C.F.R § 113.62(a)(1)(ii). Consequently, the failure to pay after a demand by CBP results in a breach of the bond, and triggers a claim against the party in default. Notably, liquidation is not mentioned in the terms of the STBs. Pl. Ex. 2; Pl. Ex. 7.

Moreover, AHAC fails to provide a complete analysis of *Cocoa Berkau*. AHAC quotes the decision stating, in part, that "we cannot 'permit a single party to postpone unilaterally and indefinitely the running of the statute of limitations.'" Def. Br. at 17 (quoting *Cocoa Berkau*, 990 F.2d at 614). However, the Court qualified this statement with the phrase, "in the absence of an express agreement between the parties." *Cocoa Berkau*, 990 F.2d at 614. This qualification is significant because, in this case, AHAC agreed to the terms of the bond that made liability contingent upon a demand from CBP. Indeed, the bond expressly states that the "[p]rincipal and surety agree that they are bound to the same extent as if they executed a separate bond covering each set of conditions incorporated by reference to the Customs Regulations into this bond" (*e.g.*,

19 C.F.R. § 113.62(a)(1)(ii)).  Pl. Ex. 2; Pl. Ex. 7.  Thus, AHAC expressly agreed to the terms of the STB that made liability contingent upon a demand from CBP.

Finally, as explained in our opening brief, the Federal Circuit discussed whether the "as demanded" language in the immediate delivery bond was a condition of the surety's liability or "merely a procedural step" for obtaining the outstanding debt.  *Compare Cocoa Berkau*, 990 F.2d at 613–14 *with Commodities Export Co.*, 972 F.2d at 1270–72 (analyzing whether a demand for payment, imposed by regulation, triggered the accrual of the Government's claims).  The statutory and regulatory framework discussed in our opening brief (Pl. Br. at 13–16) shows that, for purposes of the STBs issued by AHAC, the demand against AHAC was not merely a procedural step.  Although a liquidation or a deemed liquidation signifies the "final computation" of the duties (19 C.F.R. § 159.1), the payment of the "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation" is not due until "30 days after issuance of the bill for such payment."  19 U.S.C. § 1505(b).  And a condition of the STBs issued by AHAC is a demand for payment by CBP.  *See* Pl Ex. 2 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)); Pl. Ex. 7 (same).

The date of the deemed liquidation of the entries cannot serve as the event that triggered the accrual of the Government's right of action to collect on the STBs because neither the importers nor AHAC were in default of the bonds at the time of the deemed liquidation.  It was not until the terms of STBs were breached — *i.e.*, failure to pay as demanded by CBP — that the liable parties were in default.[5]

---

[5] Notably, interest under 19 U.S.C. § 1505(d) and 19 U.S.C. § 580 does not accrue unless and until a bill is issued that remains unpaid for 30 days.  *See* 19 U.S.C. § 1505(d) ("If duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specified in subsection (b), any unpaid balance shall be considered delinquent and bear interest by 30-day periods, at a rate determined by the Secretary, from the date of liquidation or reliquidation until the full balance is paid.); *United States v. Am. Home. Assurance Co.*, 857 F.3d 1329, 1335–36 (Fed. Cir. 2017) (finding that interest pursuant to section 580 does not begin to

Turning to AHAC's reference to the Federal Circuit's decision in *Commodities Export*, again AHAC lifts a quote from the opinion to support its arguments without providing context for the statement.  Def. Br. at 17 ("[w]hile Customs' self-imposed internal procedures may constrain its right to sue . . . , they cannot change the defendants' right to repose after the statutory six-year period." (quoting *Commodities Export Co.*, 972 F.2d at 1271)).  A more thorough analysis of the Court's reasoning supports our measurement of the date of accrual from when the demands for payment from AHAC became delinquent.

In *Commodities Export*, the interested parties entered into a warehouse bond agreement to "insure payment of duties and other charges due to runaways and other infractions" relating to merchandise sold from the principal's duty-free store located at the Canadian border. *Commodities Export Co.*, 972 F.2d at 1268.  The bond agreement required the principal and surety to be jointly and severally liable to pay liquidated damages for each violation of the bond's terms — which included CBP approval for the removal of dutiable merchandise and required the principal to "mark its merchandise correctly and to notify Customs of any inventory discrepancies." *Id.*

Upon inspection of the merchandise, CBP determined that the principal was in breach of the bond for failing to properly mark certain entries and failing to notify CBP of inventory shortages.  *Id.*  Subsequently, in accordance with CBP's regulations, CBP sent a demand for payment of liquidated damages for breach of the bond that was due within 60 days.  *Id.*

In the civil action to collect the liquidated damages, the trial court found that the Government's cause of action accrued 60 days after the demand for payment by CBP, which was

---

run against a surety until "the government's first formal demand for payment").  This further supports the Government's position that a breach of the Customs surety bond contract does not occur until a bill is issued and goes unpaid.

required under its own regulations. *Id.* at 1270. However, the Federal Circuit disagreed with the

trial court's analysis because "the parties [did] not agree[] to conditions on institution of a suit,

rather Customs has unilaterally adopted regulations which delay filing of actions." *Id.* at 1271.

The Court continued, "[t]he bond agreement does not require Customs to demand payment or to

send notice before suing [the principal or surety]. The bond does not require Customs to wait 60

days for a response to the demand before suing." *Id.* Had the parties "agreed in advance to a

condition on the filing of a suit, the [court would give] effect to that agreement by delaying

accrual of the right of action." *Id.* The bond agreement, though, did not require CBP to demand

payment from the principal or surety before suing, it only stated that liquidated damages were

due "[i]f principal defaults." *Id.* at n.2 (alteration in orginal). The Federal Circuit found that the

default occurred when the principal breached the bond by failing to comply with its terms

regarding proper accounting of its merchandise. *Id.* at 1272. Consequently, the limitations

period began to run even in the absence of a demand for payment by CBP. *Id.* at 1271–72 ("No

statute requires Customs to give notice of demand for liquidated damages before suing. . . . The

absence of markings breached the bond.")

Here, unlike the regulation relied upon by CBP in *Commodities Export* that required a

demand for liquidated damages, the requirement in the STBs at issue, obligating the importers

and AHAC to "pay, as demanded by CBP," was a term of the bond. *See* Pl. Ex. 2; Pl. Ex. 7; 19

C.F.R. § 113.62(a)(1)(ii). Thus, the demand procedure was a condition agreed to in advance by

the parties. Failure to pay, after demand by CBP, constitutes a breach of the bond's terms which

gives rise to liability for statute of limitations purposes. Moreover, 19 U.S.C. § 1505(b) requires

issuance of a bill before duties become due, meaning, unlike the claims at issue in *Commodities*

*Export*, a statute requires Customs to issue a demand before suing for payment of duties and breach does not occur until after said demand goes unpaid.

Therefore, contrary to AHAC's contention, binding Federal Circuit precedents supports the Government's argument that our cause of action did not accrue until AHAC breached the terms of the STBs by failing to pay the outstanding antidumping duties after a demand by CBP.

### C. AHAC's Claim That The Government Reliquidated The Entries After The Deemed Liquidation Is Incorrect

AHAC argues that the Government's pursuit of the outstanding antidumping duties should be denied because CBP attempted to "reliquidate" the subject entries unlawfully. Def. Br. at 18–19. AHAC's sole support for this factual allegation is that "CBP's issuance of the formal demand (C.F. 612) could only have been the result of a purported manual liquidations attempted in 2014 more than six (6) years after the entries were deemed liquidated." Def. Br. at 18. AHAC also claims that the Government should be denied recovery because we are seeking "to recover additional duties simply by making a new liquidation." Def. Br. at 19 (citing *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1560 (Fed. Cir. 1997)).

AHAC is incorrect in its recitation of the facts and the law. CBP seeks to collect antidumping duties asserted at entry and owed pursuant to the deemed liquidation of the entries — not pursuant to some reliquidation or new liquidation of the entries. The following facts show that CBP's bills were not an attempt by CBP to unlawfully reliquidate the entries. Two Commerce messages notified CBP that the suspension of liquidation applicable to the entries lifted and therefore liquidated by operation of law in 2003 and 2004. Pl. Ex. 1; Pl. Ex. 6. Thereafter, CBP took actions to effectuate the deemed liquidations and issue bills for the antidumping duties asserted at entry. Pl. Ex. 3 at ¶¶14, 26. Indeed, CBP made notations on the entry summaries that the entries deemed liquidated in a manner identified by the Commerce

message.  Pl. Ex. 1; Pl. Ex. 3 at ¶¶14, 26; Pl. Ex. 6.  For example, the entry summaries contain

handwritten notations stating: "19 USC 1504(d) Deem liq A-570-851-013 on 10/23/2004 per

DOC Msg – 4114201 Dated 4/23/2004."[6]  Pl. Ex. 1 at Entry No. DZ102201396.

Consistent with the deemed liquidations and in order to systematically generate bills for

the outstanding antidumping duties, CBP manually entered liquidations for these entries into its

electronic system.  Pl. Ex. 3 at ¶¶14, 26.  To be clear, this process was solely for systematic

purposes to effectuate the deemed liquidations and issue the bills for the antidumping duties

asserted at entry and owed pursuant to the deemed liquidations.  As a result, the first bill to the

importers for each of the entries was issued on September 14, 2014.  Pl. Ex. 3 ¶¶14–26; Pl. Ex. 4;

Pl. Ex. 8.  Thus, these records show that CBP did not attempt to perform an unlawful

liquidation/reliquidation of the entries, as alleged by AHAC.

Furthermore, the Federal Circuit's decision in *Cherry Hill* is distinguishable from the

facts at hand.  In *Cherry Hill*, the importer entered the imported merchandise duty free.  *Cherry

Hill Textiles, Inc.*, 112 F.3d at 1551.  Because CBP did not liquidate the entry within one year

from the date of entry, it liquidated by operation of law (also known as "deemed liquidated")

pursuant to 19 U.S.C. § 1504.  *Id.* at 1558.  However, one month after the date of deemed

liquidation, CBP liquidated the entry for a second time (reliquidated) and assessed duties — thus

increasing the amount owed by the importer.  *Id.* at 1559.

The Federal Circuit found this second liquidation invalid because "[t]he effect of a

'deemed liquidation' is therefore to fix the liability of the importer or surety."  *Id.* at 1559.  "The

'deemed liquidation' must therefore be regarded as final.  In cases in which a liquidation has

---

[6]  "DOC" is an abbreviation for "Department of Commerce."

become final, the government cannot seek to recover additional duties simply by making a new liquidation of the original entry." *Id.* at 1560.

Here, as demonstrated above, the Government has not reliquidated the entries and is not seeking to replace the deemed liquidations with subsequent ones.  Pl. Ex. 1; Pl. Ex. 3 at ¶¶14, 26; Pl. Ex. 6.  This is evident from the instructions on the entry summaries and because the bills issued by CBP reflect the same amount of antidumping duties asserted at the time of entry by the importers and subsequently ascertained at the time of deemed liquidation — plus statutory interest.  Pl. Ex. 1; Pl. Ex. 4; Pl. Ex. 5; Pl. Ex. 6; Pl. Ex. 8; Pl. Ex. 9.  Furthermore, the Government's complaint and other filings in this action makes clear that the Government seeks to collect amounts owed pursuant to the deemed liquidation of the entries.  Accordingly, the Government did not seek to replace the deemed liquidations from 2003 and 2004 with new ones, or increase the antidumping duties owed on these entries.  We merely seek to collect the antidumping dumping duties that are lawfully owed.

### D.   AHAC's Remaining Arguments Regarding The Relevant Statutes And Regulations Are Without Merit

Lastly, AHAC attacks the Government's analysis of certain statutes and regulations that show this cause of action is timely.  These arguments lack merit.

First, AHAC contends that the "[c]ollection of . . . duties determined on a liquidation or reliquidation is limited by the six (6) year statute of limitations set out at 28 U.S.C. § 2415(a)." Def. Br. at 20.  AHAC makes this statement in an effort to limit the Government's ability to recover outstanding duties to six years from the date of the deemed liquidation.

This is an incorrect interpretation of section 2415(a).  Section 2415(a) states: "every action for money damages brought by the United States . . . which is founded upon any contract

express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues."  28 U.S.C. § 2415(a).

Thus, section 2415(a) makes no reference to "collection of . . . duties" or "liquidation." Rather, section 2415(a) requires any civil action brought by the United States for breach of contract to be commenced within six year from when the cause of action accrued.  As demonstrated in our opening brief, the STBs at issue were breached, and the Government's cause of action accrued, when AHAC defaulted on its obligations to pay the outstanding antidumping duties 30 days after bills were issued for such payment by CBP.  Pl. Br. at 12–16; 19 C.F.R. § 113.62(a)(1)(ii); *Cocoa Berkau*, 990 F.2d at 613.

Second, AHAC states that, "[w]hile 19 U.S.C. § 1505(b) allows for the assessment and collection of interest thirty (30) days after billing the duties determined to be due on liquidation, the statute does not create a new cause of action for collection of liquidated damages."  Def. Br. at 20.  AHAC appears to argue that section 1505(b) is limited to the collection of interest. However, this is contrary to the plain language of the statute, which states "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bills for such payment."  19 U.S.C. § 1505(b); *see also Am. Home Assurance Co.*, 857 F.3d at 1335–36 ("[T]he time when the bonds became due can be no earlier than the government's first formal demand for payment.").  Furthermore, in *Ataka*, this Court held that section 1505 sets the date when outstanding antidumping duties become "due," which is also the event that triggers accrual of the statute of limitations.  *See Ataka Am., Inc.*, 826 F. Supp. at 500–03 (finding that under a prior version of section 1505 outstanding antidumping duties became "due" 15 days after liquidation and that the Government must sue within six years of that date).  Clearly, section 1505 is not limited to the collection of interest.

Finally, AHAC argues that it should be excused from paying the outstanding debt because the "bills upon which the Government is attempting to collect are based on unlawful reliquidations and therefor are neither proper nor legally fixed." Def. Br. At 20. AHAC's assertion misrepresents the facts of this case.

We do not dispute that the entries at issue became deemed liquidated in 2003 and 2004 (Pl. SOF at ¶¶ 10, 28) but, as demonstrated above (Pl. Reply Br. at 22–24), the bills issued in 2014 merely seek to collect the outstanding antidumping duties owed as a result of those deemed liquidations. Certainly, the undisputed evidence demonstrates that the bills issued in 2014 were not the result of an "unlawful reliquidation" but rather the result of CBP manually entering the deemed liquidations from 2003 and 2004 to generate bills to collect the antidumping duties legally owed. Pl. Ex. 1; Pl. Ex. 3 at ¶¶ 14, 26; Pl. Ex. 6.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should grant the Government's motion for summary judgment, and enter judgment in its favor for duties and interest pursuant to 19 U.S.C § 1505 in the total amount of $379,009.00 — the contractual limit of the bonds — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit.

<div style="margin-left:40%">

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Peter A. Mancuso
PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Plaintiff

</div>

By:

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: April 16, 2021

**<u>CERTIFICATE OF COMPLIANCE</u>**

I, Peter A. Mancuso, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's reply memorandum in support of Plaintiff's motion for summary judgment and in response to defendant's cross-motion for summary judgment, dated April 16, 2021, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 8,814 words.

<u>/s/ Peter A. Mancuso</u>