UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, *SENIOR JUDGE*

---

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Court No. 20-00175 |
| | : | |
| AMERICAN HOME ASSURANCE COMPANY, | : | |
| | : | |
| Defendant | : | |
| | : | |

---

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Taylor Pillsbury
Meeks, Sheppard, Leo & Pillsbury
352 3rd Street, Suite 202
Laguna Beach, CA 92651
(949) 719-2712

Michael B. Jackson
Meeks, Sheppard, Leo & Pillsbury
352 3rd Street, Suite 202
Laguna Beach, CA 92651
(949) 719-2712

Attorneys for Defendant
American Home Assurance
Company

Dated:  May 14, 2021

## **TABLE OF CONTENTS**

I.      INTRODUCTION …………………………………………….…….…..2

II.     AHAC DOES NOT DISPUTE THE GOVERNMENT'S
        STATEMENT OF FACTS………………………………………………4

III.    *RES JUDICATA* BARS THIS CIVIL ACTION BECAUSE IT IS BASED
        ON THE SAME SERIES OF CONNECTED TRANSACTIONAL FACTS
        UNDERLYING AHAC 2016……………………………………………5

IV.     THE GOVERNMENT'S CLAIMS ARE TIME BARRED BY THE STATUTE
        OF LIMITATIONS……………………………………………………13

        A.  The Government's Right of Action Against AHAC Accrued Upon the
            Deemed Liquidation of the Entries…………………………………..13

        B.  The Government's New Theory Upon Which the Right of Action
            Accrues Is Without Precedent for Duty Bills………………………..16

        C.  The Government's Admitted Liquidations Following the Admitted
            Deemed Liquidations are Reliquidations……………………………17

V.      CONCLUSION………………………………………………….……...18

## TABLE OF AUTHORITIES

### Cases

United States v. Am. Home Assurance Co.,
  151 F.Supp. 3d 1328, 1342-43 (Ct. Int'l Trade 2015), amended, (Ct. Int'l Trade March 15, 2016) (hereinafter, AHAC 2016), *aff'd per curium*, Fed Cir. Appeal No. 18-1960 & 18-2120 (judgment affirmed Sept. 6, 2019)......................2,3,4,5,6,7, 12, 13, 14, 18

United States v. Int'l Fidelity Ins. Co.,
  273 F.Supp.3d 1170 (Ct. Int'l Trade 2017)..............................................3, 14, 15

United States v. Cherry Hill Textiles, Inc.,
  112 F.3d 1550 (Fed. Cir. 1997)...........................................................4,5, 18

Ammex, Inc. v. U.S.
  334 F.3d 1052 (Fed. Cir. 2003)................................................................6

United States v. Stone & Downer Co.,
  274 U.S. 225 (1927)..................................................................8,9, 10, 11

Shah Bros., Inc. v. United States,
  751 F.Supp.2d 1303 (2010)..........................................................9, 10

Shah Bros., Inc. v. United States,
  No. 10-00205 (Ct. Int'l 2011).....................................................9, 10, 11

Gulfstream Aerospace Corp. v. United States,
  981 F.Supp. 654 (1997)...................................................................9

Schott Optical Glass, Inc. v. United States,
  750 F.2d 62 (Fed. Cir. 1984).......................................................9, 10

Heartland By-Products, Inc. v. United States,
  223 F.Supp.2d 1317 (2002)........................................................9, 10, 11

J.E. Bernard & Co., Inc. v. United States,
  324 F.Supp. 496 (1971).................................................................10, 11

United States v. Ataka America, Inc.,
  17 CIT 598, 826 F.Supp. 495 (1993)......................................13,14, 15, 16

United States v. Great American Insurance Co. of NY,
  35 CIT 1130, 791 F.Supp.2d 1337, 1344 (2011).......................................13, 14

United States v. Heraeus-Amersil, Inc.,

671 F.2d 1356 (C.C.P.A. 1982)…………………………………………………….15

United States v. Cocoa Berkau, Inc.,
990 F.2d 610 (Fed. Cir. 1993)……………………………….…………………16, 17

U.S. v. Commodities Export Co.,
972 F.2d 1266 (Fed. Cir. 1992)……………………………….…………………16

U.S. v. American Motorists Ins. Co.,
10 CIT 19 (1986)……………………………………………………….....17

New Zealand Lamb v. U.S.,
USCIT Slip Op. 92-218……………………………………...……………..17

United States v. Utex Int'l Inc.,
857 F.2d 1408, 1412 (Fed. Cir. 1988)……………………………...………….17

## **Statutes**

19 U.S.C. §580…………………………………………………………………1,2

28 U.S.C. §1961……………………………………………...……………………1,2

## **Rules**

USCIT R. 56(e)………………………………………………….……………2,4

Chamber Procedure Rule 2(B)(1)(a)……………………………...……………3

CAFC Rule 36……………………………………………………………..12

## **Regulations**

19 C.F.R. §113.62(a)………………………………………………..……13

19 C.F.R. §141.113……………………………………………..………...17

## **Other Authorities**

Restatement (Second) of Judgments § 24 (1982)……………..……………………6,7,8

Customs Ruling HQ 224566 dated August 3, 1993…………..………………………17

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, *SENIOR JUDGE*

—————————————————————————————
|                                             | :  |
| UNITED STATES OF AMERICA,                   | :  |
|                                             | :  |
|                   Plaintiff                 | :  |
|                                             | :  |
|                     v.                      | :  | Court No. 20-00175 |
|                                             | :  |
| AMERICAN HOME ASSURANCE COMPANY,            | :  |
|                                             | :  |
|                  Defendant                  | :  |
|                                             | :  |
—————————————————————————————

### **DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant, American Home Assurance Company (AHAC), respectfully submits this reply memorandum of law in support for our motion for summary judgment and in response to the reply memorandum filed by plaintiff, United States of America (the Government). In this action, the Government seeks to collect antidumping duties plus statutory interest pursuant to 19 U.S.C. §580 and post-judgment interest pursuant to 28 U.S.C. §1961 against AHAC under eight (8) single transaction bonds (STBs). We respectfully request that this Court enter judgment for AHAC, dismiss the Government's case and award legal costs and expenses to AHAC.

///

///

I.   **INTRODUCTION**

In this action, the Government seeks to collect antidumping duties plus interest pursuant to 19 U.S.C. §580 and 28 U.S.C. §1961 on eight (8) STBs issued by AHAC as surety to two (2) importers – Panjee Co., Ltd. (Panjee) and Pan Pacific Products Inc. (Pan Pacific).   The merchandise underlying the eight (8) entries, made between February 26, 2001 through January 4, 2002, consisted of canned mushrooms from the People's Republic of China (China) subject to an antidumping duty order on certain preserved mushrooms from China issued by the U.S. Department of Commerce (Commerce).   Now, two (2) decades later the Government seeks to collect against the eight (8) STBs although: (1) the issues involving the same operative and/or series of transactional facts have already been litigated in this Court in AHAC 2016[1]; (2) judicial precedent demonstrates the untimeliness of the Government's claims; (3) the Government's new right of action analysis is based on flawed logic; and (4) the Government would be rewarded for its untimely actions (both liquidation and billing) by collecting on the full bond amount as well as interest under 19 U.S.C. §580 and 28 U.S.C. §1961.   We respectfully request that this Court enter judgment for AHAC, dismiss this action and award legal costs and expenses to AHAC.

In response, the Government's reply memorandum argued that AHAC's defenses of *res judicata* and the statute of limitations have no merit. *See* Pl. Br. at 2.   The Government also claims that AHAC did not directly respond to the Government's Statement of Undisputed Facts and therefore the Court should deem all statements contained therein as admitted pursuant to USCIT Rule 56(e)(2). Id.   As will be demonstrated below, this is a moot point as AHAC does not dispute the Government's Statement of Facts.   Nonetheless, a decision on this issue falls under this Court's discretion pursuant to USCIT Rule 56(e)(1).   In exercising this discretion, the

---

[1] United States v. Am. Home Assurance Co., 151 F.Supp.3d 1328 (Ct. Int'l Trade 2015), amended, (Ct. Int'l Trade March 15, 2016), aff'd *per curium* Fed. Cir. Appeal No. 18-1960.

Court might take note that the Government's lengthy response is 8,814 words in length, well over the 7,000 word limitation for reply briefs per Chamber Procedure 2(B)(1)(a).

In its response, the Government first argues that since the transactions (entries and STBs) that form the basis of the Government's complaint in this matter were not litigated or adjudicated in the prior matter (AHAC 2016), the doctrine of *res judicata* does not bar the Government's cause of action. <u>Id</u>. While the specific entries and STBs in this case are different than the transactions in the previous litigation (AHAC 2016), they nevertheless derive from the same common set and/or series of connected transactions underlying the prior litigation. Therefore, as will be demonstrated below, the doctrine of *res judicata* does bar this cause of action.

Second, the Government argues that its cause of action is not time-barred by the statute of limitations six-years after the entries were deemed liquidated. Under the Government's new theory, only after a demand for payment by the Government and a subsequent default by the surety, are the terms of the bonds breached and the statute of limitations begins to run[2]. Pl. Br. page 3. The Government's new theory of surety liability ignores all prior court precedent holding that the Government's claim under the applicable statute of limitations accrues six-years after a deemed liquidation. Furthermore, the Government's reliance on court cases involving liquidated damages, as opposed to duties, is misplaced and ignores the warnings of those cases with regards to unilateral acts which will eviscerate the statute of limitations by allowing the Government to toll the statute of limitations indefinitely. Moreover, the Government's refusal to call their admitted liquidations, following the admitted deemed liquidations, "reliquidations" minces words and attempts to mislead this Court to escape the Government's fate in <u>United</u>

---

[2] Interestingly, the Government's Reply Introduction cites <u>United States v. Int'l Fidelity Ins. Co</u>., 273 F.Supp.3d 1170, 1179 (Ct. Int'l Trade 2017) to describe a customs bond contract. *See* Pl. Br. page 3. That same case cited AHAC 2016 when the Court stated "[w]hen liquidation occurs by operation of law, the six-year statute of limitations commences on the date of the deemed liquidation." <u>Id</u>. at 1177.

States v. Cherry Hill Textiles, Inc., 112 F.3d 1550 (Fed. Cir. 1997) wherein the Appellate Court ruled unlawful reliquidations are void as a matter of law.

Under the category of principles embodied by *res judicata*, the Government's claims are precluded. *Arguendo*, even if the Government's claims are not precluded by *res judicata*, the Government's claims are nevertheless time-barred as they were commenced more than six-years after the claims accrued, e.g. from the date the entries deemed liquidated. Finally, AHAC requests that this Court award it legal costs and expenses for defending this superfluous action. As stated above, the Government is attempting to both overturn well established prior legal precedent **and** relitigate a case involving the same transactional facts (*res judicata*) and issues (*stare decisis*) that were decided by this court in AHAC 2016.

## II. AHAC DOES NOT DISPUTE THE GOVERNMENT'S STATEMENT OF FACTS

The Government is correct in noting that AHAC did not directly respond to the Government's statement of undisputed facts within its motion for summary judgment. *See* Pl. Br. page 4. AHAC does not contest the Government's statement of undisputed facts. Accordingly, AHAC will not object should this Court consider the Government's facts undisputed for purposes of the motion. See USCIT Rule 56(e)(2). However, for purposes of complying with USCIT Rule 56(e), AHAC nevertheless has attached as an Exhibit to this reply a separate response to the Government's statement of undisputed facts pursuant to USCIT Rule 56(e)(1). *See* Exhibit A to Df. Reply Motion.

With regards to any other material facts in dispute, AHAC does note that the Government has denied AHAC's position that U.S. Customs & Border Protection (CBP) "reliquidated" the entries underlying this action. *See* Pl. Response to Defendant's Statement of Undisputed Material Facts, Dkt. No. 24-1. Nonetheless, within their reply brief the Government admits that

"[c]onsistent with the deemed liquidations and in order to systematically generate bills for the outstanding antidumping duties, CBP manually entered *liquidations* for these entries into its electronic system." *See* Pl. Br. page 23 (emphasis added).  CBP has admitted to the deemed liquidations occurring on February 20, 2003 and January 11, 2004.  *See* 8, 19, Pl. Response to Defendant's Statement of Undisputed Material Facts, Dkt. No 24-1.  The Government has also admitted that CBP "entered liquidations" of the subject entries over ten (10) years after the deemed liquidations in this case.  Id.   AHAC describes these subsequent liquidations as "reliquidations" within its cross-motion for summary judgment whereas the Government calls them a process "solely for systematic purposes" within their reply brief.  *See* Pl. Br. page 23.  We surmise that the Government's substitution of the term "reliquidation" with "systematic billing" is merely an effort to prevent this Court from drawing factual parallels between this case and Cherry Hill, as discussed later within this reply brief.

Whatever the Government's reasoning, since the Government has admitted to both the deemed liquidations and subsequent liquidations, we believe there is no question of material fact, only law, in this case.  Accordingly, summary judgment is appropriate.

III.   **RES JUDICATA BARS THIS CIVIL ACTION BECAUSE IT IS BASED ON THE SAME SERIES OF CONNECTED TRANSACTIONAL FACTS UNDERLYING AHAC 2016**

The Government seeks to relitigate and escape from this Court's AHAC 2016 decision by arguing that AHAC's application of *res judicata* is misguided because this action is based upon a different set of transactional facts than that of AHAC 2016.  The Government states that this action seeks to collect antidumping duties on eight entries that were not at issue in AHAC 2016.  *See* Pl. Br. page 6.  Although acknowledging that AHAC 2016 may be similar, the Government

argues that since the entries, bonds and legal claims of the two cases are different, *res judicata* does not apply because "the two cases are not based on the same set of transactional facts". Id.

As stated in our cross-motion for summary judgment brief, the Federal Circuit stated that "to prevail on a claim of *res judicata*, the party asserting the bar must prove that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." See Ammex, Inc. v. U.S., 334 F.3d 1052 (Fed. Cir. 2003) (Ammex). The Restatement (Second) of Judgments § 24 defines what it means for a second action to be "based on the same set of transactional facts." Id. Section 24 states:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar…, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit confirms to the parties' expectations or business understanding or usage.

The entries underlying AHAC 2016 and this case constitute a series of connected transactions. The facts of both cases are related in time, space and origin as evidenced by the following: (1) same importers (Panjee & Pan Pacific); (2) same commodity (preserved mushrooms); (3) entries made within same ADD/CVD period of review (POR); (4) same China suppliers (Raoping Xingyu & Shenxian Dongxing); (5) same deemed liquidation/time-barred issue; (6) same cause of action (Government collection action on AHAC's bonds for antidumping duties plus interest); and (7) same deemed liquidation dates (February 20, 2003 and

6

January 11, 2004). Due to these similarities, the Government included approximately 190 Panjee bills (CIT No. 09-00491 & CIT No. 10-00311) and 119 Pan Pacific bills (CIT No. 10-00002) all based on entries/transactions of this type within their consolidated causes of action in AHAC 2016.

In the first wave of litigation initiated in 2009, AHAC's expectation and business understanding was that the Government would group all of these same entries/transactions within one consolidated court action and that the conclusion of that action would apply to all other like entries/transactions in the same way. When this Court in AHAC 2016 held that the Government's case was barred due to the running of the statute of limitations six-years after the deemed liquidations, AHAC's expectation and business understanding was that all other entries with the same set of facts would receive the same treatment under the law. It was not remotely contemplated that CBP would be issuing new bills to surety involving the same importers and deemed liquidation duties under a novel theory of liability that contradicts prior case law.

The Restatement (Second) of Judgments § 24 further explains, through examples, what constitutes a "transaction" for the purposes of *res judicata* (also cited within Government's Reply Brief, page 7).

> d. Successive acts or events as transaction or connected series; considerations of business practice
>
> *When a number of items are overdue on a running account between two persons, and the creditor, bringing an action on the account, fails to include one among several past due items, judgment for or against the creditor precludes a further action by him to recover the omitted item. This conforms to ordinary commercial understanding and convenience.* On the other hand, when there is an undertaking, for which the whole consideration has been previously given, to make a series of payments of money – perhaps represented by a series of promissory notes, whether or not negotiable – the obligation to make each payment is considered separate from the others and judgment can be obtained on any one or an number of them without affective the right to maintain an action on the others. The same applies to the obligations represented by coupons attached to bonds or other

7

evidences of indebtedness which are similarly considered separate. See also Illustration 9[3]. See Restatement (Second) of Judgments § 24 cmt. D (1982) (emphasis added).

The first scenario emphasized above is exactly what occurred here, the Government failed to include the entries underlying this case with the same type of entries underlying AHAC 2016.

The Government's reply brief attempts to argue the latter scenario, that each individual business transaction between parties can serve as the basis for a cause of action that need not be brought within the same action. *See* Pl. Br. page 7. The Restatement § 24 cmt. d cites Illustration 9 (see footnote 3 below) as an example of the latter scenario. Illustration 9 provided an example of different types of taxes (income vs. property) that were considered separate transactions under the Restatement. Illustration 9 is distinguishable from the transactions at issue, namely that tax returns for individual years can be significantly different from one another. Unlike tax returns, the entries in this case, as demonstrated above, are essentially the same transaction or series of connected transactions as those litigated in AHAC 2016.

The Government's reply brief cites United States v. Stone & Downer Co., 274 U.S. 225, 235-36 (1927) (Stone & Downer), holding that in customs classification cases a determination of fact or law with respect to one importation is not *res judicata* as to another importation of the same merchandise by the same parties, as support for its position that AHAC's defense of *res judicata* is without merit. Aside from pointing obvious differences between Stone & Downer and this case, this is not a classification case, subsequent case law has since significantly narrowed the Stone & Downer principle.

---

[3] As stated in the Government's Reply Brief, page 7, Illustration 9 provides, "A pays income taxes for the years 1973 and 1974 and state property tax for the year 1973. Each of these annual taxes is considered separate so that actions for refund of these tax payments respectively could be maintained without fear of splitting."

In Shah Bros., Inc. v. United States, 751 F.Supp.2d 1303 (Ct. Int'l 2010) (Shah Bros. I), plaintiff prevailed and the Government conceded that Shah Bros.' gutkah imports should have been properly classified as chewing tobacco and not snuff. Despite this concession, CBP denied Shah Bros.' subsequent request to reclassify the entry at issue in the same manner as CBP had agreed to classify the entries at issue in Shah Bros. I, notwithstanding the fact that the entry was of materially identical merchandise to that at issue in Shah Bros. I and imported by the same importer shortly after commencement of that action. In Shah Bros., Inc. v. United States, No. 10-00205 (Ct. Int'l 2011) (Shah Bros. II), Shah Bros was awarded fees and costs by the Court for having to obtain a second judgment. In awarding fees and costs, the Court in Shah Bros. II stated:

> "[w]hile it is true that, due to "the unique and continually shifting facts of merchandise classifications, 'a determination of fact or law with respect to one importation is not *res judicata* as to another importation of the same merchandise by the same parties,'" Gulfstream Aerospace Corp. v. United States, 21 CIT 1083, 1093, 981 F.Supp. 654, 664 (1997) (footnote omitted) (quoting Schott Optical Glass, Inc. v. United States, 750 F.2d 62, 64 (Fed. Cir. 1984) (relying on Stone & Downer), the rationale behind this jurisprudence does not apply where, as here, Customs seemingly arbitrarily treats identical merchandise, imported by the same importer and during substantially the same time period, without any intervening change in law or fact, differently. See, e.g., Heartland By-Products, Inc. v. United States, 26 CIT 268, 277, 223 F.Supp.2d 1317, 1328 (2002) (discussing the "significant subsequent narrowing of the [Stone & Downer] principle by statute and caselaw," and noting that the rationale behind the Stone & Downer decision and its progeny was a narrow concern "that a [classification] decision would create binding law between one [importer] and Customs that would be applied to another [importer], without giving the second [importer] a chance to litigate any distinguishing elements"); Gulfstream Aerospace, 21 CIT at 1094, 981 F.Supp. at 665 (distinguishing Stone & Downer and holding that the outcome of prior litigation regarding a challenge to Customs' specific procedure for classifying the type of merchandise at issue in that case was preclusive against Customs in a later litigation challenging Customs' use of the same procedure to classify subsequent entries of the same merchandise)." Id. footnote 9.

In Heartland-By Products, Inc. v. United States, 223 F.Supp.2d 1317 (2002) (Heartland-By Products), the Court stated that "the rule that each new entry is a new cause of action does not apply in all Customs cases.  Instead it is limited to classification cases where the new entries differ such that Customs cannot rely on previous rulings to deny an importer the opportunity to raise new facts…[w]hen read together with collateral estoppel cases, Schott Optical Glass establishes that decision of this court are binding on Customs, and the contention that every new entry is a new cause of action is narrowly applied." Id.; See also Schott Optical Glass, Inc. v. United States, 750 F.2d 62, 64 (Fed. Cir. 1984)[4].  Heartland-By Products cites J.E. Bernard & Co., Inc. v. United States which further constrained Stone & Downer:

> "[C]ollateral estoppel is applicable in reappraisement litigation…[in these cases] the name of the nominal plaintiffs, the parties are the same, the cases involve identical merchandise, the same purchase price, the same exporter and importer, and arise out of the same contract of sale.  The only distinction between the two cases is that different importations are involved and, therefore, two causes of action." See 324 F.Supp 496 at 502-3 (1971).

In this case, like in Shah Bros. II, the Government is arbitrarily treating identical merchandise, imported by the same importers during the same time period, differently.  Under the Government's new theory (discussed *infra*), some of the bills derived from these entries are now collectable wherein others that were issued years prior under AHAC 2016 are not.  The sole difference between their collectability, according to the Government's new theory, lies in the Government's unilateral application of an arbitrary billing system.  It defies logic that bills issued ten (10) years later for the same set of entries should be more recoverable than the bills issued in a far shorter time frame.

---

[4] The Heartland By-Products court within footnote 10 notes that "[c]ollateral estoppel is the more specific term for binding parties to a determination essential to a previous case that the party was able to litigate on the merits.  It is a species of the larger category of principles embodied in the phrase res judicata….[c]ollateral estoppel, like the related doctrine of res judicata, serves to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication."

The Government has put forth a great deal of effort crafting arguments that it has the right to collect the subject bills despite this Court's decision in AHAC 2016.   What the Government has failed to do is ***provide any explanation*** as to why these bills were not issued sooner and/or included in the prior court action.

Furthermore, as indicated by the cases cited above, the <u>Stone & Downer</u> decision with respect to *res judicata* is to be applied very narrowly, i.e. limited to classification cases where new entries differ such that Customs cannot rely on previous rulings to deny an importer the opportunity to raise new facts.   Subsequent cases in the Court of International Trade (e.g. <u>Shah Bros II</u>, <u>Heartland By-Products</u>, <u>J.E. Bernard & Co</u>.), have found that *res judicata* (collateral estoppel) precluded subsequent court actions involving the same series of transactional facts. Furthermore, these cases held that the Government's contention in this case, that every new entry is a new cause of action, is to be narrowly applied.   In light of the foregoing, the Government's argument "because the entries, bills, and bonds at issue in this action were not at issue in AHAC 2016, *res judicata* is not a valid defense to this action" should be rejected.

Finally, the Government's reply brief discusses the doctrine of *stare decisis* which "'deals only with law' and each prior precedential holding of the court becomes a 'statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decision."   See Pl. Br. page 9.   The Government argues that the doctrine of *stare decisis* is not at issue in this case as AHAC 2016 did not address the new legal theory posed in this civil action. <u>Id</u>.   We disagree. As discussed *infra*, this Court has issued multiple opinions involving the issue of when the Government's right to collect duties under the statute of limitations begins to accrue.   All of these opinions have held that the Government's six-year right to collect duties accrues on the date of liquidation.   Now, despite court precedent, the

Government is ignoring the doctrine of *stare decisis* and is advancing a new theory of surety liability.

The Government claims it had sought to advance their new theory of surety liability to the trial court in AHAC 2016 but was denied leave to do so. *See* Pl. Br. page 14. Furthermore, the Government states that it did not present any arguments regarding this issue to the Court of Appeals for the Federal Circuit (CAFC) and since the CAFC's decision was nonprecedential, per CAFC Rule 36, the Government's new theory remains unresolved and ripe for adjudication. *See* Pl. Br. page 15.

As stated in our cross-motion for summary judgment, the Government had ample opportunity to bring this new theory in AHAC 2016 but chose not to. See Df. Cross-Motion, page 13. In AHAC 2016 the Government filed six (6) motions for summary judgment which failed to raise the date of accrual issue, tried to file an untimely Supplemental Brief on the issue and, although the Government stated would raise this issue on appeal to the CAFC, it nevertheless chose not to. Now, since the CAFC issued an appeal decision pursuant to Rule 36 bearing the notation "NOTE: This disposition is nonprecedential.", the Government argues that the question of the date of accrual remains unresolved. To the contrary, the CAFC's application of Rule 36 further supports AHAC's *stare decisis* claim in this case. Per Rule 36(a), the CAFC may enter a judgment of affirmance without opinion when it determines that, "(1) the judgment, decision, or order of the trial court appealed from is based on findings that are not clearly erroneous;...(3) the record supports summary judgment, directed verdict, or judgment on the pleadings;...(5) a judgment or decision has been entered without an error of law." Id. In short, the CAFC agreed with this Court's opinion in AHAC 2016 so much so that Rule 36 allowed the CAFC to issue a judgment of affirmance without opinion. If the CAFC believed that a part of

this Court's legal analysis (e.g. accrual under the statute of limitations from the deemed liquidation date) was an error of law, the CAFC would have likely issued a separate opinion. Accordingly, by issuing a Rule 36 opinion, the CAFC indicated that AHAC 2016 was affirmed without an error of law.  For the foregoing reasons, this action should be dismissed under the principles of *res judicata* and/or *stare decisis*.

## IV.   THE GOVERNMENT'S CLAIMS ARE TIME BARRED BY THE STATUTE OF LIMITATIONS

### A.   The Government's Right of Action Against AHAC Accrued Upon the Deemed Liquidation of the Entries

The Government's reply brief claims that AHAC's reliance on <u>United States v. Ataka Am., Inc.</u>, 826 F.Supp. 495 (Ct. Int'l Trade 1993) (Ataka), <u>United States v. Great Am. Ins. Co.</u>, 791 F.Supp.2d 1337 (Ct. Int'l Trade 2011) (Great American) and <u>AHAC 2016</u>, 151 F.Supp.3d 1328, in support of its calculation of the date of accrual six-years after the entries at issue deemed liquidated is misplaced. See Pl. Br. page 10.  Based on the aforementioned precedent already established by this Court on the accrual of a right of action pursuant to 28 U.S.C. § 2415(a), under the principle of *stare decisis* AHAC's reliance is valid.

First, in 1993, this Court in <u>Ataka</u> held that "[t]he right to collect immediately on liquidation carries with it the responsibility to act within six years of liquidation to collect on the contract obligation of the surety." <u>Ataka Am., Inc.</u>, 826 F.supp. at 503.  In 2011, this Court in <u>Great American</u> held that:

> "[t]he Government's cause of action accrued six months after publication of the Notice of Rescission when the Coastal Entries deemed liquidated and the Government's right to collect additional duties attached.  See 19 C.F.R. §113.62(a).  The Government failed to bring its claim within six years after the Coastal Entries were deemed liquidated, the event triggering the Government's

cause of action.  Therefore, its right to collect any duties on the Coastal Entries is time-barred.  See 28 U.S.C. §2415(a).

Id. at 1344.  In 2016, this Court in AHAC 2016 stated "[h]aving failed to bring its collection actions within six years of the dates these entries were deemed liquidated, the Government's right to collect any duties from AHAC on the entries…is time-barred." See AHAC 2016, 151 F.Supp.3d at 1342-43.  Finally, in 2017 this Court in United States v. Int'l Fidelity Ins. Co., 273 F.Supp.3d 1170, 1177 (Ct. Int'l Trade 2017) (Int'l Fidelity) stated "[w]hen liquidation occurs by operation of law, the six-year statute of limitations commences on the date of the deemed liquidation." Id.  The main issue being argued upon, when accrual occurs, is something that this Court has spoken to on multiple occasions and clearly decided as relating to a surety bond.  For the Government to take the position that the doctrine of *stare decisis* is not applicable here and that AHAC's reliance on these cases is misplaced defies the clear directives provided by this Court on this issue.

In support of its position and in its interpretation of the Ataka decision, the Government refers to the language of 19 U.S.C. §1505(b) and the amendment of this statute in 1993 stating "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment." Id.; See Pl. Br. page 10.  What the Government's analysis fails to acknowledge is that the court decisions in Great American, AHAC 2016 and Int'l Fidelity were all made after the amendment of this statute in 1993.

The title of 19 U.S.C. §1505(b) is "Collection or Refund of Duties, Fees, and Interest Due ***Upon Liquidation or Reliquidation***". (Emphasis added).  A plain reading of the title indicates that duties are due upon liquidation and that liquidation is the point at which the Government's right for a cause of action accrues.  While liquidation represents the initial date the Government

has a cause of action for collection of unpaid duty, the Government may choose for whatever reason to delay issuing a bill. Nonetheless, the ability to delay collection does not extend the statute of limitations.  AHAC submits that Congress' inclusion of the language "due 30 days after issuance of the bill" was to put importers and their sureties on notice that duty had to be paid shortly after bills were issued upon liquidation.  See United States v. Heraeus-Amersil, Inc., 671 F.2d 1356 (C.C.P.A. 1982) (Heraeus-Amersil) where the importer argued that increased duties did not have to be paid until its protest were denied; See also Ataka at 500 which stated that Congress enacted legislation in the prior version of §1505 to specifically counteract the effect of Heraeus-Amersil[5].    AHAC submits that Congress' intent when amending the prior version of §1505 was the same when amending §1505 to the current version.  The amendment was not to give the Government the ability to extend the statute of limitations date but rather "allow Customs to take *immediate* steps to collect monies", regardless of the existence of a pending protest. See Ataka at 500 (emphasis added);) See also United States v. Int'l Fidelity Insurance Company, CIT No. 10-00321 whereby the Government filed suit against surety within six years of the liquidation dates (not subsequent bill dates) despite a non-decision on surety's protest.

Here, the Government took no immediate steps to collect monies (bills issued more than ten [10] years after deemed liquidations) and any interpretation of §1505(b) that would allow the Government to collect duties as a result of the delayed billing would run afoul of this Court's holding in Ataka. See Ataka, at 504 quoting "[b]ecause a private litigant has no power to toll the statute of limitations indefinitely, neither should the Government." Id.  In Ataka, the court stated that the Government's eleven (11) year delay in deciding the protest (i.e. a unilateral act much

---

[5] Prior version of §1505 "duties determined to be due upon liquidation or reliquidation shall be due 15 days after the date of that liquidation or reliquidation."

like the billing in this case) does not postpone the running of the statute of limitations would run afoul of equalizing the control that the Government and private litigants have over a suit. Here, the Government's delay in issuing the subject bills more than ten (10) years later should similarly bar the Government's suit in this action.

   B. <u>The Government's New Theory Upon Which the Right to Action Accrues is Without Precedent for Duty Bills</u>

   The Government's reply brief claims its "breach of bond" legal analysis applies whether the Government is collecting on a duty bill or liquidated damages claim. See Pl. Br. page 15. The bonds at issue in the cases cited by the Government secured different types of liabilities. As stated in the Government's reply brief, <u>United States v. Cocoa Berkau</u>, Inc., 990 F.2d 610 (Fed. Cir. 1993) involved a bond to secure redelivery; <u>United States v. Commodities Export Co</u>., 972 F.2d 1266, 1268 (Fed. Cir. 1992) was a claim against a warehouse bond to secure compliance with rules governing duty-free stores and <u>Ataka Am., Inc</u>., 826 F.Supp. at 496-97, like the present case, involved bonds used to secure antidumping duties. See Pl. Br. page 15-16.

   First, as noted *supra*, the <u>Ataka</u> Court held that the date of accrual for the statute of limitations for duty bills began on the date of liquidation, not after issuance of a bill so it is unclear why the Government is relying on this case. <u>Cocoa Berkau</u> involved a principal's failure to redeliver chocolate upon proper demand by CBP. Pl. Br. page 17. The <u>Cocoa Berkau</u> court found that the Government's right of action accrued when the principal failed to redeliver refused product following demand by Customs. The Government points out that the Federal Circuit did not find that the date of liquidation triggered the accrual of the cause of action but rather the demand by Customs and later default by the principal. See Pl. Br. page 18. What the Government fails to consider is that Customs must meet clear deadlines in order for there to be

liability for the failure to redeliver.  For example, Customs must issue a Demand for Redelivery no later than 30 days after the merchandise was released or 30 days after the end of the conditional release period (whichever is later).  See 19 C.F.R. §113.62(d)(3).  The consequences of a failure to issue a redelivery demand prior to liquidation renders the Government's claim for liquidated damages null and void.  See Customs Ruling HQ 224566 dated August 3, 1993, "(b)ecause the liquidation or reliquidation is the final Customs action on an entry, the notice of redelivery had to be before or at the time that the liquidation notice was posted.  Issuing a notice to redeliver after posting a "no change" liquidation notice would be an inconsistent act." Citing U.S. v. American Motorists Ins. Co., 10 CIT 19 (1986) and New Zealand Lamb v. U.S., USCIT Slip Op. 92-218.  See also United States v. Utex International, Inc., 857 F.2d 1408 (1988) holding that no demand for redelivery shall be made after liquidation of the entry has become final; See also 19 C.F.R. §141.113(h).

Unlike liquidated damage claims, there are no regulations or statutes establishing a time frame for the Government to issue duty bills after liquidation.  Based on the present court action, the Government apparently believes it has unlimited discretion as to when it may issue duty bills.

C.  <u>The Government's Admitted Liquidations Following the Admitted Deemed Liquidations are Reliquidations</u>

As discussed *supra* (Section II), the Government has admitted that it first issued duty bills for the subject entries in 2014 more than ten years after the deemed liquidations of the subject entries in 2003 and early 2004.  AHAC calls the 2014 bills "liquidations" because liquidation is normally a precursor to duty bill issuance.  Also, Customs own "liquidation worksheet" for each Panjee entry is stamped "LIQUIDATED U.S. CUSTOMS". See Exhibit B –

Panjee Liquidation Worksheets dated September 9, 2014.  Since there are two liquidation events (in 2003 and 2014) AHAC considers the second set of liquidations in this case to be "reliquidations".

On the other hand, the Government calls the issuance of the 2014 bills a "process" solely for "systematic purposes to effectuate the deemed liquidations and issue the bills for the antidumping duties." Pl. Br. page 23.  Whether the 2014 action is termed a reliquidation or process, the Government cannot escape the parallels between the Federal Circuit's decision in United States v. Cherry Hill Textiles, Inc., 112 F.3d 1550 (Fed. Cir. 1997) (Cherry Hill) and this case.

In Cherry Hill, the Court specifically found that the deemed liquidation at issue was final.  In cases in which a liquidation has become final, *the government cannot seek to recover additional duties simply by making a new liquidation of the original entry.*" Id. at 1560 (Emphasis added).  While, unlike in Cherry Hill, the Government in this case has not increased the amount of duty allegedly owed via the second liquidation, it is seeking to recover previously uncollectable duties simply by "reprocessing" the original entries.  Like Cherry Hills, this Court should not give the Government's claim new life merely because legally uncollectable bills were placed on AHAC's Formal Demand on Surety (C.F. 612) more than a decade after the cause of action accrued.


V.    **CONCLUSION**


For the reasons set forth above, AHAC is entitled to summary judgment.  Plaintiff's claims are precluded under *res judicata* and *stare decisis* following this Court's decision in

AHAC 2016.  *Arguendo*, plaintiff's claims are barred under the Statute of Limitations as the Government's right of action accrued upon the deemed liquidation of the subject entries.   Any bills issued ten years after the deemed liquidations are not proper as such bills are based on untimely and legally void reliquidations.  Finally, AHAC is entitled to costs as the Government has brought this action despite having already litigated this issue within AHAC 2016 and advancing a novel new theory of liability against all prior judicial precedence.

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, *SENIOR JUDGE*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff | : | |
| v. | : | Court No. 20-00175 |
| AMERICAN HOME ASSURANCE COMPANY, | : | |
| Defendant | : | |

## <u>CERTIFICATE OF COMPLIANCE</u>

I, MICHAEL B. JACKSON, an attorney with the law firm of Meeks, Sheppard, Leo & Pillsbury, who is the attorney responsible for the Cross-Motion for Summary Judgment and Opposition to plaintiff's Motion for Summary Judgment, relying on the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures and contains 6,795 words.

/s/ Michael B. Jackson, Esq.
Michael B. Jackson, Esq.
Meeks, Sheppard, Leo & Pillsbury
352 3rd Street, Suite 202
Laguna Beach, CA 92651
(949) 719-2712

Dated:  May 14, 2021

## <u>CERTIFICATE OF SERVICE BY MAIL</u>

MICHAEL JACKSON certifies that I am a trial attorney with the firm of Meeks,

Sheppard, Leo & Pillsbury, with offices located at 352 3rd Street, Suite 202, Laguna Beach, CA

92651, and that on May 14, 2021 on behalf of American Home Assurance Company, defendant

herein, I caused the annexed Reply Memorandum to be served upon:

Peter A. Mancuso, Esq.
*CIVIL DIVISION, DEPT. OF JUSTICE*
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, NY 10278
Ph:  (212) 264-9230 or 264-9237

the attorneys for the Plaintiff herein by the deposit of a copy thereof in a United States mail

receptacle, properly enclosed in a secure envelope, duly stamped or postage prepaid, addressed

to said attorneys as above indicated.

/s/<u>Michael Jackson</u>
