UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE RICHARD K. EATON, *SENIOR JUDGE*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOME ASSURANCE COMPANY,<br><br>Defendant. | Court No.: 20-00175 |

*AMICUS CURIAE* BRIEF OF THE CUSTOMS SURETY COALITION AND ITS FOUR COALITION MEMBERS: THE INTERNATIONAL TRADE SURETY ASSOCIATION; THE NATIONAL ASSOCIATION OF SURETY BOND PRODUCERS, INC.; THE SURETY & FIDELITY ASSOCIATION OF AMERICA; AND THE CUSTOMS SURETY ASSOCIATION

IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

TABLE CONTENTS

INTRODUCTION .................................................................................................................. 1
ARGUMENT .......................................................................................................................... 2
    I.    This Court has consistently held that US Customs' right of action to collect on a bond for unpaid duties pursuant to 28 U.S.C. § 2415(a) accrues on the date of liquidation and that principle should be applied here under the rule of *Stare Decisis* ................................................. 2
    II.    Acceptance by this Court of the position advanced by CBP would render the statute of limitations provision meaningless as CBP would have total control of when a right of action would accrue .................................................................................................................. 5
    III.    The cases cited by CBP indicate that liability comes from a breach of the bond, but also note that the bond creditor (CBP) cannot be in total control of the accrual of a right of action . 8
    IV.    CBP's reliance on 19 U.S.C. § 1505(b) does not support reversal of prior precedent and is contrary to the purpose of the statute .................................................................................... 10
CONCLUSION ..................................................................................................................... 15
CERTIFICATE OF COMPLIANCE .................................................................................... 16

# **TABLE OF AUTHORITIES**

**CASES**

*Inter-Pac. Corp. v. United States*, 594 F. Supp. 739, 741 (Ct. Int'l Trade 1984) ........................... 4

*Int'l Trading Co. v. United States*, 412 F.3d 1303, 1310 (Fed. Cir. 2005) ................................. 13

*Koyo Corp. of U.S.A. v. U.S.*, 29 C.I.T. 1354, 1356 (2005)........................................................ 13

*Marlowe v. Bottarelli,* 938 F.2d 807, 813 (7th Cir. 1991).......................................................... 13

*United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328, 1342–43 (Ct. Int'l Trade 2015) *amended* (March 15, 2016) ................................................................................................ 3, 4

*United States v. Ataka Am.*, Inc. 826 F. Supp. 495, 503 (Ct. Int'l Trade 1993) ......................... 12

*United States v. Cherry Hill Textiles*, 112 F.3d 1550, 1559 (Fed. Cir. 1997) ............................ 13

*United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 614 (Fed. Cir. 1993) ............................. 5, 8, 9

*United States v. Commodities Exp. Co.*, 972 F.2d 1266 (Fed. Cir. 1992) ................................. 8, 9

*United States v. Great Am. Ins. Co. of NY*, 35 C.I.T. 1130, 1140 (2011), *aff'd sub nom. United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320 (Fed. Cir. 2013) ........................ 2, 4, 11

*United States v. Heraeus-Amersil*, Inc., 671 F.2d 1356 (C.C.P.A. 1982)................................... 10

*United States v. Int'l Fid. Ins. Co.*, 273 F. Supp. 3d 1170, 1177 (Ct. Int'l Trade 2017) ............. 3, 5

*Wassenaar v. Office of Personnel Mgmt.*, 21 F.3d 1090, 1096 (Fed. Cir. 1994).......................... 14

**STATUTES**

19 U.S.C. § 1504................................................................................................................ 3, 13, 14

19 U.S.C. § 1505.................................................................................................................10, 11, 14

19 U.S.C. § 1514........................................................................................................................... 3

28 U.S.C. § 2415................................................................................................................. *passim*

28 U.S.C. § 2636(a) ................................................................................................................... 10

**OTHER AUTHORITIES**

*Customs Procedural Reform Act of 1977: Hearings on H.R. 8149 and H.R. 8222 Before the Subcomm. on Trade of the House Comm. on Ways and Means*, 95th Cong., 1st Sess. 56 (1977) . 13

HQ H249804 (Apr. 3, 2017)........................................................................................................ 12

Office of Inspector General, *CBP Did Not Maximize Its Revenue Collection Efforts for Delinquent Debt Owed from Importers* (2018)............................................................................ 7

## **REGULATIONS**

19 C.F.R. § 133.37(a) .......................................................................................................... 12

19 C.F.R. § 159.1 .................................................................................................................. 3

19 CFR §141.1(b)(1) ............................................................................................................ 6

31 C.F.R. § 223.11 .............................................................................................................. 12

# INTRODUCTION

This brief is filed on behalf of *amici* who represent the US Treasury certified surety companies (and their agents) responsible for the vast majority of surety bonds on file with Customs and Border Protection ("CBP" or "Customs") to secure import obligations, including duty, taxes and fees of the type which are involved in this action. *Amici* are four surety associations who have worked directly and closely with CBP to assure that the Customs bond program is administered in a way that sureties can meet their financial and fiscal responsibilities to CBP and to the Treasury Department, while making bonds reasonably available to all importers to support the immediate and timely delivery of goods into the commerce of the United States while securing the obligations to later deposit and pay duty, taxes and fees, redeliver, export or destroy goods which are found to be inadmissible, and pay liquidated damage penalties as appropriate for regulatory defaults.

A critical element for the success of the Customs surety bond program is for sureties to know the extent and limit of their risk and liabilities: the extent is set by the bond amount and the limit is set by the six-year statute of limitations. This case involves an end-run around the six-year statute which comes as a surprise to the *amici*: CBP liquidations, bills and demands have long stood as the notice that sets the deadline for paying and contesting bills. However, the authority of CBP to issue those bills and demands – the accrual of their actions which sets in motion the six-year statute of limitations – has always – and continues to be – triggered by the liquidation date: the final decision on the amount of duty, tax and fees payable by the importer and its surety.

This brief will set forth the reasoning and authorities which support our position: US Customs' interpretation of the right of action accrual provision of 28 U.S.C. § 2415(a) must be rejected by the Court as contrary to prior precedent, public policy and statutory construction.

**ARGUMENT**

I. **This Court has consistently held that US Customs' right of action to collect on a bond for unpaid duties pursuant to 28 U.S.C. § 2415(a) accrues on the date of liquidation and that principle should be applied here under the rule of *Stare Decisis***

The instant action by CBP is an action to collect additional duties due under eight single transaction bonds that had been posted by a surety (American Home Assurance Company) who is the defendant in this action. A collection claim for unpaid duties initiated by CBP is governed by the statutory language of 28 U.S.C. § 2415(a), which states in pertinent part that:

> [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later.

Therefore, the main consideration relevant to claims that are limited pursuant to 28 U.S.C. § 2415(a) is when did the right of action accrue. In this case, CBP claims that the right of action in these cases accrued when the specific terms of the surety contracts were breached, which was the date the surety failed to pay duties after receiving increased duty bills. Gov't Reply at 3. **In doing so, the Government ignores the fact that these bills are invalid because the subject entries had liquidated over ten years earlier**. Stated otherwise, for more than ten years, the amount of duty, tax and fees billable to the surety was known to CBP, was fixed and final, was not subject to further decision-making by CBP, and CBP had failed to issue the notice sureties are entitled to for exercising their right to protest.

It is well-settled that the right of action to collect on a bond for unpaid duties pursuant to 28 U.S.C. § 2415(a) accrues when the relevant entry is liquidated by US Customs. *See United States v. Great Am. Ins. Co. of NY*, 35 C.I.T. 1130, 1140 (2011), *aff'd sub nom. United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320 (Fed. Cir. 2013). When we consider the date of

liquidation to be the accrual date, it makes the commencement of the instant action well beyond the six-year date set out in 28 U.S.C. § 2415(a). Importantly, this Court has not distinguished between the types of liquidation as having an impact as to when a right of action accrues. *See id.* at 1139. Therefore, under prior precedent, a right of action under a bond for unpaid duties pursuant to 28 U.S.C. § 2415(a) accrues as a result of a liquidation, regardless as to whether the liquidation was the product of conscious action by CBP, or as in this case, by operation of law. *See id.* at 1140.

In this case, there is no dispute that the relevant entries were deemed liquidated in 2003 and 2004 because CBP failed to take action. *See* Gov't Reply at 26. As such, in line with the statutory guidelines of 19 C.F.R. § 159.1, 19 U.S.C. § 1504, and 19 U.S.C. § 1514(a), the 2003 and 2004 deemed liquidations of the relevant entries determined the final total dutiable amount owed to CBP, which is also a point not disputed by CBP. *See* Gov't Reply at 19.

When an entry has been deemed liquidated, this Court has held time and again that a right of action under a bond limited by 28 U.S.C. § 2415(a) begins to accrue the moment the relevant entry is deemed liquidated. *See United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328, 1342–43 (Ct. Int'l Trade 2015) *amended* (March 15, 2016) ("Because Customs failed to liquidate within six months of the date of publication of the notices of rescission in the Federal Register, these entries were liquidated by operation of law at the entered rates, at which time the Government's cause of action on the bonds began to accrue."); *see also United States v. Int'l Fid. Ins. Co.*, 273 F. Supp. 3d 1170, 1177 (Ct. Int'l Trade 2017) ("When liquidation occurs by operation of law, the six-year statute of limitations commences on the date of the deemed liquidation."). Consequently, in arguing that the deemed liquidations of the relevant entries did not trigger the accrual of CBP's right to action, CBP is effectively asking that the Court reject a standard that it has clearly articulated previously.

Therefore, a significant pitfall of the argument promulgated by CBP is that there is a clear directive that has consistently been articulated by this Court that runs directly counter to their position. To that point, the previous decisions issued by this Court make it abundantly clear that CBP's right of action relating to a collection claim on a bond that is limited by 28 U.S.C. § 2415(a) begins to accrue from the date of deemed liquidation. *See Great Am. Ins. Co. of NY* at 1140 ("The Government's right of action accrues from the date of liquidation. The Government's right to collect additional duties attaches when the entry liquidates."); s*ee also United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328, 1342–43 (Ct. Int'l Trade 2015) ("Having failed to bring its collection actions within six years of the dates these entries were deemed liquidated, the Government's right to collect any duties from AHAC on the entries in court numbers 10–002, 10–003, and thirty of the seventy-nine entries of fresh garlic in court number 10–311 is time-barred."). In rendering those decisions, this Court did not make mention of the date on which the relevant bill was issued, or any other conditional pretext, as necessary for the triggering of the statute of limitations. Consequently, acceptance of the position offered by CBP would be a stark deviation from the precedent established by this Court.

Based on the aforementioned precedent already established by this Court on the accrual of a right of action pursuant to 28 U.S.C. § 2415(a), the principle of *stare decisis*, a concept employed by this Court previously, should be invoked presently. *See Inter-Pac. Corp. v. United States*, 594 F. Supp. 739, 741 (Ct. Int'l Trade 1984) ("*Stare decisis* is applicable where a decision in a prior case involves the same merchandise and the same issues as those in the present case."). In that regard, the main issue being argued upon, when accrual occurs, is something that this Court has spoken to on multiple occasions and clearly decided as relating to a surety bond for unpaid duties

pursuant to 28 U.S.C. § 2415(a). *See United States v. Int'l Fid. Ins. Co.*, 273 F. Supp. 3d 1170, 1177 (Ct. Int'l Trade 2017).

**II.    Acceptance by this Court of the position advanced by CBP would render the statute of limitations provision meaningless as CBP would have total control of when a right of action would accrue**

In order to support its position in this instance, CBP relies on the foundational notion that a surety bond is a contract, and that it is the breaching of the terms of the bond that initiates the accrual of a right of action. To that point, the Government claims that the activating "breach" does not occur until after the surety's failure to pay the bills issued over ten years after the liquidations. *See* Gov't Reply at 3. There is no doubt that a surety bond is a contract between the principal, the surety, and the Government. However, it is well-established law that a "breach" which generates the cause of action under a surety bond is not a breach by the surety, but rather, the "breach" (obligation or failure to pay) by the principal. *See United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 614 (Fed. Cir. 1993). Further, subsumed in the contract is that the:

- surety's obligations under a bond do not last forever, in that they are limited by the Section § 2415(a) statute of limitations,

- Government will take certain actions to responsibly carry out its obligations under the bond.

In that regard, it is clear that the statutory and contractual obligations of the parties contemplate that CBP has a six-year period in which to issue bills to the principal and default notices to the surety which will place the surety on notice that the importer has failed in its obligations to CBP. The parties to this contract have worked under these principles since the inception of the surety bonding concept, until this novel interpretation of Section § 2415(a) that is being advanced in this Court by CBP.

If we accept CBP's current position that the Government can take no action for unlimited years after liquidation (when its right of action FIRST accrued), and then issue a bill for duties, and use that bill to assert its rights under a bond, then the statute of limitations provision of Section § 2415(a) would be meaningless. That is, if this position is accepted by the Court, it will write the Section § 2415(a) statute of limitations out of the law and will be contrary to public policy for a number of reasons.

First, while the Government's right to collect duties against an importer has no limitations (19 CFR §141.1(b)(1)) ("The liability for duties, both regular and additional, attaching on importation, constitutes a personal debt due from the importer to the United States which can be discharged only by payment in full of all duties legally accruing, unless relieved by law or regulation."), the Government's right to collect duties from a surety under a bond is limited by Section § 2415(a). This means that Congress decided that the obligations of the surety are not to be open-ended, there was a desire to limit that bond liability to a reasonable term. Under the Government's interpretation of the law, the surety's obligation is totally open-ended and will begin to run whenever the Government decides to issue a bill. The delay of issuing this bill also increases the amount of interest that can be claimed under the bond, thereby further incentivizing the Government to ignore its past practice of issuing timely bills and waiting for years until the amount due has grown exponentially[1]. This would be contrary to public policy.

Second, the actions currently undertaken by US Customs, in part, the issuing of bills for unpaid duties over ten years after the relevant liquidations, is in direct contrast to the collection

---

[1] CBP's delay in issuing the bills resulted in a running up of interest on the increased duties (which apparently is what this claim really covers since the full amount of liquidated duties was paid to CBP by another surety). There is a fundamental unfairness that the surety can be liable for "late payment interest" for an indefinite time period and without any notice. Interest is a penalty for inaction. Here, there was no inaction on either the part of the surety or the importers prior to the bills being issued. Theoretically, CBP would have a profit motive to delay issuing bills if they knew they were always guaranteed payment from the surety.

goals of US Customs. *See* Office of Inspector General, *CBP Did Not Maximize Its Revenue Collection Efforts for Delinquent Debt Owed from Importers* (2018). In pertinent part, the Office of the Inspector General stated:

> [I]n debt collection, it is a universal commercial business axiom that the sooner debt is pursued after it is incurred, the more likely it is the debt will be collected. The primary purpose of Customs debt resolution action shall be to collect, as soon and as efficiently as possible, all overdue delinquent debt rightfully owed Customs or to collect as much [of] the debt that is beneficially possible.

*Id.* Likewise, it is further stated that:

> The Debt Collection and Improvement Act of 1996 which "requires CBP to maximize its collections of delinquent debts owed to the Government. These laws entail quick action to enforce recovery of debts and the use of all appropriate collection tools.

*Id*. Therefore, regardless of any other reasoning, this language is a clear indication that the current stance advocated by US Customs is not even in line with stated directive. US Customs cannot rationally be said to be acting quickly in this instance. On the contrary, the actions of US Customs are clearly indicative of what the Office of Inspector General was cautioning against.

Third, the Government's position would mean that CBP would be in total control as to when a right of action for unpaid duties under 28 U.S.C. § 2415(a) would accrue. Typically, the Government issues bills when entries are liquidated. When the importer (principal) does not pay their bills, they are put on a default list which serves to put the surety on notice that it should do what it can to protect itself, because their obligations under the bond may become due.

Under the current scenario, the surety's obligations are continuing well past liquidation because CBP has failed to issue bills and failed to put the importers on a default list. When the invoices are finally issued, as in this case, over ten years after the liquidations, the surety may be powerless to protect itself with its principal if it has to pay CBP. The statute of limitations under Section § 2415(a) becomes meaningless as CBP decides when it will issue a bill to trigger the

beginning of the statute of limitations. Permitting the Government to be in full control as to when a statute of limitations begins to run is contrary to the entire bonding scheme which demands responsible action by the Government and permits the Government to control the date the statute of limitations begins to run. This is also contrary to the public policy that has been incorporated in Section § 2415(a).

### III. The cases cited by CBP indicate that liability comes from a breach of the bond, but also note that the bond creditor (CBP) cannot be in total control of the accrual of a right of action

In support of their misguided claim, CBP cites to *United States v. Cocoa Berkau, Inc.*, 990 F.2d 610 and *United States v. Commodities Exp. Co.*, 972 F.2d 1266 (Fed. Cir. 1992), as evidence that a formal demand from US Customs is a pre-requisite to the accrual of a right of action pursuant to 28 U.S.C. § 2415(a). *See* Government Reply at 15. However, the language of the Federal Circuit in *Cocoa Berkau*, *Inc.* describes a different standard that runs directly counter to what CBP is advocating in this instance. In pertinent part, the Federal Circuit in *Cocoa Berkau, Inc.* stated:

> In the instant case, the bond merely stipulated that upon a "default of redelivery" by the principal, the principal (and its surety) would be liable for liquidated damages "as may be demanded" by Customs. Washington's duty as bond surety to pay liquidated damages arose as a consequence of the default of redelivery by the principal, not on a demand for the damages by the government. The demand made by Customs upon the surety was merely a procedural step for obtaining the damages and did not in itself create liability.

*Cocoa Berkau, Inc.*, 990 F.2d 610, 614. Further, the Federal Circuit stated:

> Thus, we cannot "permit a single party to postpone unilaterally and indefinitely the running of the statute of limitations." *Id.* at 1271. The accrual of a right of action should occur upon default by a liable party, not when a creditor takes steps to procure performance.

*Id.* The language of the Federal Circuit expressly cautions against what occurred in this instance. CBP is unilaterally postponing the statute of limitations because accrual control, as argued by them, is solely based on their demand. Therefore, even if Court agrees that the *Cocoa Berkau, Inc.*

8

case provides some level of support to the argument that it is the bond breach that can create an accrual of a right of action, it cannot be logically inferred that the Federal Circuit in that case contemplated events similar to those presented here. It makes more sense to adhere to the established concept that liquidation creates the right of action, and CBP's delay in issuing the bills merely delayed their right to sue to collect those debts. In this regard, the Federal Circuit cautioned against unilaterally and indefinitely running the statute of limitations, which is what CBP is effectively doing in this case. In sum, the *Cocoa Berkau, Inc.* case does not stand for the proposition that CBP's failure to take proper action in liquidation provides it with total control over the statute of limitations time frame.

Likewise, in citing *Commodities Exp. Co.* to support its current position, CBP again fails to account for language from the Federal Circuit pertinent to the issue at hand. In that case, the Federal Circuit stated in relevant part that:

> Customs has unilaterally adopted regulations which delay filing of actions. The bond agreement does not require Customs to demand payment or to send notice before suing Commodities or Old Republic. The bond does not require Customs to wait 60 days for a response to the demand before suing. Moreover, Customs' regulations do not state that commencement of the statutory period is postponed until after Customs gives notice and waits 60 days for a response. No statute requires Customs to give notice of demand for liquidated damages before suing. Without agreement of the parties or statutory obligations delaying the institution of suit, the general rule for accrual of a right of action still applies.

*Commodities Exp. Co.*, 972 F.2d 1266, 1271. This language of the Federal Circuit makes clear that generally, a demand from US Customs is not necessary in order to initiate a claim.

Taken collectively, as applied to the facts currently, the aforementioned language of the Federal Circuit in both *Commodities Exp. Co.* and *Cocoa Berkau, Inc.* provide standards and insight that run directly counter to the argument and actions of US Customs in this instance through the explicit reference to unilateral actions, despite US Customs offering these cases as evidence in

9

support of their position. Further, even if they are supportive in some sense, there is not a reasonable inference to be made that the Federal Circuit contemplated application to a situation like the present, where issuance of bills for unpaid duties occurred so far removed from the relevant liquidations.

### IV. CBP's reliance on 19 U.S.C. § 1505(b) does not support reversal of prior precedent and is contrary to the purpose of the statute

In an effort to further support their misguided stance, CBP makes reference to the language of 19 U.S.C. § 1505(b), and specifically, the amended reference in the statute to the issuing of a bill, as the salient consideration, not accounting for the other language of the statute that runs directly counter to that understanding. *See* Gov't Reply at 12. In 1993, this statute was amended to state "Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment." This amendment came about in part because of *United States v. Heraeus-Amersil*, Inc., 671 F.2d 1356 (C.C.P.A. 1982), where the importer argued that increased duties did not have to be paid until its protests were denied and the 180-day period to file a summons in the Court of International Trade expired (28 U.S.C. § 2636(a)). The change in this statute put importers and sureties on notice that duty increases had to be paid shortly after bills were issued in liquidation, and there was no doubt that liquidation was when CBP would issue duty bills. The purpose of the statute was not to push back the date that an action would accrue to collect duties from sureties if CBP failed to issue duty bills at the time of liquidation.

Finally, liquidation represents the initial date CBP has a right of action under 28 U.S.C. § 2415(a), but if they delay in issuing a bill, their ability to collect their duties may be delayed, but it should not extend the statute of limitations date. It cannot be logically argued that the inaction of CBP would allow for the extension of the statute of limitations, because as noted above, the

statute of limitations would be effectively meaningless. This is consistent with stated precedent, the concept that a party cannot be in full control of the statute of limitations, and the purpose of the amendment to 19 U.S.C. § 1505(b).

In sum, this Court has held that liquidation is the point at which the Government's right of action accrues against a surety pursuant to 28 U.S.C. § 2415(a). This Court's decisions have not distinguished by the manner in which liquidation has occurred. These decisions did not deviate from the belief that the accrual of a right of action is initiated when an entry is liquidated, not when a bill is issued by US Customs or some other event. *See Great Am. Ins. Co. of NY*, 35 C.I.T. 1130, 1140.

## V.   **Customs and the surety industry rely on each other for predictable behavior to ensure the customs surety bond system functionality**

The Government's position, if adopted by this Court, will dramatically impair the customs surety bond system. Moreover, CBP's re-interpretation of the six-year statute of limitations has been adopted without prior notice and without providing any opportunity for sureties to ameliorate the damages it would predictably cause.

In this case, CBP argues that it may refrain from notifying sureties of unpaid charges secured by its bond for an unlimited period of time, and here for over ten-years. The devastating impact on the surety program is obvious. During those ten years, without knowing of its exposure, the surety will make decisions with regard to the bond principal, as whether to write new bonds each year, to release or require additional security or collateral from the principal, to exercise its subrogation rights, to project sufficient cash reserves to cover its exposure and comply with insurance laws, and to further insure itself against potential underwriting losses. At the six-year mark after liquidation, the surety should have no unasserted exposures. Certainly, the six-year

statute of limitations is a critical element of a sound, responsible system for private sector sureties to secure federal government obligations.

The law contemplates that the surety will be aware of its exposures during the six-year period. Customs sureties are required by federal law to conduct their business in a fiscally responsible matter. 19 C.F.R. § 133.37(f); 31 C.F.R. § 223.11. Sureties are only able to secure government obligations because they have been certified by the Department of Treasury as qualified to do so and are subject to regulations governing their financial stability and performance. 19 C.F.R. § 133.37(a). In addition to federal law, state insurance laws require Customs sureties to conduct their business in a fiscally responsible matter.

Moreover, just over four years ago, Customs in its own ruling, asserted that American Home Assurance Company's position is the correct interpretation of the law at issue today. In Customs Headquarters Ruling H249804, dated April 3, 2017, Customs asserted that "CBP's right of action against a surety accrues within six years of the thirtieth day after liquidation 'regardless of whether an importer's or surety's protest deprives the assessment of its final effect'". HQ H249804 (Apr. 3, 2017) (citing *United States v. Ataka Am.*, Inc. 826 F. Supp. 495, 503 (Ct. Int'l Trade 1993)). Further, in this same Customs' ruling, Customs acknowledged that there is a six-year limitation on when the demand can be sent to a surety. In the ruling Customs writes,

> [i]n this case, the right of action arose 31 days after the first demand on the importer of record (the date of liquidation), i.e., 31 days after August 15, 2008 and October 10, 2008. **CBP's demand was mailed to IFIC on November 2, 2012 – well before the six-year time limitation had run.** CBP's authority to issue demands with regard to the entries at issue within the six year statute of limitation period is not altered by the fact that IFIC protested the entries and that CBP granted the protest with regard to seven of the entries at issue.

*Id.* (emphasis added). Customs' 2017 position regarding the accrual date of an action is what the surety industry has come to expect and is in line with the intent of the law.

**VI.     Customs ignores the purpose of the deemed liquidation provision of 19 U.S.C. § 1504**

The Federal Circuit and this Court have both previously explained Congress' intentions of the deemed liquidation provision of § 1504 as well. *See Int'l Trading Co. v. United States*, 412 F.3d 1303, 1310 (Fed. Cir. 2005); *see also Koyo Corp. of U.S.A. v. U.S.*, 29 C.I.T. 1354, 1356 (2005). This provision of § 1504 was added to the customs laws in 1978 to place a limit on the period within which importers and sureties would be subject to the prospect of liability for a customs entry. *Koyo Corp.* at 1357 (citing *United States v. Cherry Hill Textiles*, 112 F.3d 1550, 1559 (Fed. Cir. 1997) which interprets several cases and Congressional Reports on the intent of Section § 1504). Specifically, this Court in explaining the deemed liquidation provision of § 1504, cited the Commissioner of Customs' statement to the House Ways & Means Committee, which reported out the 1978 amendments to the Tariff Act, that the provision that became Section § 1504 was designed to "eliminate unanticipated requests for additional duties coming years after the original entry." *Id.* at 1358 (referencing *Customs Procedural Reform Act of 1977: Hearings on H.R. 8149 and H.R. 8222 Before the Subcomm. on Trade of the House Comm. on Ways and Means*, 95th Cong., 1st Sess. 56 (1977) (statement of Robert E. Chasen, Commissioner of Customs)). Thus, the goal of Section § 1504 was not to allow Customs to ignore the outcome of years of litigation, effectively thumbing its nose at Commerce and the courts and surprising (or shocking) the surety. *Id.* Customs cannot ignore Federal Register notices or throw liquidation instructions in a drawer and wait . . . so that it thereby collects duties to which it is not entitled. *Id.* at 1358-59. Congress wished to spur on Customs to liquidate timely with the deemed liquidation provision, not to sit back and disobey its directions, Commerce's directions, and the courts' directions. *Koyo Corp.* at 1360. Whenever possible, courts construe statutes and regulations in *pari materia. Marlowe v. Bottarelli,* 938 F.2d 807, 813 (7th Cir. 1991). Further, this Circuit's rule requires

statutes to be construed in light of their purpose. *Wassenaar v. Office of Personnel Mgmt.*, 21 F.3d 1090, 1096 (Fed. Cir. 1994). Therefore, Sections §§ 1504 and 1505 must be read together.

In this case, Customs is asking this Court to ignore the intent of the law. A law that was implemented to "eliminate unanticipated requests for additional duties coming years after the original entry." When reading Sections § 1504 and § 1505 together, it is inconceivable that Congress would intend to spur Customs to act quickly in one provision, but then grant them unlimited time to actually act in the other. This request of Customs must be rejected as a violation of the language and intent of the statute. It certainly would create an absurd result that could nullify the statute of limitations, and give CBP, as creditor on the bond, unlimited time to demand payments for sureties and could upend the entire customs surety industry then faced with a dramatic new, uncalculatable exposure, likely limiting the availability of Customs bonds.

**CONCLUSION**

Against this background, the Court must reject the Government's contentions as they unreasonably request the Court to ignore Congressional intent of the relevant statutes, will fundamentally alter the nature of the customs surety industry without proper due process, and are contrary to this Court's and Customs' own previous interpretation of the law. In sum, the Government's claims on American Home Assurance Company, are stale, invalid, and beyond the statute of limitations set out in 28 U.S.C. § 2415(a).

May 14, 2021

Respectfully submitted,

/s/ Robert B. Silverman
Robert B. Silverman
Peter W. Klestadt
GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
599 Lexington Avenue, FL 36
New York, New York 10022-4877
Tel.: (212) 557-4000
RSilverman@gdlsk.com

/s/ Gilbert Lee Sandler
SANDLER, TRAVIS & ROSENBERG, P.A.
5835 Blue Lagoon Drive
Suite 200
Miami, FL 33126
Tel.: (305) 894-1000
Email: lsandler@strtrade.com

*Attorneys for Proposed Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I, Gilbert Lee Sandler, representing the proposed *amici curiae*, and also the attorney responsible for filing this *amicus curiae* brief, dated May 14, 2021, in this matter have relied upon the word count feature of the word processing program used to prepare this memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 5,137 words.

/s/ Gilbert Lee Sandler