UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, *SENIOR JUDGE*

---

UNITED STATES OF AMERICA,                          :

               Plaintiff                   :

               v.                           :       Court No. 20-00175

AMERICAN HOME ASSURANCE COMPANY,                   :

               Defendant                   :

---

## DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Taylor Pillsbury
Meeks, Sheppard, Leo & Pillsbury
352 3rd Street, Suite 202
Laguna Beach, CA 92651
(949) 719-2712

Michael B. Jackson
Meeks, Sheppard, Leo & Pillsbury
352 3rd Street, Suite 202
Laguna Beach, CA 92651
(949) 719-2712

Attorneys for Defendant
American Home Assurance
Company

Dated:  October 8, 2021

# **TABLE OF CONTENTS**

I.      INTRODUCTION ……………………………………………………… 1


II.     LACHES: PLAINTIFF'S UNREASONABLE DELAY IN ISSUING THE
        SUBJECT BILLS HAS RESULTED IN PREJUDICE TO AHAC
        WARRANTING DISMISSAL OF THIS CASE……………………….. 4


III.    OTHER AFFIRMATIVE DEFENSES: WAIVER, ESTOPPEL, *RES JUDICATA,*
        FAILURE TO JOIN INDISPENSABLE PARTIES AND CONTRIBUTORY
        NEGLIGENCE ………………………………………………………… 10


IV.     CONCLUSION……………………………………………………… 14

# TABLE OF AUTHORITIES

**Cases**

C. Arena & Co. v. St. Paul Fire and Marine Insurance Co.,
   Civ. No. 91-7425, 1992 WL 368455, *4 (E.D. Pa. Dec. 3, 1992)............................ 13

Cayuga Indian Nation v. Pataki,
   413 F.3d 266 (2nd Cir. 2005)......................................................................... 5

Encino Motor Cars LLC v. Navarro,
   136 S. Ct. at 2125-26 .............................................................................….. 11

HS Resources, Inc. v. Wingate,
   327 F.3d 432, 438 (5th Cir. 2003) ……………………………………………………... 12

Jackson v. Axton,
   25 F.3d 884, 889-90 (9th Cir. 1994) …………………………………………….....…… 9

Johnson v. Zerbst,
   304 U.S. 458, 460 (1938) …………………………………………………….………. 10

Lyell Theatre Corp. v. Lowes Corp.,
   682 F.2d 37, 43 (2d Cir. 1982) ……………………………………………………………7

Messenger v. United States,
   231 F.2d 328, 330-31 (2d Cir. 1956) ………………………………………………… 7

Nyhus v.Travel Mgmt. Corp.,
   466 F.2d 440, 452 (D.C. Cir. 1972)…………………………………………………… 7

Pagoda Trading Co. v. United States,
   9 CIT 407 at 411, 617 F.Supp. 96 (1985) aff'd. 5 Fed. Cir. (T) 10, 804 F.2d  665 (1986). 6

SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC,
   137 S. Ct. 954, 960 (2017)…………………………………………………………….. 4

St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp.,
   646 F.2d 1064 (1981)………………………………………………………………….. 9

United States v. Admin. Enters., Inc.,
   46 F.3d 670, 672-73 (7th Cir. 1995)………………………………………….………... 5

United States v. Ataka America, Inc.,
   17 CIT 598, 826 F.Supp. 495 (1993)……………………………...…………………….... 6, 7

United States v. Am. Home Assurance Co.,
    151 F.Supp. 3d 1328, 1342-43 (Ct. Int'l Trade 2015), amended, (Ct. Int'l Trade March
    15, 2016) (hereinafter, AHAC 2016), *aff'd per curium*, Fed Cir. Appeal No. 18-1960 &
    18-2120 (CAFC Sept. 6, 2019) ………….…………………………………....… 2, 6, 12

U.S. v. Commodities Export Co.,
    972 F.2d 1266 (Fed. Cir. 1992)……………………………………….…………….. 6

United States v. Dantzler Lumber & Export Co.,
    833 F.Supp. 927, 931 ……………………………………………………………… 7

United States v. David M. Rubinstein, S.G. and Washington International Insurance Company,
    62 F.Supp.2d 1139 (Ct. Int'l Trade 1999) ……………………………………………… 7

United States v. Great American Insurance Co. of NY,
    35 CIT 1130, 791 F.Supp.2d 1337, 1344 (2011)…………………………………………… 6

United States v. Summerlin,
    310 U.S. 414, 416 (1940)……………………………………...……………………… 4

**Statutes**

19 U.S.C. 580……………………………………………………………....…1, 2, 13

19 U.S.C. 1505(d) ………………………………………………………………... 13

19 U.S.C. 1509(a)(1)(A) ……………………………………………………………… 10

28 U.S.C. §1961……………………………………………...……..……………… 1, 2

28 U.S.C. §2451(a)……………………………………………………...……… 3, 11, 14

**Rules**

USCIT R. 8(d)(1)……………………………………………………….…………..... 2

**Regulations**

19 C.F.R. §113.62(a)…………………………………………………………..……… 5

**Other Authorities**

Black's Law Dictionary, Laches …………………………………………………… 4

Treasury Decision (T.D.) 95-21 …………………………………………………... 11

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, *SENIOR JUDGE*

————————————————————————————————
UNITED STATES OF AMERICA,

              Plaintiff

              v.

AMERICAN HOME ASSURANCE COMPANY,

              Defendant

————————————————————————————————

Court No. 20-00175

## DEFENDANT'S SUPPLEMENTAL BRIEF ON ITS DEFENSE OF LACHES AND OTHER AFFIRMATIVE DEFENSES IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, American Home Assurance Company (AHAC), respectfully submits this Supplemental Brief pursuant to this Court's Order, dated July 21, 2021, wherein the court requested supplemental briefing supporting the third, fourth, fifth, seventh, eighth, and tenth affirmative defenses pled in AHAC's Amended Answer.   In this action, the Government seeks to collect antidumping duties plus statutory interest pursuant to 19 U.S.C. §580 and post-judgment interest pursuant to 28 U.S.C. §1961 against AHAC under eight (8) single transaction bonds (STBs) issued twenty years ago.  For the reasons stated in Cross-Motion for Summary Judgment, as well as herein, we respectfully request that this Court enter judgment for AHAC, dismiss the Government's case and award legal costs and expenses to AHAC.

## I.    INTRODUCTION

The STBs in question were issued to two importers – Panjee Co., Ltd. (Panjee) and Pan Pacific Products Inc. (Pan Pacific) to secure eight customs entries, made between February 26,

2001 through January 4, 2002.  The merchandise underlying the entries consisted of canned mushrooms from the People's Republic of China (China) subject to an antidumping duty order on certain preserved mushrooms from China issued by the U.S. Department of Commerce (Commerce).  Now, nearly two decades later, the Government seeks to collect against the eight STBs notwithstanding: (1) the issues involve the same operative and/or series of transactional facts that were already litigated in this Court[1]; (2) judicial precedent confirms the untimeliness of the Government's claims; (3) the Government's new "right of action analysis" is based on flawed logic; and (4) the Government would be rewarded for its untimely actions (both liquidation and billing) by collecting on the full bond amount as well as interest under 19 U.S.C. §580 and 28 U.S.C. §1961.  For these reasons, we have requested that this Court enter judgment for AHAC, dismiss this action and award legal costs and expenses to AHAC.

On July 15, 2021, this Court held oral argument on the Cross-Motion for Summary Judgment filed by the Defendant, AHAC, and the Motion for Summary Judgment filed by Plaintiff, the United States. AHAC's argument, as stated in its Cross-Motion for Summary Judgment (ECF Doc. #23) and Reply Memorandum in Support of its Cross-Motion for Summary Judgment (ECF #27), focused primarily on its main legal defenses of *res judicata* and the running of the statute of limitations.  Soon after oral argument, on July 21, 2021, this Court directed AHAC to submit a Supplemental Brief and any affidavits supporting the third, fourth, fifth, seventh, eighth, and tenth affirmative defenses pled by AHAC in its Amended Answer, ECF No. 18. See Order, ECF No. 49.

Pursuant to USCIT Rule 8(d), AHAC pled the following affirmative defenses within its Amended Answer:  laches (3rd); waiver (4th); estoppel (5th); *res judicata* (7th); failure to join

---

[1] See <u>United States v. Am. Home Assurance Co.</u>, 151 F.Supp.3d 1328 (Ct. Int'l Trade 2015), amended, (Ct. Int'l Trade March 15, 2016), aff'd *per curium* Fed. Cir. Appeal No. 18-1960.

indispensable parties (8th); and contributory negligence (10th).  See ECF No. 18.  As directed by this Court, AHAC hereby submits this Supplemental Brief with a supporting declaration from Scott Guest, AIG Property Casualty Vice President – Specialty Claims, discussing these defenses in support of its Cross-Motion for Summary Judgment.

### *Note Regarding Pending Dispositive Motions*

As stated prior, AHAC's primary defense is that Plaintiff's claims are time-barred under the applicable statute of limitations, 28 U.S.C. §2451(a).  AHAC's secondary defense is that Plaintiff is precluded from asserting the subject claims under the principals of *res judicata* and/or *stare decisis*.  The parties to this action have agreed that these two issues are questions of law and should be decided based on the Agreed Statement of Facts that accompanied each party's respective dispositive motion, responses and replies.

AHAC submits that the issue of laches is also a question of law since the parties have agreed as to the key facts underlying the timing issue; namely (1) the dates of the deemed liquidations, (2) the dates of the delayed billing and (3) the date in which this court action was filed.  Concerning the second element of the laches defense, prejudice, in its dispositive motion AHAC relies on court precedent holding that prejudice is presumed as a matter of law when the delay in asserting the claim is unreasonable.

Notwithstanding AHAC's assertion that prejudice should be legally presumed, the Court appears to be asking for evidence of actual prejudice in its Request for Supplemental Briefing. Accordingly, AHAC herein submits such evidence.  ***This submission is not intended to create the need for discovery or otherwise deflect or delay this Court's decision on the pending dispositive motions***.  In other words, since this Supplemental Brief covers defenses that AHAC considers to be ancillary to its primary defenses, AHAC would be willing to waive said defenses,

including laches if necessary, for the Court to issue its decision on the pending dispositive motions.

## II.   LACHES: PLAINTIFF'S UNREASONABLE DELAY IN ASSERTING ITS CLAIMS HAS RESULTED IN PREJUDICE TO AHAC WARRANTING DISMISSAL OF THIS CASE

Initially, AHAC reasserts that this case should be dismissed on the basis that the claims at issue are time-barred under the six-year Statute of Limitation, 28 U.S.C. 2415(a), as ruled in this Court's prior decisions involving nearly identical transactions. Nevertheless, in the event the Court were to conclude that the United States' cause of action did not accrue upon the liquidation of the importer's entries, or a reasonable time thereafter, but instead accrued upon AHAC's failure to pay 30 days after Customs' demand for payment, the United States' claim still is barred by the doctrine of laches.

Laches is defined as an "unreasonable delay pursuing a right or claim, in a way that prejudices the [opposing] party." See Black's Law Dictionary, Laches". It is "a defense developed by courts of equity to protect defendants against unreasonable, prejudicial delay in commencing suit." SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 137 S. Ct. 954, 960 (2017). USCIT Rule 8(d)(1) lists laches as an available affirmative defense.

AHAC is mindful that the United States traditionally has not been subject to the defense of laches. United States v. Summerlin, 310 U.S. 414, 416 (1940).[2] Nevertheless, the availability of laches in at least some government suits is supported by federal court decisions "that refuse to shut the door completely to the invocation of laches or estoppel (similar doctrines) in

---

[2] The lack of court cases involving laches and customs bond claims is not surprising given that untimely demands upon the surety (e.g., those made more than six years after the cause of action accrued) have historically been dismissed either administratively or by the Court once it is established that the federal statute of limitations has run.

government suits." See United States v. Admin. Enters., Inc., 46 F.3d 670, 672-73 (7th Cir. 1995) (citing cases).

In 2005 the Second Circuit in Cayuga Indian Nation v. Pataki, 413 F.3d 266 (2nd Cir. 2005), stated "[w]e recognize that the United States has traditionally not been subject to the defense of laches" but immediately added that "this does not appear to be a per se rule." Id. at 278. The Cayuga court then endorsed the set of factors formulated by the Seventh Circuit in Administrative Enterprises governing application of laches to the United States: "first, 'that only the most egregious instances of laches can be used to abate a government suit'; second, 'to confine the doctrine to suits against the government in which . . . there is no statute of limitations'; and third, 'to draw a line between government suits in which the government is seeking to enforce either on its own behalf or that of private parties what are in the nature of private rights, and government suits to enforce sovereign rights, and to allow laches as a defense in the former class of cases but not the latter.' " Cuyaga, 413 F.3d at 279.   In this matter, the first Cuyaga factor is present as the Government's delay of nearly twelve years to issue demand on AHAC was egregious.  As for the second factor, according to the Government in the July 15, 2021 oral arguments, there is no effective statute of limitations that bars this action[3].  Finally, the Government is suing to enforce what is in the nature of private rights, e.g., a bond contract, versus sovereign rights.   Accordingly, under Cuyaga, the Government is subject to the defense of laches in this matter.

***Government Delay was Unreasonable***

CBP was authorized to demand payment from AHAC upon liquidation of the subject entries. 19 C.F.R. § 113.62(a). CBP was also authorized to "call into action the powers of the

---

[3] When asked by the Court in the July 15, 2021 oral argument whether a time period of "50 or 100 years" to bring suit against a customs surety might be appropriate Government counsel replied "yes". (Transcript not yet available).

court" immediately upon liquidation of the importer's entries.  United States v. Commodities Exp. Co., 972 F.2d 1266, 1271 (Fed. Cir. 1992) ("[t]he bond does not require Customs to wait 60 days for a response to the demand before suing …, [and] [n]o statute requires Customs give notice of demand of liquidated damages before suing.").  CBP, however, waited more than ten years after liquidation of the subject entries to issue its first bill to AHAC for the liquidated duties, and another six years to commence its action after making demand.

In this case, CBP knew or should have known about the potential claims on or about February 20, 2003 (Panjee and Pan Pacific entries) and January 11, 2004 (certain Pan Pacific entries) when the subject entries were deemed liquidated.  See United States v. Am. Home Assurance Co., ("AHAC 2016") 151 F.Supp.3d 1328 (Ct. Int'l Trade 2015), amended, (Ct. Int'l Trade March 15, 2016), aff'd per curium Fed. Cir. Appeal No. 18-1960; Compl. ¶¶ 12, 31, 49; Answer ¶ 12, 31, 49.  CBP is obligated to collect or refund duties "as determined on a liquidation or reliquidation." See 19 U.S.C. §1505(b); See also United States v. Ataka America, Inc., 17 CIT 598, 826 F.Supp. 495 (1993) whereby the Court held that "[t]he right to collect immediately on liquidation carries with it the responsibility to act within six years of liquidation to collect on the contract obligation of the surety." Id. at 607; See also United States v. Great American Insurance Co. of NY, 35 CIT 1130, 791 F.Supp.2d 1337, 1344 (2011), deemed liquidation was event triggering the Government's cause of action.  The statutory provision for liquidation by operation of law (19 U.S.C. §1504) was designed for the benefit of importers (and its sureties).  Pagoda Trading Co. v. United States, 9 CIT 407 at 411, 617 F.Supp. 96 (1985) aff'd. 5 Fed. Cir. (T) 10, 804 F.2d  665 (1986).  As such, (it) is a direct mandate to customs to act within a specific time or to adequately extend the time to act. Id.

For unexplained reasons, CBP did not make its first demand on AHAC for the underlying bills until July 6, 2015 (Count I entries) and February 3, 2016 (Count II and III entries), more than a decade after the deemed liquidations.  Compl. ¶ 17, Amended Answer ¶ 17. Pl. Ex. 3 ¶ 16, Pl. Ex. 5.   Creditors must make demand under a bond within a reasonable time. Nyhus v.Travel Mgmt. Corp., 466 F.2d 440, 452 (D.C. Cir. 1972) ("[A] party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand; when statutorily unstipulated, the time for demand ordinarily is a reasonable time." (footnote omitted)); United States v. Ataka Am. Inc., 826 F. Supp. 495, 503 (Ct. Int'l Trade 1993).  AHAC submits that Customs' ten-year delay in billing Defendant, without any justification, is unreasonable by any measure.

### Government Delay was Prejudicial to AHAC

The Court of International Trade has held that "prejudice resulting from unreasonable delay may be presumed as a matter of law." (emphasis added by Court); See United States v. David M. Rubinstein, S.G. et al. and Washington International Insurance Company, 62 F.Supp.2d 1139 (Ct. Int'l Trade 1999); citing United States v. Dantzler Lumber & Export Co., 17 CIT at 1073, 833 F.Supp. 927, 931, citing Lyell Theatre Corp. v. Lowes Corp., 682 F.2d 37, 43 (2d Cir. 1982).  In other words, where it has been shown that the delay was unreasonable, evidence of actual prejudice is not required. See Rubinstein, "here the nine-year period of unexplained and unjustified inaction is prima facie "unreasonable" [and] Plaintiff's unreasonable delay and defendant's actual prejudice are inextricably intertwined"; See also Messenger v. United States, 231 F.2d 328, 330-31 (2d Cir. 1956) (operative condition of federal rule for dismissal for lack of diligence in prosecution is lack of diligence by plaintiff and not prejudice to

defendant). In <u>Lyell Theatre Corp</u>., a delinquent span of seven years was sufficient to warrant dismissal without the need to show actual prejudice.

*Arguendo*, should this Court determine that AHAC must show actual prejudice in this case, AHAC herein submits evidence showing that CBP's failure to issue its demands within a reasonable timeframe, long after protracted litigation between the parties involving nearly identical Panjee and Pan Pacific entries, has caused AHAC actual harm.

Attached hereto as Exhibit A is the Declaration of Scott Guest, Vice President – Specialty Claims for AHAC's parent company AIG Property Casualty. Mr. Guest has been in charge of adjusting AHAC's customs bond claims since the bond program began (and ended) in 2000 and 2001. As confirmed by Mr. Guest, the importers Panjee and Pan Pacific both went out of business at or near the time the deemed liquidations occurred. See Declaration of Scott Guest ¶ 6.a., see also, ECF. No. 23, Exhibit 2, Certificates of Dissolution. Thus, while CBP allowed the subject entries to remain open, Panjee and Pan Pacific were in the process of dissolving their entities. By the time CBP gave notice of billing to AHAC for these entries on July 6, 2015 (Panjee entries) and February 3, 2016 (Pan Pacific), any chance of recovery from these entities had long passed. Exh. A, ¶ 6.a.

Because AHAC did not receive a timely billing notice from CBP, AHAC was unable to protect itself in other ways. In particular, AHAC was unable to exercise its subrogation rights and secure past, current and future bonds for these principals. See Guest Decl. ¶ 6.a. In other words, due to CBP's delay, AHAC was unable to prevent or mitigate loss by ceasing to write bonds for the importers and/or demanding that the companies, or its successors, post collateral as security against AHAC's potential exposure. Guest Decl. ¶ 7.a. The courts have recognized that impairing a surety's ability to exercise its customary efforts to protect itself against loss

constitutes prejudice.  See, e.g., St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp., 646 F.2d 1064 (1981).

In addition to compromising AHAC's subrogation rights against the importer/principals, the Government delay in this matter diminished the rights of AHAC regarding potential causes of action against both the general agent and customs broker related to the bonds at issue.  An investigation conducted by AHAC in 2004 revealed that these agents violated specific underwriting guidelines that required pre-authorization for bonds securing entries of antidumping merchandise.  Guest Aff. ¶ 6.c. Had Customs asserted its claims in a timely manner, AHAC would have been able to seek contribution from its agents who in turn may have relied on their Errors and Omissions (E&O policies) for indemnification.  Id. As it stands, the time period to assert either a contract or tort claim against these parties (or their insurers) had passed long before Customs asserted its claims.  Id.

Another prejudicial factor related to Plaintiff's delay in this case is that AHAC has been forced to defend itself in a court action involving the same principals, products and issues for a second time.  Guest Aff. ¶ 6.b.  If the subject claims had been asserted in timely manner, it stands to reason that they would have been included in the prior court actions.  Id.  This factor is the primary reason why AHAC has requested costs and expenses within its dispositive motions.

Finally, further harm, or prejudice, caused by the Government's delay, is demonstrated by the fact that AHAC's ability to gather records relating to the Government's claims has been compromised.  The Ninth Circuit court in Jackson v. Axton, 25 F.3d 884, 889-90 (9th Cir. 1994) held that evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died.  Records relating to customs entries are not kept indefinitely by the importer, broker or surety.  Guest Decl. ¶ 7.f.  By statute,

importers and brokers are only required to maintain records for five (5) years after the date of entry[4], after which time these records are typically destroyed.  Most customs sureties, like most businesses, have record retention policies that provide for record disposal after a limited number of years.  Id.  At the time the bonds in question were issued in 2001 and 2002, Defendant did not contemplate that its records related to these bonds would need to be held for an indefinite period of time which would be the case if Plaintiff were to prevail in this action.  Guest Decl. ¶ 9.

Customs' unexcused delay of over ten years in issuing its demand on AHAC was both unreasonable and prejudicial.  If this demand is not dismissed by the Court on the grounds that it is time-barred under the Statute of Limitations or the principals of *res judicata*, it should be dismissed as a matter of law under the doctrine of laches.

## III.   OTHER AFFIRMATIVE DEFENSES: WAIVER, ESTOPPEL, *RES JUDICATA,* FAILURE TO JOIN INDISPENSABLE PARTIES AND CONTRIBUTORY NEGLIGENCE

### *Waiver*

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege."  Johnson v. Zerbst, 304 U.S. 458, 460 (1938).  AHAC respectfully submits that by failing to include the subject claims in its prior court actions involving the same parties and issues, the Government has waived its right to initiate a new collection action following final decisions in said actions.    While the bills in question were not issued at the time the prior litigation was commenced against AHAC in 2009 and 2010, they were issued prior to a final decision being reached in these cases.  Rather than wait an additional five years to initiate suit, the Government should have added these known claims to its pending actions before this Court.

---

[4]  See 19 U.S.C. 1509(a)(1)(A)

*Estoppel*

Well before the bonds in the present case were issued, Customs recognized that the obligation of a compensated surety is predicated upon certain known risks or underwriting component and to the extent a surety's risk is varied without prior consent, sureties could be discharged from any obligation under their bonds. See Treasury Decision (T.D.) 95-21, dated April 17, 1995.  Until this action (and a related case, CIT Court No. 20-03628, against another surety company pending before J. Vaden) CBP universally accepted that there were time limits related to the issuance and collection of its claims against customs bonds.  Absent a Statute of Limitations Waiver, claims for unpaid duty that were made more than six years after accrual, were regularly removed from surety's demand by CBP's Revenue Division following confirmation of the time-barred status of the claim.   For example, following the September 6, 2019 appellate court decision in the prior AHAC litigation, CBP removed dozens of time-barred claims relating to Panjee and Pan Pacific bonds from AHAC's demand. See Guest Decl. ¶ 6.b.

Plaintiff now argues that the six-year statute of limitations under 28 U.S.C. § 2415(a) for collection of duties under a bond does not commence until 30 days after demand has been made against the surety.  CBP gave no notice whatsoever of its proposed major policy shift from calculating the start of the statute of limitations running from the date of liquidation to the date of its first billing.

In Encino Motor Cars LLC v. Navarro, the U.S. Supreme Court held that it was arbitrary and capricious of the agency to make a 180-degree change in its interpretation and enforcement of a regulation, even after engaging in notice and comment rulemaking if it did not take into account those reliance interests. Encino, 136 S. Ct. at 2125-26.  The Government asserts that

11

there is no limit on the amount of time that it may take in making its demand on a surety for payment of liquidated duties.  AHAC never agreed, much less even contemplated, that Customs might have an unlimited time, even beyond the statute of limitations period, to demand payment under the terms of its bond. AHAC reasonably relied upon the six-year statute of limitations that starts running at liquidation, or a reasonable period of time after liquidation, as the outside limit in the management of its risk.  For the reasons stated above, Plaintiff should be estopped from unilaterally changing its position regarding these time-barred bills without prior notice.

### Res Judicata

The defense of *res judicata* is discussed at some length in AHAC's prior briefs and oral argument.   The present case involves the same parties, same operative and/or series of transactional facts, and same legal issues (*stare decisis)* that were already litigated before this Court in <u>United States v. Am. Home Assurance Co.,</u> 151 F.Supp.3d 1328 (Ct. Int'l Trade 2015), amended, (Ct. Int'l Trade March 15, 2016), aff'd *per curium* Fed. Cir. Appeal No. 18-1960.  Accordingly, the Government should be bound by this Courts' decision in the prior case and this case should be dismissed.

### Failure to Join Indispensable Parties

Rule 12(b)(7) of the Federal Rules of Civil Procedure allows for dismissal for "failure to join a party under Rule 19." Rule 19 "provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." <u>HS Resources, Inc. v. Wingate</u>, 327 F.3d 432, 438 (5th Cir. 2003) (footnotes and citations omitted).

Like all customs bond claims asserted by Customs, the surety AHAC's liability flows through its importer/principals Panjee and Pan Pacific.[5]  Historically importers are more likely to satisfy their debts to the government when they are named in a collection action.  This is particularly true where individual officers or directors are named as co-defendants, a scenario that is occurring more frequently in customs revenue collection actions. Had CBP timely liquidated the entries and/or made timely demand on surety, the principals and/or its successors could have been named as co-defendants either in the original government suit or in a cross-claim by Defendant.

***Contributory Negligence***

It is beyond dispute that Plaintiff's lack of diligence in issuing its claims is unexcused. Customs failed to send the importer or Defendant any bills for ten years because it did not apprehend the significance of the U.S. Department of Commerce's Federal Register notice announcing the rescission of the administrative review with respect to the importer's entries and the fact that the entries had been deemed liquidated.

CBP unilaterally caused the billing delay at issue, yet at the same time, CBP received certain benefits from its delay, namely the unnecessary accrual of interest under 19 U.S.C. 1505(d). In addition, interest under 19 U.S.C. 580, which is charged in excess of the bond amount, has accrued against AHAC by virtue of the government filing this collection action. Had CBP's claims been timely issued, AHAC would have likely elected to satisfy the claims and seek immediate reimbursement from the principals that could still be located at that time. This would have been a far more efficient course of action than repeatedly opposing the

---

[5] "It is a basic proposition of surety law that the surety is only liable to the extent of the principal . . . ." <u>C. Arena & Co. v. St. Paul Fire and Marine Insurance Co.</u>, Civ. No. 91-7425, 1992 WL 368455, *4 (E.D. Pa. Dec. 3, 1992).

government in costly litigation.  In summary, the contributory negligence of CBP in this case has caused AHAC unnecessary harm.

## V.    <u>CONCLUSION</u>

The deemed liquidation statute was put in place to achieve finality so that importers and their sureties would not be burdened with unexpected claims years later.  Congress plainly intended to limit Customs' ability to collect unpaid duties from sureties when it enacted the six-year statute of limitations in 28 U.S.C. § 2415(a).  If the Court were to adopt Customs' position that it can get around both statutory provisions by unilaterally delaying making a demand in perpetuity and allow this new position to be applied retroactively to bonds issued decades ago, AHAC and other sureties would suffer significant harm.  For the foregoing reasons, Defendant respectfully requests that the Court enter summary judgment in its favor and dismiss the Government's complaint.

Respectfully submitted,

<u>/s/ Taylor Pillsbury, Esq.</u>
Taylor Pillsbury, Esq.
Meeks, Sheppard, Leo & Pillsbury
352 3rd Street, Suite 202
Laguna Beach, CA 92651
(949) 719-2712

Dated:  October 8, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. RICHARD K. EATON, *SENIOR JUDGE*

—————————————————————————
                                      :

UNITED STATES OF AMERICA,            :
                                        :

                Plaintiff             :

                                        :

                   v.                :       Court No. 20-00175

                                        :

AMERICAN HOME ASSURANCE COMPANY,   :

                                        :

              Defendant         :

                                        :
—————————————————————————

## <u>CERTIFICATE OF COMPLIANCE</u>

I, TAYLOR PILLSBURY, an attorney with the law firm of Meeks, Sheppard, Leo & Pillsbury, who is the attorney responsible for the Supplemental Brief, relying on the word count feature of the word processing program used to prepare the Brief, certify that this memorandum complies with the word count limitation under the Court's chambers procedures and contains 4880 words.

                                        /s/ Taylor Pillsbury, Esq.
                                        Taylor Pillsbury, Esq.
                                        Meeks, Sheppard, Leo & Pillsbury
                                        352 3rd Street, Suite 202
                                        Laguna Beach, CA 92651
                                        (949) 719-2712

Dated:  October 8, 2021

Exhibit A

## DECLARATION OF SCOTT GUEST

I, Scott Guest do hereby depose and say that I have personal knowledge of the following and if called upon to testify in this civil action, I would testify under oath as follows:

1. My name is Scott Guest and I am of full age of majority. I am employed by AIG Property Casualty as Vice President – Specialty Claims. My business address is 4100 Alpha Road, 8th Floor, Dallas, TX 75244. My responsibilities include managing U.S. Customs and Border Protection (Customs) claims against customs bonds issued by the AIG surety, American Home Assurance Co. (AHAC).

2. I have handled surety claims related to AHAC bonds since 2000. My involvement with AHAC customs bonds followed the one-year period from February 19, 2001 to February 28, 2002 in which the general agent Global Solutions Insurance Services (GSIS) of Torrance, California was authorized under specific guidelines to issue AHAC customs bonds. During this limited time period GSIS issued continuous and single transaction customs bonds primarily to Southern California based importers of agricultural products from China, including the principal/importers in the present court action (CIT 20-00175) Panjee and Pan Pacific.

3. It is well established and generally understood within the international trade community that liquidation is the final accounting of a customs entry. Liquidation normally occurs within one year of the date of entry. For entries involving goods subject to antidumping and/or countervailing duty, liquidation is automatically suspended until the Department of Commerce issues its Final Results (or rescinds its Review) for a given annual time period. If it is determined that duties are owed upon liquidation, Customs will bill the importer first. If the importer does not pay a Customs bill within 90 days, Customs will normally place the bill on surety demand. In AHAC's case, nearly all (approx. 766 of 780) claims related to the GSIS issued bonds were issued by Customs beginning in late 2003 through 2005.

4. Customs' cause of action against a surety accrues 30 days after the amounts owed on a liquidated

entry are not paid. Both Customs and the courts have repeatedly held that the six-year Statute of Limitations to collect unpaid duties from a surety, 28 U.S.C. 2415 (a), begins to run at the date the cause of action accrues. This is true in cases where the entry is deemed liquidated by operation of law.

5.   In the present CIT Action it is undisputed that the six (6) entries at issue were deemed liquidated by operation of law on or before October 23, 2004. The foregoing is confirmed by a handwritten notation added by Customs to each of the entry summaries in question citing the liquidation instructions ("DOC Msg 4114201") received from the Department of Commerce issued on March 23, 2004. Accordingly, AHAC had every reason to believe its liability under the subject bonds was extinguished six years after the cause of action accrued, or on or before the end of 2010. Hence, Customs' issuance of bills to AHAC for the subject claims in 2015 was wholly unexpected.

6.   Customs' extensive delay in issuing the Panjee and Pan Pacific bills that are the subject of the present court action caused undue prejudice to AHAC. Such prejudice includes:

   a.   <u>Compromise of Subrogation Rights Against the Principal</u>. In many cases the importing company dissolves and/or declares bankruptcy during the period of delay. The importer/principals Panjee and Pan Pacific both filed corporate dissolution papers with the California Secretary of State on or before the end of 2004. It is universally recognized that a surety's chance of recovery from a customs bond principal diminishes greatly over time.

   b.   <u>Incurring Unnecessary Expenses in Defending Time-Barred Claims</u>. A customs surety should not have to spend its resources defending claims that are uncollectible under 28 U.S.C. 2415(a). This is especially true in instances where the government has previously initiated formal collection action(s) against the surety involving the same principals, products, issues, etc. Upon receipt of the bills issued by Customs related to Panjee and Pan Pacific bonds in 2004 and 2005, AHAC pursued its administrative remedies via timely filed protests. A good number of bills were reliquidated to remove unlawfully assessed interest following the approval of AHAC protests and paid. Where protests were

not approved and viable defenses existed, AHAC elected to defend itself in collection actions brought the Government.   The following court actions were brought against AHAC in 2009 and 2010 to collect the Panjee and Pan Pacific bills (among others) that were not paid by surety:

- Panjee I - CIT Court No. 09-00491 (J. Gordon) filed on November 25, 2009. This action covered 27 unpaid Panjee bills, including 15 bills for entries supplied by the mushroom supplier Roaping (same supplier as in present case). The court ruled that the 15 "Roaping" bills were uncollectible under 28 U.S.C. 2415 (a) as more than six years had run from the date of the deemed liquidation to the date of the court filing in 2009. The remaining bills were paid by AHAC.

- Panjee II – CIT Court No. 10-00311 (J. Eaton) filed on October 25, 2010. Of the 163 unpaid Panjee bills underlying this action, 30 bills were found to involve deemed liquidations and held to be uncollectible under 28 U.S.C. 2415(a). The remaining bills were paid by AHAC.

- Pan Pacific I – CIT Court No. 09-00401 (J. Eaton) filed on September 18, 2009. This action covered 119 bills that were issued in a timely manner. Similarly, the collection action for these bills was filed within six years of the dates of liquidation. According, these bills were paid by AHAC following the court's decision.

- Pan Pacific II – CIT Court No. 10-000002 (J. Eaton) filed on January 8, 2010. The action involved 1 Pan Pacific bill related to the supplier Roaping. The court held that the Statute of Limitations ran on March 18, 2009 (six years after the deemed liquidation) hence the claim was held to be time-barred.

Considerable expenses were incurred by AHAC defending the above-listed court actions. Additional expenses were sustained related to the subsequent appeals of these decisions to the Court of Appeals for the Federal Circuit (CAFC). Given that (1) the lower court repeatedly held that Customs' collection of the deemed liquidated Panjee and Pan Pacific

entries was time-barred, and (2) such decisions were unanimously affirmed by the CAFC, it is remarkable that AHAC has been forced to incur additional costs and expenses to defend the present action.

c. <u>Compromised Position vis-à-vis the Issuing Agency</u>. The general agent that underwrites and issues the customs bonds for a given surety has a fiduciary duty to protect the surety's interests. Where the duty is breached, surety has a cause of action against the agent and/or its insurers. With timely notice, a surety may limit its future exposure by terminating the agent's authority to issue bonds. For bonds that have been already issued, depending on the state in which the agent is located, the time period to file an action against the agent for breach of its fiduciary responsibility is limited. Similarly, the time period in which the agent/broker may provide notice to its own carrier (via an Errors and Omissions or "E&O" policy) is limited. Most states have a four-year Statute of Limitation that applies to claims arising from a breach of contract. The Statute of Limitations for a civil tort action is generally less than four years. Soon after receiving notice of the initial Customs demands on the subject bonds in 2004, AHAC conducted a review of the GSIS underwriting guidelines and confirmed that pre-authorization was required by surety for bonds securing imports of goods subject to ADD/CVD duties. Our review concluded that GSIS had failed to obtain such authorization. Customs' unreasonable delay in issuing its claims against AHAC prevented surety from realizing the full ramifications of GSIS' unauthorized issuance of its bonds. AHAC may have made a different decision in pursuing an action against the agent/broker GSIS had we known the extent of the additional demands that would be coming from Customs after the statute of limitations for collecting on said demands had expired. Similarly, GSIS could have possibly sought contribution from the broker (East West Associates) as a result of any claims we made against GSIS. Customs issuance of its claims well after the standard contract, tort and E&O coverage limitations periods had expired has prejudiced AHAC.

7. In addition to the specific examples of prejudice listed above, there are other prejudicial factors to be considered related to Customs' extensive delay in issuing bills to a customs surety. These factors include:

a. <u>Loss of Ability to Secure Past, Current and Future Bonds.</u>  A surety that has timely notice of an actual or potential claim may leverage the status of a particular bond to secure potential liability. A prime example of this occurs when a continuous bond is set to renew. Where there is notice of liability, surety will generally require the posting of collateral as a condition of issuance of any new bond.

b. <u>Loss of Ability to Manage Reserves.</u>  The practice of setting reserves to manage risk is universal among customs sureties.  A known set of circumstances is required to effectively manage risk.  Sureties rely on established statutory time frames covering various key events; such as the liquidation of entries (1 year unless suspended), the issuance of critical notices from Customs (e.g. Redelivery Notices – 30 days from date of entry), liquidated damages claims (must be issued before liquidation) and penalties (suit must be brought within 5 years from the date of entry or date of discovery in the rare fraud case), and finally the management of time-barred claims (6 years from the date the cause of action accrues).  The amount of reserves maintained for a given claim are adjusted with the passage of time.  There should be no reason to hold reserves for a time-barred claim.  The surety risk management process would be impossible if Customs were granted the unilateral right to determine when the contract statute of limitations runs to collect on a customs bond.

c. <u>Loss of Certainty in Reinsurance Treaties.</u>  Like reserves, customs sureties often use reinsurance to manage its risk related to customs bonds.  There are two main types of reinsurance, Excessive Loss and Quota Share.  With the passage of time, and the statutory events that create certainty, a surety may wish to terminate, or "commute", an existing Reinsurance Treaty.  Allowing Customs to unilaterally determine the run date for the Statute of Limitations to collect on customs bonds would necessitate the maintenance of Reinsurance Treaties indefinitely.

d. <u>Indefinite Release Period for Collateral.</u>  Since the explosion of trade with China in the early 2000s and the increase in ADD/CVD cases that followed, sureties have required the

posting of collateral to secure bonds posted for entries of products subject to ADD/CVD. Most importers are reluctant to post collateral because the surety is not able to definitively state when the collateral will be returned.  As a general rule, a surety will return collateral to the importer after it is shown that all entries have been liquidated and there are no open claims against entries made under the subject bond(s).  Like the reserves and reinsurance issues above, creating an open-ended time period to make a claim against bonds written a decade or so prior would make it necessary for the surety to hold any and all collateral indefinitely.

   e.  <u>Loss of Ability to Participate in DOC Review Process.</u>   While the instances are rare, it has been shown that a surety that receives timely notice of potential ADD/CVD exposure may directly participate in the DOC Review process in order to minimize its potential exposure.  The time frames to participate is such a process is short, generally less than 30 days from the date of publication of the Final Results for a given ADD/CVD case. Customs' delayed issuance of a bond claim prevents surety from accessing this remedy.

   f.  <u>Inability to Support Viable Substantive Defenses Against Customs' Claim.</u>  Records relating to customs entries are not kept indefinitely by the importer, broker or surety.  An extensive delay without notice prevents the surety from obtaining records that are needed to properly review the merits of a given claim.  Under the Customs regulations, importers and brokers are required to maintain records for 5 years after the date of entry, after which time these records are typically destroyed.  AHAC's record retention policy regarding claims is a set number of years depending on the claim type.  In no case are AHAC's claims records expected to be maintained for an indefinite period of time.

8. A surety's ability to manage risk is critical to the success of a given bond program.  When it comes to customs bonds, AHAC relies on both the deemed liquidation and Statute of Limitations statutes to create a level of certainty for all parties involved.  Both statutes mandate adherence to fixed deadlines with clearly defined repercussions for missing these deadlines.  These deadlines and repercussions are also essential for Customs to maintain an efficient and equitable system for securing and collecting revenue related to import transactions.

9.  The AHAC bonds in question were issued in 2003.  At that time, there was no dispute as to the scope and applicability of the deemed liquidation (19 U.S.C. 1504) and claim collection (28 U.S.C. 2415) statutes.  Similarly, there was no dispute as to the ramifications for the government's failure to meet the deadlines under these statutes.  Basic fairness dictates that any change in the legal interpretation of these important statutes should not apply retroactively to bonds issued more nearly 20 years ago.  If the government wishes to create an open-ended period to collect on a customs bond, it should effect such changes prospectively and with proper notice.

10. The court cases on point have confirmed that liquidation initiates the running of the statute. AHAC's business procedures and risk analysis rely upon that process.  Notwithstanding the industry's reliance on the process, CBP gave AHAC no notice whatsoever of its policy shift to base the running of the statute of limitation from the date of liquidation to the date of its first billing.

Scott Guest

October 7, 2021
Date