UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE RICHARD K. EATON, *SENIOR JUDGE*

_____
                                          :
UNITED STATES OF AMERICA,                 :
                                          :
        Plaintiff,                        :   Court No.: 20-00175
                                          :
    v.                                    :
                                          :
AMERICAN HOME ASSURANCE COMPANY,          :
                                          :
        Defendant.                       :
_____:

# PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S AMENDED SUPPLEMENTAL BRIEF

                                                          BRIAN M. BOYNTON
                                                          Principal Deputy Assistant Attorney General

                                                          PATRICIA M. McCARTHY
                                                         Director

                                                          JUSTIN R. MILLER
                                                          Attorney-In-Charge
                                                         International Trade Field Office

                                                          PETER A. MANCUSO
                                                          Trial Attorney
                                                          Department of Justice, Civil Division
                                                          Commercial Litigation Branch
                                                          26 Federal Plaza – Suite 346
                                                          New York, New York 10278
                                                          Tel. (212) 264–0484 or 9230
                                                          Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: September 28, 2022

## TABLE OF CONTENTS

I. Introduction ............................................................................................................. 1

II. The Affirmative Defense Of Laches Is Unavailable Under
The Circumstances Presented By This Case .................................................... 3

III. The Affirmative Defense Of Laches Requires That AHAC Prove
That The Government's Delay In Commencing This Action Caused Prejudice .............. 7

IV. AHAC Has Not Met Its Burden Of Proving That It Suffered Prejudice Due
To The Government's Delay In Commencing This Action ........................................... 9

V. AHAC's Remaining Arguments Are Without Merit ..................................................... 13

CONCLUSION .......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.*,
988 F.2d 1157 (Fed. Cir. 1993) ...................................................................... 7, 8

*Air-Sea Brokers, Inc. v. United States*,
66 C.C.P.A. 64 (1979) ....................................................................................... 6

*Bethlehem Steel Corp. v. United States*,
551 F. Supp. 1148 (Ct. Int'l Trade 1982) ........................................................... 6

*Clearfield Trust Co. v. United States*,
318 U.S. 363 (1943) .......................................................................................... 6

*Cornetta v. United States*,
851 F.2d 1372 (Fed. Cir. 1988) .................................................................. 7, 8, 9

*Council of Athabascan Tribal Gov'ts v. United States*,
693 F. Supp. 2d 116 (D.D.C. 2010) ............................................................. 9, 10

*Gaussen v. United States*,
97 U.S. 584 (1878) ............................................................................................ 5

i

*Goodman v. McDonnell Douglas Corp.*,
606 F.2d 800, 808 (8th Cir. 1979) ............................................................................... 10

*Habas Sinai v. United States*,
439 F. Supp. 3d 1342 (Ct. Int'l Trade 2020) .................................................................. 8

*Holmberg v. Armbrecht*,
327 U.S. 392 (1946) ....................................................................................................... 8

*JANA, Inc. v. United States*,
936 F.2d 1265 (Fed. Cir. 1991) ............................................................................. 7, 8, 9

*Koyo Corp. v. United States*,
403 F. Supp. 2d 1305 (Ct. Int'l Trade 2005) .......................................................... 13, 14

*Messenger v. United States*,
231 F.2d 328 (2d Cir. 1956) ....................................................................................... 7, 8

*Pepper v. United States*,
794 F.2d 1571 (Fed. Cir. 1986) ..................................................................................... 8

*S.E.R., Jobs for Progress, Inc. v. United States*,
759 F.2d 1 (Fed. Cir. 1985) ....................................................................................... 4, 5

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
580 U.S. 328, 137 S. Ct. 954 (2017) ........................................................................... 3, 4

*United States v. Admin. Enter., Inc.*,
46 F.3d 670 (7th Cir. 1995) .................................................................................. 5, 9, 14

*United States v. Am. Home Assurance Co.*,
151 F. Supp. 3d 1328 (Ct. Int'l Trade 2015) ............................................................ 9, 11, 14

*United States v. Angell*,
292 F.3d 333 (2d Cir. 2002) .......................................................................................... 5

*United States v. Arrow Transp. Co.*,
658 F.2d 392 (5th Cir. 1981) ......................................................................................... 6

*United States v. Fed. Ins. Co.*,
805 F.2d 1012 (Fed. Cir. 1986) ..................................................................................... 6

*United States v. Flores-Montano*,
541 U.S. 149 (2004) ....................................................................................................... 6

*United States v. Great Am. Ins. Co. of N.Y.*,
738 F.3d 1320 (Fed. Cir. 2013)......................................................................................... 9

*United States v. Kirkpatrick*,
22 U.S. 720 (1824) ............................................................................................................ 5

*United States v. Mack*,
295 U.S. 480 (1935) .......................................................................................................... 5

*United States v. Rubinstein*,
62 F. Supp. 2d 1139 (Ct. Int'l Trade 1999) .................................................................. 7, 8

*United States v. Summerlin*,
310 U.S. 414 (1940) .......................................................................................................... 5

*United States v. Verdier*,
164 U.S. 213 (1896) .......................................................................................................... 5

**Statutes**

19 U.S.C. § 580............................................................................................................... 15

19 U.S.C § 1504.............................................................................................................. 14

19 U.S.C § 1505.............................................................................................................. 15

19 U.S.C. § 1514(a)........................................................................................................ 13

28 U.S.C. § 1582(2)................................................................................................. 1, 4, 6

28 U.S.C. § 1961 ............................................................................................................. 15

28 U.S.C. § 2415(a)...................................................................................................... 2, 4

**Rules**

FRCP Rule 41(b).............................................................................................................. 8

USCIT Rule 8(d)(1)......................................................................................................... 7

USCIT Rule 56(d) ........................................................................................................ 2, 3

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, *SENIOR JUDGE*

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Court No. 20-00175 |
| v. | : |
| AMERICAN HOME ASSURANCE COMPANY, | : |
| Defendant. | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE
TO DEFENDANT'S AMENDED SUPPLEMENTAL BRIEF**

Plaintiff, the United States of America (the Government), respectfully submits this memorandum of law in response to defendant's, American Home Assurance Company (AHAC), Amended Supplemental Brief supporting its affirmative defenses and claims of prejudice, and in further support of the Government's motion for summary judgment. For the reasons stated herein, as well as in the prior briefing in this matter, we respectfully request that this Court deny AHAC's cross-motion for summary judgment and grant the Government's motion for summary judgment.

**I.    Introduction**

The Government commenced this action pursuant to 28 U.S.C. § 1582(2) against defendant, AHAC, to recover upon eight single transaction bonds issued by AHAC that secured the importation of eight entries of preserved mushrooms imported by Panjee Co., Ltd (Panjee) and Pan Pacific Products Inc. (Pan Pacific) from the People's Republic of China (China). *See* Compl. ¶¶ 2, 9, 28, 46. In response to the Government's complaint, AHAC interposed an answer on November 10, 2020 and then amended its answer on January 26, 2021. *See* Answer (*Dkt.* 9 (11/10/20)); Amended Answer (*Dkt.* 18 (1/26/21)). In its amended answer, AHAC asserted the

1

affirmative defense of laches, among others. Amended Answer at Third Aff. Def. (*Dkt.* 18 (1/26/21)).

Agreeing that there were no material facts in dispute at the time, and that the resolution of this matter was purely legal, both parties moved for summary judgment. *See* Pl. Motion for Summary Judgment (Pl. MSJ) at 10 (*Dkt.* 22 (2/5/21)); Def. Cross-Motion for Summary Judgment (Def. MSJ) at 9 (*Dkt.* 23 (3/12/21)). In AHAC's briefing in support of its motion for summary judgment, AHAC did not advance any argument with regard to its affirmative defense of laches. *See* Def. MSJ (*Dkt.* 23 (3/12/21)); Def. MSJ Reply Br. (*Dkt.* 27 (5/14/21)). Nor did AHAC present evidence to demonstrate that it suffered prejudice due to the Government's delay in commencing suit. *Id.*

At oral argument, however, the concept of laches was raised by the Court. After oral argument, the Court issued an order permitting AHAC to submit a supplemental brief on its third, fourth, fifth, seventh, eight, and tenth affirmative defenses, which included laches. *See* Scheduling Order for Supplemental Briefs (*Dkt.* 49 (7/21/21)). On October 8, 2021, AHAC submitted a supplemental brief which alleged for the first time that it suffered actual prejudice due to the Government's delay in commencing this action. *See* Def. Supp. Br. at 4–10 (*Dkt.* 54 (10/8/21)).

Prior to AHAC's supplemental brief, the question presented by the parties' competing motions for summary judgment was legal in nature, namely, determining when the Government's cause of action accrued for the purposes of calculating the statute of limitations pursuant to 28 U.S.C. § 2415(a). *See* Pl. MSJ at 8–9 (*Dkt.* 22 (2/5/21)). However, AHAC's allegations of prejudice raised significant factual questions and on October 19, 2021, the Government moved pursuant to USCIT Rule 56(d) to defer consideration of the parties' motions

for summary judgment and to permit the plaintiff to take discovery related to AHAC's newly asserted affirmative defenses. *Dkt.* 55 (10/19/21).

This Court granted the Government's motion pursuant to Rule 56(d). *Dkt.* 59 (11/18/22). Subsequently, the Government obtained factual discovery from AHAC regarding its affirmative defense of laches and AHAC has renewed its supplemental brief on this issue with the filing of its Amended Supplemental Brief on August 1, 2022. Def. Amended Supp. Br. (*Dkt.* 67 (8/1/22)).

In its amended supplemental brief, AHAC renews its primary affirmative defense alleging that our claims are time-barred. Def. Amended Supp. Br. at 2. But it also contends that it was prejudiced by the Government's delay in commencing this action and therefore it should not be held liable under the single transaction bonds (STBs) it issued to Panjee and Pan Pacific. *Id.* at 3–6. However, as will be demonstrated below, the affirmative defense of laches is unavailable under the circumstances presented by this case. Even if this defense was viable, AHAC has failed to meet its burden of proving that the Government's delay caused it to suffer prejudice.

## II. The Affirmative Defense Of Laches Is Unavailable Under The Circumstances Presented By This Case

The affirmative defense of laches is unavailable for two reasons. First, the U.S. Supreme Court has held that when Congress has enacted a statute of limitations, the affirmative defense of "laches cannot defeat a damages claim brought within the period prescribed" by law. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 137 S. Ct. 954, 960 (2017) (*SCA Hygiene*) (internal citations omitted). In *SCA Hygiene*, the Supreme Court rejected the defendant's assertion of a laches defense against an action timely commenced within the statue of limitations permitted by the Patent Act. *Id.* at 960–61.

The Court explained that separation of powers concerns are implicated if laches is applied when a statute of limitations period has been specified by Congress:

> The enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted. Therefore, applying laches within a limitations period specified by Congress would give judges a "legislation-overriding" role that is beyond the Judiciary's power. . . . courts are not at liberty to jettison Congress' judgment on the timeliness of suit.

*Id.* at 960 (internal citations and quotations omitted); *see also S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1, 9 (Fed. Cir. 1985) (concluding that "laches cannot ordinarily be invoked as a defense to legal claims where a statute of limitations is normally available to preclude the recovery on stale claims, unless the offended party has been unmistakably prejudiced by the delay in the assertion of the claim").

In essence, "[l]aches is a gap-filling doctrine, and where there is a statute of limitations, there is no gap to fill." *SCA Hygiene*, 137 S. Ct. at 961.

Here, the parties agree that the six-year statute of limitations prescribed by 28 U.S.C. § 2415(a) for "action[s] for money damages brought by the United States . . . founded upon any contract" applies to an action for collection upon a customs bond pursuant to 28 U.S.C. § 1582(2). Pl. MSJ at 12 (*Dkt.* No. 22 (2/5/21)); Def. MSJ at 20 (*Dkt.* No. 23 (3/12/21). The Government has previously demonstrated that this action was timely commenced within the period allowed by section 2415(a). Pl. MSJ at 12–20 (*Dkt.* No. 22 (2/5/21). Therefore, because a statute of limitations already governs this action, the doctrine of laches is unavailable as a defense in this matter.

Second, separate from the fact that the Government's cause of action is already governed by a statute of limitations, the Supreme Court has held that the United States is generally not "subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940). Indeed, "[t]he general principle is, that laches is not imputable to the Government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy. The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions." *United States v. Kirkpatrick*, 22 U.S. 720, 735 (1824); *see also Gaussen v. United States*, 97 U.S. 584, 590 (1878); *United States v. Verdier*, 164 U.S. 213, 219 (1896); *United States v. Mack*, 295 U.S. 480, 489 (1935).

We observe that, in more recent years, certain jurisdictions have "refuse[d] to shut the door completely to the invocation of laches or estoppel (similar doctrines) in government suits." *United States v. Admin. Enter., Inc.*, 46 F.3d 670, 673 (7th Cir. 1995). In our jurisdiction, the U.S. Court of Appeals for the Federal Circuit (the Federal Circuit) has stated that it does "not think that the thrust of the decisions is that laches is always inapplicable *per se* in any contract or other claim where a legal rather than an equitable remedy is sought." *S.E.R., Jobs for Progress, Inc.*, 759 F.2d at 8–9.

Even in jurisdictions that take a more narrow view of the Supreme Court's jurisprudence, there is a consensus among several circuit courts that "laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest." *United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002); *see also Admin. Enter., Inc.*, 46 F.3d at 673 (noting the distinction "between government suits in which the government is seeking to enforce

5

either on its own behalf or that of private parties what are in the nature of private rights, and government suits to enforce sovereign rights, and to allow laches as a defense in the former class of cases but not the latter") (internal citations omitted); *United States v. Arrow Transp. Co.*, 658 F.2d 392, 394 (5th Cir. 1981); *but cf. Clearfield Trust Co. v. United States*, 318 U.S. 363, 369 (1943) (permitting the defense of laches when the United States was the drawee of commercial paper).

Collection of duties on imports is a fundamental act of sovereignty designed to benefit the public interest. *Air-Sea Brokers, Inc. v. United States*, 66 C.C.P.A. 64, 68 (1979) ("When acting in its sovereign capacity, the Government is acting for the benefit of the general public a role clearly embracing the collection or refund of duties on imports."); s*ee also Bethlehem Steel Corp. v. United States*, 551 F. Supp. 1148, 1150 (Ct. Int'l Trade 1982) ("the Government through its Customs Service is acting in its sovereign capacity in the collection of duties on imports"); *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004) ("the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity" through, among other things, the collection of duties); *United States v. Fed. Ins. Co.*, 805 F.2d 1012, 1014 (Fed. Cir. 1986) ( "no equitable estoppel can arise against the government in connection with an obligation to pay taxes. . . . Thus, the Court of International Trade erred, as a matter of law, in holding that the government was equitably estopped from collecting from the importer and its surety the duties owed to the public fisc."). Therefore, the defense of laches is unavailable as against the United States in a suit brought by the Government to collect duties.

Here, the Government brought this action pursuant to 28 U.S.C. § 1582(2) to recover upon eight bonds issued by AHAC that secured customs duties owed by two importers. *See*

Compl. ¶¶ 2, 9, 28, 46.  Because this suit seeks to collect customs duties, it is enforcing a public right and therefore the affirmative defense of laches is unavailable to AHAC.

\* \* \* \* \*

As demonstrated above, laches is not available to AHAC as a defense in this matter because a statute of limitations has been prescribed by Congress and the doctrine is not applicable against the United States when enforcing a public right.  However, if the Court finds that the defense of laches is viable in this action, AHAC has failed to meet its burden of proof.

### III. The Affirmative Defense Of Laches Requires That AHAC Prove That The Government's Delay In Commencing This Action Caused Prejudice

Laches is an affirmative defense.  USCIT Rule 8(d)(1).  It is the defendant's burden to plead and prove any affirmative defense.  *Cornetta v. United States*, 851 F.2d 1372, 1380 (Fed. Cir. 1988).  The affirmative defense of laches "requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay."  *Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993); *see also JANA, Inc. v. United States*, 936 F.2d 1265, 1269 (Fed. Cir. 1991).

Nevertheless, AHAC argues that the Court should dispense with the second element of this two-part test — demonstrating material prejudice — and dismiss this action based solely upon the Government's delay.  Def. Amended Supp. Br. at 5 ("Where it has been shown that the delay was unreasonable, evidence of actual prejudice is not required.").[1]  AHAC's attempt to reduce a two-pronged analysis to a single element should be rejected by this Court.

---

[1] AHAC relies upon *United States v. Rubinstein*, 62 F. Supp. 2d 1139 (Ct. Int'l Trade 1999) and *Messenger v. United States*, 231 F.2d 328 (2d Cir. 1956) to support this contention.  Def. Amended Supp. Br. at 5.  However, *Rubinstein* and *Messenger* are inapplicable to the facts of this case because both contemplate the standard for dismissing a case for failure to prosecute

7

Indeed, in this jurisdiction "[t]he mere passage of time does not constitute laches." *Advanced Cardiovascular Systems, Inc.*, 988 F.2d at 1161. "Even lengthy delay does not eliminate the prejudice prong of the laches test." *Cornetta*, 851 F.2d at 1378. The Federal Circuit has rejected the notion that a defendant can "rely on a presumption of prejudice, or shift the burden to plaintiff to show lack of prejudice if delay is long, to support the affirmative defense of laches." *Id*. Doing so would reduce laches to a "one dimensional defense" and shift the burden of proving an affirmative defense from the defendant to the plaintiff to demonstrate the absence of prejudice "through the device of a presumption." *Id*. at 1379–80.

Thus, in this circuit, for AHAC to prevail on its affirmative defense of laches it must prove unreasonable and unexcused delay on behalf of the Government *as well as* material prejudice resulting therefrom. *Advanced Cardiovascular Systems, Inc.*, 988 F.2d at 1161; *JANA, Inc.*, 936 F.2d at 1269; *Cornetta*, 851 F.2d at 1378–80; *Pepper v. United States*, 794 F.2d 1571, 1573 (Fed. Cir. 1986); *Habas Sinai v. United States*, 439 F. Supp. 3d 1342, 1348 (Ct. Int'l Trade 2020); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that 'laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced, — an inequity founded upon some change in the condition or relations of the property or the parties.'") (citations omitted).

---

under USCIT and FRCP Rule 41(b). *Rubinstein*, 62 F. Supp. 2d at 1142; *Messenger,* 231 F.2d at 329–31. Although the court in *Rubinstein* and *Messenger* did not require proof of prejudice to warrant dismissal under Rule 41(b), as we demonstrate below, a finding of laches is based upon a higher standard that requires the defendant demonstrate both delay and prejudice.

8

### IV. AHAC Has Not Met Its Burden Of Proving That It Suffered Prejudice Due To The Government's Delay In Commencing This Action

The Federal Circuit recognizes two types of prejudice that may stem for a delay in filing suit: (1) defense prejudice and (2) economic prejudice. *JANA, Inc.*, 936 F.2d at 1269–70; *Cornetta*, 851 F.2d at 1378. Defense prejudice constitutes the "impairment of the ability to mount a defense due to circumstances such as loss of records, destruction of evidence, or witness unavailability." *JANA, Inc.*, 936 F.2d at 1269–70; *see also Cornetta*, 851 F.2d at 1378. Economic prejudice requires the proponent to demonstrate that it suffered monetary consequences due to a change in position that was caused by the delay in filing suit. *Cornetta*, 851 F.2d at 1378. For example, courts have required the proponent of the claim of economic prejudice to "demonstrate with competent evidence that it suffered a change in position adverse to its interests. That is, the [proponent] must show a substantial likelihood that it could have defeated the underlying claim . . . , settled the case for a smaller sum than that for which it was ultimately settled, suffered tangible economic injury, or irretrievably lost a substantial right" attributable to the plaintiff's delay in bringing an action. *United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328, 1351 (Ct. Int'l Trade 2015) (citations omitted).

Furthermore, with regard to proving either form of prejudice, it is defendant's burden to establish that the delay caused specific and actual prejudice. "The claimed prejudice must relate to particular bonds, not to a surety's business in general." *Id.* citing *United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1330 (Fed. Cir. 2013). Speculating as to potential future prejudice that defendant "may" experience if the suit is allowed to proceed is insufficient — "[a] more concrete harm must be shown." *Admin. Enter., Inc.*, 46 F.3d at 673. Potential liability in the underlying matter nor the cost of litigation are sufficient consequences to constitute economic prejudice to support a defense of laches. *Council of Athabascan Tribal Gov'ts v. United States*,

9

693 F. Supp. 2d 116, 123 (D.D.C. 2010); *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 808 (8th Cir. 1979).

Here, the record evidence demonstrates that AHAC did not suffer from either form of prejudice due to the Government's delay in commencing this action.[2]

First, AHAC cannot establish that it suffered "defense prejudice." For instance, AHAC made no effort to seek any records, evidence, or witnesses relevant to its defense in this matter and admits that there are no records, evidence, or witnesses that are necessary for it to defend this claim. Pl. Ex. 1 (Def. Response to Pl. First Interrogatories (Def. First Rog. Resp.) Nos. 14, 15); Pl. Ex. 2 (Def. Response to Pl. First Request for Admissions (Def. First Resp. to RFA) Nos. 21, 22 ("AHAC's defenses, including the defense of laches, are based on questions of law and therefore AHAC has not attempted to seek specific records or evidence from the Government beyond the previously established facts not in dispute and/or the agency record. . . . AHAC's defenses, including the defense of laches, are based solely on questions of law and therefore AHAC has not attempted to identify witnesses."). Thus, the Government's delay in commencing this action did not cause AHAC to suffer defense prejudice and the passage of time will not render AHAC unable to defend against the underlying claims asserted in the complaint.

Second, AHAC cannot demonstrate that it suffered economic prejudice due to the Government's delay — in fact, the evidence obtained in discovery shows that AHAC is in the same economic position with respect to the bonds at issue as they would have been had the Government brought this action within six years of the date of deemed liquidation. As will be

---

[2] AHAC admits that it has not meet its burden. Def. Amended Supp. Br. at 5 ("AHAC has been unable to provide significant evidence of actual harm."). Irrespective of this concession, the record evidence detailed below demonstrates that AHAC will not suffer prejudice if the Court finds in favor of the Government in this matter.

10

demonstrated below, this conclusion is apparent from the liability AHAC incurred with regard to similar bonds issued under to its failed customs bond program.

AHAC operated a customs bond program from January 1, 1999 through August 3, 2001. Pl. Ex. 1 (Def. First Rog. Resp. Nos. 1, 5). The customs bond program was operated pursuant to a limited agency and management agreement (the Agreement) that designated FIA Excess and Surplus Agency (FIA) as program manager and Global Solutions Insurance Services Inc. (GSIS) as managing general agent. *Id.* (Def. First Rog. Resp. No. 1). Under the customs bond program, AHAC issued numerous STBs to the same principals at issue in this matter — Panjee and Pan Pacific. Pl. Ex. 3 (AHAC Bond Premium Report). According to AHAC, FIA and GSIS failed to properly underwrite any of the STBs issued to Panjee and Pan Pacific under the customs bond program. Pl. Ex. 1 (Def. First Rog. Resp. Nos. 2, 4); Pl. Ex. 2 (Def. First Resp. to RFA Nos. 15, 16). Subsequently, Panjee and Pan Pacific defaulted on most, if not all, of their financial obligations pursuant the STBs issued by AHAC under its customs bond program resulting in AHAC being held liable for over $20 million to CBP. Pl. Ex. 1 (Def. First Rog. Resp. No. 10). Timeliness was not at issue with respect to those bonds as the Government sought collection within six years of the date of deemed liquidation. Pl. Ex. 1 (Def. First Rog. Resp. No. 10); s*ee also, e.g.*, *Am. Home Assurance Co.*, 151 F. Supp. 3d 1328.

With regard to the STBs issued to Panjee and Pan Pacific that resulted in the liability identified above, AHAC was unable to recover any compensation for its loses. For example, AHAC was not indemnified by FIA or GSIS for losses caused by FIA's or GSIS's failure to properly underwrite the STBs and AHAC did not pursue litigation against FIA or GSIS for its negligence in administering AHAC's customs bond program. Pl. Ex. 4 (Def. Response to Pl. Second Interrogatories (Def. Second Rog. Resp.) Nos. 1, 2). Furthermore, Panjee dissolved on

March 8, 2003 and Pan Pacific dissolved on December 2, 2002. Pl. Ex. 1 (Def. First Rog. Resp. No. 8). Because the principals dissolved around or before the time their entries deemed liquidated, AHAC did not seek, and was unable to obtain, subrogation from Panjee or Pan Pacific for any bonds issued under AHAC's customs bond program. Pl. Ex. 2 (Def. First Resp. to RFA Nos. 1, 2, 4, 5).

The bonds mentioned above and those at issue in this case share several common facts — they were issued to the same principals, pursuant to the same customs bond program, and the entries secured by the bonds liquidated by operation of law on the same date. *See* Def. MSJ at 11–12 (*Dkt.* No. 23 (3/12/21)). These common facts show that, even if this action was commenced with six years of the date of deemed liquidation, AHAC would be unable to obtain any compensation — in the form of indemnification or subrogation — for its liabilities.

The failures of FIA and GSIS under the Agreement were not limited to underwriting. Although directed to do so by AHAC, FIA and GSIS failed to obtain re-insurance for the customs bond program. Pl. Ex. 1 (Def. First Rog. Resp. No. 6). Thus, AHAC did not have re-insurance coverage for any bonds issued to Panjee and Pan Pacific under its customs bond program — including for the STBs at issue in this litigation — and consequently would be unable to seek or obtain re-insurance payments for losses under these bonds no matter the date the Government sought recovery. Pl. Ex. 2 (Def. First Resp. to RFA Nos. 7, 8, 10, 11, 14). Finally, FIA and GSIS did not obtain any collateral from Panjee or Pan Pacific to secure the STBs at issue in this litigation. Pl. Ex. 1 (Def. First Rog. Resp. No. 11).

In sum, the record evidence demonstrates that AHAC has not suffered economic prejudice due to the Government's delay in commencing this action. AHAC is in the same economic position with regard to the bonds covered by this complaint as they were with respect

to all other bonds issued to Panjee and Pan Pacific under the Agreement — including those that were the subject of collection efforts made by CBP within six years of the date of deemed liquidation.  Because AHAC was unable to obtain any recovery for the losses sustained under those bonds, it is clear that AHAC is not in an altered economic position with regard to the bonds at issue in this action due to passage of time.  In other words, AHAC is in the same economic position had the Government sued on the STBs at issue within six years of the date of deemed liquidation, *i.e.*, AHAC would be responsible for payment and would have no avenue to obtain compensation in the form of indemnification, subrogation, or reinsurance.  AHAC does not dispute this factual conclusion.  Pl. Ex. 4 (Def. Second Rog. Resp. No. 5 (Q: "Notwithstanding litigation costs associated with the defense of this civil action, describe, in detail, whether AHAC suffered any actual monetary losses or damages due to the Government's alleged delay in commencing this action." A: ... [Aside from defense costs in the civil action and at the administrative level] "No other monetary losses or damages have been suffered to date")).

### V.      AHAC's Remaining Arguments Are Without Merit

AHAC argues that a decision in favor of the Government "would eliminate both the customs liquidation process and the statute of limitations as key instruments allowing a customs surety to manage risk."  Def. Amended Supp. Br. at 7.  In support of this argument, AHAC relies upon this Court's decision in *Koyo Corp. v. United States*, 403 F. Supp. 2d 1305 (Ct. Int'l Trade 2005) for the proposition that 19 U.S.C. § 1514(a) — the deemed liquidation statute — "was put in place to achieve finality so that importers and their sureties would not be burdened with unexpected claims years later."  Def. Amended Supp. Br. at 7.

However, AHAC's argument misses the mark.  First, a laches analysis requires the proponent of the defense to demonstrate prejudice related to the particular bonds at issue, not to

13

the surety's business in general. *Am. Home Assurance Co.*, 151 F. Supp. 3d at 1351. Speculative future harm is insufficient to meet this burden. *Admin. Enter., Inc.*, 46 F. 3d at 673–74. Thus, the impact on the surety industry of permitting the Government to recover under the bonds at issue is not relevant to the Court's inquiry in this case.

Second, AHAC misconstrues the holding of *Koyo*. In *Koyo* the question was whether the Government was permitted to keep the duties deposited by the importer at the time of entry — later determined to be incorrect by Commerce — as a result of a deemed liquidation of the entries. *Koyo Corp.*, 403 F. Supp. 2d at 1306–07. Thus, at issue in *Koyo* was not the amount of *time* within which the Government was permitted to collect but rather the *amount* of duties the Government was permitted to keep. Indeed, the Court found that section 1504(a) was "designed to eliminate unanticipated requests for *additional duties* coming years after the original entry" and "*fix* the liability of the importer and surety." *Id.* at 1309 (internal quotations and citations omitted) (emphasis added).

Here, the Government does not seek to collect additional duties that would not be anticipated by the principles or the surety. Rather, we only seek to collect the duties owed by Panjee and Pan Pacific at the entered and liquidated amount. AHAC contracted to secure this amount when it issued the STBs to Panjee and Pan Pacific, and it knew it would be held responsible if the principles defaulted. Therefore, AHAC cannot claim that the collection of the amount of duties was unanticipated, which was the concern discussed by the Court in *Koyo*.

**CONCLUSION**

For the foregoing reasons, this Court should grant the Government's motion for summary judgment, and enter judgment in its favor against Defendant, AHAC, for duties and interest pursuant to 19 U.S.C § 1505 in the total amount of $379,009.00 — the contractual limit of the bonds — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit.

        Respectfully submitted,

        BRIAN M. BOYNTON
        Principal Deputy Assistant Attorney General

        PATRICIA M. McCARTHY
        Director

        /s/ Justin R. Miller
By:   JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office

        /s/ Peter A. Mancuso
        PETER A. MANCUSO
        Trial Attorney
        Department of Justice, Civil Division
        Commercial Litigation Branch
        26 Federal Plaza – Suite 346
        New York, New York 10278
        Tel. (212) 264–0484 or 9230
        Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: September 28, 2022

**CERTIFICATE OF COMPLIANCE**

I, Peter A. Mancuso, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum of law in response to defendant's amended supplemental brief, dated September 28, 2022, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 4,497 words.

/s/ Peter A. Mancuso